UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDIELL SUERO, individually and on behalf of all others similarly situated, | Case No.: 1:22-cv-31 |
| Plaintiff, | |
| - versus - | CLASS ACTION COMPLAINT |
| NFL, NEW YORK FOOTBALL GIANTS, INC., NEW YORK JETS, LLC, and METLIFE STADIUM COMPANY, LLC, | |
| Defendants. | JURY DEMANDED |

## INTRODUCTION

Plaintiff files this class action individually and on behalf of millions of other similarly situated individuals against Defendants for false advertising, deceptive practices, Civil RICO violations, and unjust enrichment.  Plaintiff and similarly situated NFL fans have been damaged by use of the "New York" ("NY") name and brand and the out-of-state relocation of both franchises after the NFL Giants and Jets moved to the State of New Jersey to play football in MetLife Stadium (formerly Giants Stadium).  Defendants have damaged Plaintiff and the class and syphoned billions of dollars from interstate commerce that should have been rightfully spent in the State of New York.  If the Yankees, Mets, Knicks, Liberty, Rangers, and other New York franchises must play in New York and pay premium real estate costs and taxes to be branded a "New York" ("NY") sports franchise, it is only fair that the NFL Giants and Jets do the same or change their name to accurately reflect the location of their stadium in East Rutherford, New Jersey.  Plaintiff and the class request equitable relief and monetary damages.

## HISTORY OF FACTS

1.     Defendant NFL is a professional football league in the United States founded on September 17, 1920.

2.      NFL Commissioner Defendant Roger Goodell has been the commissioner of the NFL since 2006, earning an estimated annual salary of $30,000,000 - $50,000,000, with a total net worth of approximately $500,000,000.

3.      NFL grosses over $14 billion per season, more than any other sports league in the world.

4.      NFL operated as 501(c)(6) non-profit organization from 1942 – 2015, renouncing their non-profit status in 2015.

5.      Despite the league itself being classified as non-profit for most of its existence, the teams themselves are for-profit franchises granted permission to operate by the NFL.

6.      Over the past 101 years, the league has grown to 32 teams identified by a team name, logo and location or hometown.

7.      These teams are dispersed among the largest cities and regions in the United States.

8.      Each team derives brand value, marketability, and revenue largely by associating with a declared home city, state, or region.

9.      The fans from these cities, states, and regions come to follow and identify with their local team(s), purchasing tickets, memorabilia, and merchandise in support of their team(s) and as well as traveling to watch live NFL football games at the stadium of their home team(s).

10.     The costs of a season ticket for eight games ranges from $894 to $6,526 for Giants games and $950 to $7,150 for Jets games for a single ticket, with 218 luxury suites that cost up to $30,000 per game.

11.     The Giants and Jets generate at least $30 million each per home game from activities at MetLife Stadium alone.

12.     The Giants and Jets teams each gross approximately $500 million per year.

13.     All NFL franchises are now valued in the billions of dollars due to intellectual property

rights, and exclusive licenses they hold for tickets, broadcast rights, advertising and marketing rights, and merchandising.

14.     Collectively, the 32 NFL franchises are valued at approximately $100 billion.

15.     Post 2020 valuations of the 32 NFL teams are as follows (in the billions): $2.27 Buffalo Bills, $2.275 Cincinnati Bengals, $2.4 Detroit Lions, $2.6 Cleveland Browns, $2.625 Tennessee Titans, $2.65 Arizona Cardinals, $2.8 Jacksonville Jaguars, New Orleans Saints $2.825, Carolina Panthers $2.91, Los Angeles Chargers $2.92, Kansas City Chiefs $2.93, Tampa Bay Buccaneers $2.94, Atlanta Falcons $3.2, Indianapolis Colts $3.25, Minnesota Vikings $3.35, Baltimore Ravens $3.4, Las Vegas Raiders $3.415, Miami Dolphins $3.42, Pittsburgh Steelers $3.43, Green Bay Packers $3.475, Seattle Seahawks $3.5, Houston Texans $3.7, Denver Broncos $3.75, Philadelphia Eagles $3.8, **New York Jets $4.05**, Chicago Bears $4.075, San Francisco 49ers $4.175, Washington Football Team $4.2, Los Angeles Rams $4.8, **New York Giants $4.85**, New England Patriots $5.0, and Dallas Cowboys $6.5.

16.     The Giants have increased in value from $514 million in 2002 to $4.85 billion in 2021, a 900% increase in 19 years and the Jets have increased in value from $635 million in 2000 to $4.05 billion in 2021, a 700% increase in 21 years, both largely due to their designation as New York ("NY") NFL teams.

17.     Today, Defendant the New York Football Giants are valued at $4.85 billion (3rd in the NFL) and Defendant New York Jets, LLC are valued at $4.05 (8th in the NFL), largely due to their being branded as New York ("NY") teams.

18.     New York ("NY") is a much more recognizable, powerful and valuable brand then New Jersey ("NJ") due to its name recognition in the media, literature, music, movies, popular culture and a variety of other quantifiable reasons including sports championships won by New York

teams, its famous residents and landmarks, trillion-dollar infrastructure, and numerous other attributes which make New York an iconic local, regional, national, and international brand.

19.     In a 1986 ruling by a New Jersey District Court judge, the court stated that, "Plaintiff, the New York Football Giants, Inc., owns and operates the New York Giants, a major league professional football team which **plays all of its home games in New Jersey yet *eschews a New Jersey identification as resolutely as a vampire eschews the cross***." *National Football League Prop. v. N.J. Giants*, 637 F. Supp. 507, 509 (D.N.J. 1986) (emphasis added)

20.     "To maintain continuity of tradition, the Giants retained the name "New York Giants" when it began playing home games in New Jersey … **one may wonder why the New York Giants resist a new name and *may wish, perhaps, that it were otherwise***…" *National Football League Prop. v. N.J. Giants*, 637 F. Supp. 507, 513 (D.N.J. 1986) (emphasis added)

21.     What's more, the court acknowledged that there is, "***confusion engendered* by the unwillingness of the team (Giants) to correlate its name with the place it calls home**," and that the NFL Giants are an, "***anomaly* of a team bearing the name of one state while playing in another**…" *National Football League Prop. v. N.J. Giants*, 637 F. Supp. 507, 509 (D.N.J. 1986) (emphasis added)

22.     The Defendants artificially increased the revenue and value of the Giants and Jets franchises by billions of dollars by using the "New York" and "NY" brand on their franchises that are located across the Hudson River in New Jersey ("NJ") and have been since 1976 and 1984 respectively.

23.     Many NFL fans who attend Giants or Jets games for the first time are unaware that these teams play out-of-state.

24.     Many NFL fans would not attend live games of the Giants or Jets if they were warned in

4

advance that they play in the State of New Jersey.

25.     NFL fans who watch televised games are given the false impression that the Giants and Jets are from the State of New York.

26.     The NFL engages in this practice with other popular franchises, including the Dallas, Cowboys (who play in Arlington, TX), the Washington Football Team (who play in Landover, MD), and the San Francisco 49ers (who play in Santa Clara, CA).

27.     The "Arlington Cowboys" would not be the most valuable franchise in the NFL at $6.5 billion without the "Dallas" name and brand.

28.     The "Maryland Football Team" or "Landover Football Team" would not be the 5th most valuable franchise at $4.2 billion without the "Washington D.C." name and brand.

29.     The "Santa Clara 49ers" would not be the 6th most valuable franchise in the NFL at $4.175 billion without the "San Francisco" name and brand.

30.     And the "New Jersey Giants/Jets" or "East Rutherford Giants/Jets" would not have their current revenue and valuation if they were properly named and branded.

31.     In Major League Baseball, the Los Angeles Angles franchise was established in 1961 when the team played in Los Angeles.  In 1964, the team moved to Anaheim and changed their name to the California Angels.  In 1997 they changed their name to Anaheim Angeles and in 2004 a new owner changed the name to Los Angeles Angles for marketing purposes while the team still played in Anaheim (Orange County).

32.     In 2005, the California Assembly voted in 41-7 that the Los Angeles Angels were engaged in what amounted to false advertising.  They approved a bill ("The Truth in Sports Advertising Act") to require the team to disclose on their tickets, ads and other promotional material that its home is in Anaheim (Orange County).  The California Senate voted in favor of

this bill by a margin of 52-17.  The bill was withdrawn for political reasons, but it is clear that

naming a sports franchise after a city in which it does not play is false advertising in all sports

and all states.

33.     The New Jersey Devils hockey team played at the same location as MetLife Stadium

before it was constructed in the Meadowlands from 1982 – 2007, but the team was originally

founded as the Kansas City Scouts in 1974 and changed its name to the Colorado Rockies from

1976 – 1982 when it played in Colorado.  Certainly, the Devils would have benefited financially

from a "New York" designation, but unlike the Giants and Jets, they were named after the state in

which they played, New Jersey.

34.     It is therefore clear that Defendants have intentionally advertised and branded the Giants

and Jets falsely, to increase their gross revenue and value of their franchises at the expense and to

the detriment of Plaintiff and the class, the State and City of New York, and millions of NFL

fans.

35.     The ripple effects of Defendants' actions cost Plaintiff, the class and the State and City of

New York billions of dollars in transportation costs, time, taxes and jobs.

## DAMAGES

## A. TRANSPORTATION COSTS AND TIME

36.     Defendants have put profits above customer service to fans and environmental concerns,

damaging millions of Giants and Jets fans who attend games live, including Plaintiff and the

class.

37.     Plaintiff and millions of class members have suffered damages by being subjected to

expensive and time-consuming transportation from the City and State of New York to East

Rutherford, New Jersey on game days to watch the Giants or Jets play, by either driving or mass

transportation.

38.     While there are less than 1 million residents in Bergen County, New Jersey (where MetLife Stadium is located) dispersed over 247 square miles, there are over 8.3 million residents in the boroughs of New York, Brooklyn, Queens, and The Bronx dispersed over 261 square miles.  This indicates that approximately 90% of the local Giants and Jets fan population, including Plaintiff, reside in New York.

39.     Plaintiff and the class of Giants and Jets fans must travel out of state to watch live Giants and Jets games, with roundtrip times taking an average of four hours or more on game day at a very high cost either by way of public transportation or motor vehicle.

40.     Plaintiff attended a game at MetLife Stadium this season where the transportation time in excess of four hours far exceeded the time of the game itself.

41.     The toll alone for bridges and tunnels between New Jersey and New York City is $16.00 and parking costs $40.00 per car, plus additional tolls on the New Jersey Turnpike and/or Garden State Expressway.

42.     Car service after games from MetLife Stadium to New York City whether by Uber, Lyft or Taxi costs $125 or more.

43.     Many drivers load their cars with multiple couples and groups so they can charge $400 or more per ride after a game.

44.     Plaintiff's roundtrip transportation costs to MetLife Stadium from Greenwich Village this season exceeded $200 for a single game which costs nearly as much as the game tickets themselves.

45.     Transportation costs to New York sports arenas by public transportation, including the Knicks and Rangers at Madison Square Garden in Manhattan, the Yankees at Yankee Stadium in

the Bronx, the Mets at Citified in Queens, and the Barclays Center in Brooklyn is $2.75 each way by subway or bus and much faster than traveling to East Rutherford, New Jersey.

46.     Transportation costs to New York sports arenas by yellow cab, Uber or Lyft are also far less expensive then traveling to East Rutherford, New Jersey as they are much closer with less tolls.

47.     From Plaintiff's home in Greenwich Village, he can travel to Madison Square Garden (1.7 miles – 13 minutes by subway) to see the New York Knicks and Rangers, to the Barclays Center (3.9 miles – 29 minutes by subway) to see the Brooklyn Nets, to Yankee Stadium (8.3 miles – 33 minutes by subway) to see the New York Yankees, and to Citi Field (10 miles – 54 minutes by subway) to see the New York Mets.

48.     Therefore, it takes about 8x longer to travel to MetLife Stadium (Giants/Jets) than it does to Madison Square Garden (Knicks/Rangers), 4x longer than Yankee Stadium (Yankees) and Barclays Center (Nets), and 2x longer than the Citi Field (Mets).

49.     Public transportation from the City and State of New York to MetLife Stadium in New Jersey uses a haphazard system of subways, trains, and buses, together with extensive periods of walking and stairs to transport Plaintiff and the class of NFL Giants and Jets fans from the City and State of New York to East Rutherford, New Jersey, where the New York Giants and Jets play all home games.

50.     After the 2014 Super Bowl at MetLife Stadium in 2014, some spectators waited three hours to depart the stadium after the game as the transportation infrastructure was overloaded.

51.     The inconvenient out-of-state location of MetLife Stadium is further reflected by the fact that the percentage of empty seats at Giants and Jets games makes them among the least attended home games in the NFL over the past decade since MetLife Stadium was constructed.

52.     For example, this season (2021) NFL teams with 99% or better attendance at home games include teams located in densely populated cities including Denver, Kansas City, Minnesota, Cleveland, Philadelphia, Chicago, Baltimore, Los Angeles, Seattle and Tampa Bay.

53.     However, this season the Jets are ranked #5 out of 32 and the Giants are ranked #7 out of 32 with the most-empty seats per home game, with a season long projected tally of 80,000 for the Jets and 68,000 for the Giants.

54.     Despite being named after the most densely populated city in the United States and the city with the highest population by more than double, the Giants and Jets are in the top 40% of teams every year with the most-empty seats in home games.  For example, in 2019, the Giants were #4 and the Jets #13, in 2018 the Giants were #8 and the Jets #12, in 2017 the Giants were #12 and the Jets #11.

55.     Defendants gross hundreds of millions of additional dollars at the expense of Plaintiff and the class who pay for those profits in the form of transportation costs and time to travel to an out-of-state facility, along with the additional carbon footprint imposed on the environment.

## B. EMOTIONAL AND PSYCHOLOGICAL DAMAGES

56.     A primary reason the NFL is a $100+ billion industry is due to the strong connection between the millions of NFL fans and the 32 NFL teams, a sense of belonging and affiliation called sports identification.

57.     Plaintiff and the class, together with all NFL fans, develop relationships with teams over the course of years, decades, and generations that have a strong impact on their lives.

58.     Medical experts have determined that there are at least eight factors that motivate people to become sports fans, including eustress (positive response to stress), self-esteem, escape, entertainment, aesthetic, group affiliation and family needs.

59.     Sports fandom is linked to higher levels of well-being and general happiness with one's social life as well as lower levels of loneliness and alienation.

60.     Plaintiff and the class of Giants and Jets fans lost their connection with the teams when they relocated to New Jersey and maintain minimal sports identification with the Giants and Jets due to their stadium being located in New Jersey.

61.     Despite all the money Defendants save by misnaming their teams, sharing a stadium without a dome, and utilizing free real estate, in the last 10 years, the Jets record has been 51 – 93 and the Giants record has been 57 – 87 with a combined 8 – 24 record this season *(as of the date this complaint was filed)*.

62.     As Giants and Jets fans, Plaintiff and the class are insulted, ridiculed, harassed, tormented, and bullied by NFL fans around the United States due to the affiliation of the Giants and Jets with the State of New York rather than their true home, New Jersey.

63.     Plaintiff and the class have suffered mental and emotional damages including depression, sadness, and anxiety, as well as limited and damaged eustress, self-esteem, escape, entertainment, group affiliation and family needs as a result of Defendants' conduct.

64.     Plaintiff and the class of New York Giants and Jets fans respectfully request that both teams to return to the State of New York so they can enjoy all the healthy social, psychological and physical benefits associated with sports identification of their home NFL teams.

## HISTORY OF THE GIANTS AND JETS

65.     The New York Giants Football Team was founded in 1925 by Tim Mara with an investment of only $500.

66.     The New York Jets were founded in 1959 as the Titans of New York, an original member of the American Football League ("AFL").

67.    They changed their name from the Titans to the New York Jets in 1963.

68.    The New York Giants played in Harlem, New York from 1925 – 1955, at Yankee Stadium in Bronx, New York from 1956 – 1973, and at Shea Stadium in Queens, New York in 1975.

69.    In 1976, the New York Giants left the State of New York and moved to New Jersey 10 - 20 miles away from the five boroughs of New York City to the Borough of East Rutherford, New Jersey.

70.    The Jets played in Harlem, New York from 1960 – 1963 and at Shea Stadium in Queens, New York, from 1964 – 1983.

71.    The Jets have played in New Jersey at Giants Stadium from 1984 – 2009, and MetLife Stadium in the same location since 2010.

72.    The relocation of the Giants and Jets from New York to New Jersey occurred because the New Jersey Sports and Exhibit Authority obtained tax-free land in 1971 that was suitable for an inexpensive NFL stadium.

73.    For this reason, the Giants and Jets did not have to pay for the land in East Rutherford, New Jersey.

74.    While other sports franchises in all professional leagues in the United States change their name when they relocate to a new city or state (Brooklyn Dodgers to Los Angeles Dodgers, New Jersey Nets to Brooklyn Nets, Colorado Rockies to New Jersey Devils, etc.), the Giants and Jets retained their New York name and brand after moving to New Jersey.

75.    The move to New Jersey financially benefited the Defendants alone at the expense of Plaintiff and the class of millions of Giants and Jets fans while also imposing a larger carbon footprint on the environment.

76.    Giants Stadium construction costs was only $78 million, and the stadium was used by the

Giants for 35 years and the Jets for 25 years until 2010 when it was torn down and replaced with MetLife Stadium.

77.     In 2010, MetLife Stadium was built for both the Giants and Jets at a cost of $1.6 billion paid by Defendants jointly.

78.     Approximately $400 million in taxes were used for infrastructure costs.

79.     Defendants have the opportunity to return either the Giants and/or Jets to the City and State of New York in 2025 when their current contract with MetLife Stadium expires.

80.     The Giants and/or Jets can relocate and build a new stadium next to Citi Field and the National Tennis Center in Queens, or other available property in the five boroughs of New York City, or the adjacent counties of Westchester or Nassau.

## JURISDICTION

81.     Plaintiff invokes this Court's diversity jurisdiction as the case involves parties from multiple states with allegations in excess of $75,000; Plaintiff alternatively invokes jurisdiction under Civil RICO and the Class Action Fairness act as the dispute involves monetary damages in excess of $5,000,000.  The Court has supplemental jurisdiction over the claims made under New York State law.

## VENUE

82.     Venue is proper in the Southern District of New York because Plaintiff resides in this district and the NFL maintains its headquarters within this district.

## PARTIES

83.     Plaintiff Abdiell Suero is an American citizen and resident of the City and State of New York and fan of the NFL Giants and Jets.

84.     Defendant NFL is the national football league in the United States.

85.     Defendant New York Football Giants, Inc. is a franchise of the NFL that owns and operates the New York Giants, maintaining its corporate office at Quest Diagnostics Training Center, 1925 Giants Drive, East Rutherford, NJ 07073

86.     Defendant New York Jets, LLC is a franchise of the NFL that owns and operates the New York Jets, maintaining its corporate office at 1 Jets Drive, Florham Park, NJ 07932.

87.     Defendant MetLife Stadium Company, LLC owns and operates MetLife Stadium, maintaining its corporate office at 1 MetLife Stadium Drive, East Rutherford, NJ 07073.

## CLAIMS FOR RELIEF

## CLASS ACTION ALLEGATIONS

88.     The class is initially defined as all NFL Giants and Jets fans who reside in the State of New York.

89.     This action is properly maintainable as a class action.

90.     The class is so numerous that joinder of all members is impracticable.

91.     The number and identities of class members can be determined through season ticket records and voluntary disclosure.

92.     The disposition of their claims in a class action will be of benefit to the parties and the court.

93.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action.

94.     The likelihood of individual class members prosecuting separate claims is remote.

95.     There is a well-defined community of interest in the questions of law and fact involved affecting members of the class.

96.    Among the questions of law and fact which are common to the class, and which predominate over questions affecting any individual class member are, the following:

97.    Whether Defendants violated N.Y.S. G.B.L. § 349;

98.    Whether Defendants violated N.Y.S. G.B.L. § 350;

99.    Whether Defendants violated Civil RICO;

100.   Whether Defendants' unlawful acts resulted in Unjust Enrichment;

101.   Whether Plaintiffs and the class are entitled to injunctive and equitable relief;

102.   Whether Defendants' acts were willful entitling Plaintiffs class to treble and/or punitive damages.

103.   Plaintiff is a member of the class and is committed to prosecuting this action.

104.   Plaintiff's claims are typical of the claims of the other members of the class.

105.   Plaintiff does not have interests antagonistic to or in conflict with those they seek to represent.  Plaintiff is, therefore, an adequate representative of the proposed class.

106.   The likelihood of individual class members prosecuting separate individual actions is remote due to the relatively small loss suffered by class members as compared to the burden and expense of prosecuting litigation of this nature and magnitude.

107.   Absent a class action, Defendants are likely to avoid liability for their wrongdoing, and the class members are unlikely to obtain redress for the wrongs alleged herein.

108.   Adjudication of this case on a class-wide basis is manageable by this court.

## FIRST CAUSE OF ACTION

### FALSE ADVERTISING

109.   Plaintiff repeats and reiterates paragraphs 1 – 108 of this complaint as if fully set forth in this cause of action.

14

110.    Defendants have violated and continue to violate New York State GBL False Advertising Section 350-A.

111.    Defendants the NFL and franchisee the New York Giants have engaged in false advertising since 1976, by retaining the name "New York" ("NY") after the franchise was moved to the State of New Jersey.

112.    Defendants the NFL and franchisee the New York Jets have engaged in false advertising since 1984, by retaining the name "New York" ("NY") after the franchise was moved to the State of New Jersey.

113.    The Giants and Jets logos constitute false advertising as both incorporate the name and abbreviation of New York ("NY") while both teams play in the State of New Jersey ("NJ").

114.    Defendants' products, including the Giants and Jets franchises, tickets, merchandise, memorabilia, sports cards, and every other related product is clearly calculated to deceive and mislead the purchasers and consumers of said products including Plaintiff and the class.

115.    Defendants trade under the "New York" and "NY" geographic location, name, and brand, deceiving Plaintiff and the class, together with millions of additional individuals and entities.

116.    Defendants also falsely advertise the time it takes to travel from the State of New York to MetLife Stadium in New Jersey, minimizing the time and not accounting for long distances of walking that are inconvenient and uncomfortable for most NFL fans.

117.    Defendants' website www.metlifestadium.com contains false advertising, including the following false statement: "MetLife Stadium, home to the New York Jets and New York Football Giants, **is the number one stadium in the world**…" (emphasis added)

118.    There are approximately 27 sports stadiums and arenas around the world that are larger than MetLife Stadium.  The stadium does not have a dome or retractable roof, so spectators are

uncomfortably hot or cold for most games, and the location in East Rutherford, New Jersey is

hardly ideal.  The transportation system to and from MetLife Stadium does not contain sufficient

infrastructure.  MetLife Stadium is clearly not the "number one stadium in the world."

119.    Defendants also falsely boast on their website that, "MetLife Stadium hosts the World's

Biggest Events, on the World's Biggest Stage," when this is also false as there are dozens of

bigger stages than MetLife Stadium and the biggest sporting events have never been held there

(ie. World Cup, Olympics, etc.).

120.    Defendants also falsely state on their website that MetLife Stadium, "sets the standard for

venue excellence with state-of-the-art-technology, comfort and amenities," when Defendants did

not add a dome or retractable roof in 2010 when the stadium was built; all state-of-the-art

football venues in cold or hot cities today operate with an air conditioned dome for the fans

comfort while MetLife Stadium offers fans a hot or cold, windy experience, often with rain or

snow, hardly state-of-the art comfort.

121.    Plaintiff and each member of the class request statutory damages in the amount of $50

plus transportation costs to and from MetLife Stadium.

122.    Plaintiff and the class demand that the Giants and Jets remove the "New York" and "NY"

designation from their name and merchandise until they return to the State of New York.

## SECOND CAUSE OF ACTION

## DECEPTIVE PRACTICES

123.    Plaintiff repeats and reiterates paragraphs 1 – 122 of this complaint as if fully set forth in

this cause of action.

124.    Defendants have engaged in deceptive practices by continuing to label the Giants and Jets

"New York" ("NY") teams after they left New York for a new home in New Jersey in violation

of GBL Section 349.

125.    NFL fans are tricked into believing that the Giants and Jets play in the State of New York when in fact they play in the State of New Jersey.

126.    Defendants' website includes "Fast Facts" about MetLife Stadium that include information regarding the cost, venue size, capacity, suites, suite designer, club seating capacity, clubs, parking, mass transportation, architects, and food service/merchandise partner, without even mentioning the location of MetLife Stadium.

127.    Plaintiff and the class are unable to enjoy watching Giants and Jets games due to their lack of connection with the State of New York.

128.    Plaintiff and each member of the class request statutory damages in the amount of $50 plus transportation costs to and from MetLife Stadium.

129.    Plaintiff and the class demand that the Giants and Jets remove the "New York" ("NY") designation from their name and merchandise until they return to the State of New York.

**THIRD CAUSE OF ACTION**

**CIVIL RICO**

130.    Plaintiff repeats and reiterates paragraphs 1 – 129 of this complaint as if fully set forth in this cause of action.

131.    Defendants are engaged in interstate wire fraud by naming, branding, marketing, and advertising their New Jersey teams as the New York Giants and New York Jets on the internet, television, and radio throughout the United States and around the world.

132.    Defendants knowingly and intentionally do this to fraudulently increase the value of their franchises, including artificially inflated ticket prices, inflated prices for merchandise and memorabilia, and increased and inflated prices for all other means by which the "New York

Giants" and "New York Jets" are used in interstate commerce.

133.    In so doing, Defendants have collectively turned a $500 investment into a $9 billion fraudulent enterprise, by passing off teams that play in New Jersey as the New York Giants and New York Jets on satellite television networks and the internet.

134.    Plaintiff and the class demand $2 billion in compensatory damages and $4 billion in punitive damages.

135.    Plaintiff and the class also demand that the NFL Giants and Jets return to the State of New York in 2025 when their contracts with MetLife Stadium conclude.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

136.    Plaintiff repeats and reiterates paragraphs 1 – 135 of this complaint as if fully set forth in this cause of action.

137.    Defendants were unjustly enriched by billions of dollars as result of their false advertising and deceptive practices.

138.    Defendants were enriched at the expense of Plaintiff and the class.

139.    Defendants have been unjustly enriched by ticket prices, concessions, and parking fees.

140.    Defendants have been unjustly enriched due to the time and money spent by its patrons to travel to Giants and Jets games.

141.    It is against equity and good conscience to permit Defendants to retain the billions of dollars in profits they have obtained at the expense of Plaintiff and the class.

## CONSPIRACY

142.    Defendants are engaged in a conspiracy and are jointly and severally liable for all damages alleged herein.

## DEMAND FOR JURY TRIAL

143.    Plaintiff hereby demands trial by jury on all claims so triable.

## PRAYER FOR RELIEF

Plaintiff and the class pray for the following relief:

A)  An order requiring the NFL Giants and Jets to return to stadium(s) in the State of New

York in 2025 upon conclusion of their current contracts with MetLife Stadium;

B)  An order requiring the NFL Giants and Jets be renamed the New Jersey or East

Rutherford Giants and Jets as long as they continue playing in the city of East

Rutherford, New Jersey; and

C)  That Plaintiff and the class be awarded monetary damages in the amount of $2 billion,

punitive damages in the amount of $4 billion, including a minimum of $50 per class

member, together with attorneys' fees and the costs of this action.

Respectfully Submitted,

January 3, 2022

By: */s/ Evan Spencer*
Evan Spencer
Evan Spencer Law, PLLC
305 Broadway, 7th Floor
New York, NY  10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

ATTORNEY FOR PLAINTIFF
AND THE CLASS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of January 2022, a true and correct copy of
the above and foregoing document was electronically filed with the Clerk of the Court using the
CM/ECF system.

*s/Evan Spencer*
Evan Spencer