UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABDIELL SUERO,

                    Plaintiff,

        - against -

NFL, NEW YORK FOOTBALL GIANTS,
INC., NEW YORK JETS LLC, and METLIFE
STADIUM COMPANY, LLC,

                  Defendants.

Civil Action No. 1:22-CV-31-AJN

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

HAYNES AND BOONE, LLP

Jonathan D. Pressment
Alexandra Larkin
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone: 212-659-7300
Facsimile: 212-884-9561
jonathan.pressment@haynesboone.com
alexandra.larkin@haynesboone.com

*Attorneys for Defendants NFL, New York
Football Giants, Inc., New York Jets LLC, and
New Meadowlands Stadium Company, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 4

    A.    Factual Background. .......................................................................................... 4

    B.    Plaintiff's Claims. .............................................................................................. 5

ARGUMENT ....................................................................................................................... 8

I. STANDARDS APPLICABLE TO THE INSTANT MOTION ......................................... 8

II. THE COMPLAINT FAILS TO SET FORTH ANY PLAUSIBLE CLAIMS .................. 9

    A.    Plaintiff Fails to Allege Plausible False Advertising and Deceptive Practices
            Claims. ............................................................................................................... 9

            1.    The Complaint Does Not—and Plaintiff Cannot—Demonstrate That
                 Defendants Engaged in Any Materially Misleading Conduct. ................. 10

                 a.    Defendants' Alleged Conduct Is Not Misleading. ......................... 10

                 b.    Defendants' Alleged Conduct Is Also Not Material. ..................... 14

                 c.    In Any Event, the Stadium's Alleged Conduct Is Not
                     Actionable. ...................................................................................... 14

            2.    The Complaint Lacks Allegations Demonstrating That Plaintiff
                 Suffered a Cognizable Injury as a Result of Defendants' Alleged
                 Conduct. .................................................................................................. 15

    B.    The Complaint Fails to State a Plausible Civil RICO Claim. ............................ 18

            1.    Plaintiff Cannot Demonstrate a Plausible Violation of the RICO
                 Statute. .................................................................................................... 19

            2.    Plaintiff Cannot Demonstrate a Plausible Injury to "Business
                 or Property." ........................................................................................... 20

            3.    Plaintiff Fails to Plausibly Demonstrate Defendants Caused His
                 Alleged Injury. ....................................................................................... 21

    C.    The Complaint Fails to State a Plausible Claim for Unjust Enrichment. ............ 22

    D.    The Complaint Fails to State a Plausible Claim For Conspiracy ......................... 23

III. PLAINTIFF'S CLAIMS AGAINST THE NFL MUST BE DISMISSED ............................ 23

IV.  THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ................................ 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ackerman v. Coca-Cola Co.*,
  No. 09-CV-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...........................................12

*Ainbinder v. Money Ctr. Fin. Grp., Inc.*,
  No. 10-CV-5270, 2013 WL 1335997 (E.D.N.Y. Feb. 28, 2013) ...........................................17

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)............................................................................................21

*Appalachian Enters., Inc. v. ePayment Solutions Ltd.*,
  No. 01-CV-11502, 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ..........................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................4, 9

*BankUnited, N.A. v. Merritt Environmental Consulting Grp.*,
  360 F. Supp. 3d 172 (S.D.N.Y. 2018)..........................................................................9

*Belcastro v Burberry Ltd.*,
  No. 16-CV-1080, 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) ........................................16, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................8, 24

*Bowring v. Sapporo U.S.A., Inc.*,
  234 F. Supp. 3d 386 (E.D.N.Y. 2017) .........................................................................13

*Braynina v. TJX Companies, Inc.*,
  No. 15-CV-5897, 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016)................................14, 15, 17

*Castillo v. Tyson*,
  701 N.Y.S.2d 423 (1st Dep't 2000) ...........................................................................22

*Champion v Moda Operandi, Inc.*,
  No. 20-CV-7255, 2021 WL 4340670 (S.D.N.Y. Sept. 22, 2021)............................................9

*Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020)...................................................................................13

*Cohen v. BMW Invs. L.P.*,
  144 F. Supp. 3d 492 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016).....................22

*Cooper v. Anheuser-Busch, LLC*,
    No. 20-CV-7451, 2021 WL 3501203 (S.D.N.Y. Aug. 9, 2021)..................................10, 15, 23

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) ....................................................................................................22, 23

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..............................................................................................................18

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014).................................................................................................9

*Druyan v. Jagger*,
    508 F. Supp. 2d 228 (S.D.N.Y. 2007)...............................................................................11

*Elite Union Installations, LLC v Nat'l. Fire Ins. Co. of Hartford*,
    No. 20-CV-4761, 2021 WL 4155016 (S.D.N.Y. Sept. 13, 2021)...........................................5, 9

*Ellis v. Chao*,
    336 F.3d 114 (2d Cir. 2003).................................................................................................24

*Fibermark, Inc. v. Brownville Specialty Paper Prod., Inc.*,
    419 F. Supp. 2d 225 (N.D.N.Y. 2005) ...............................................................................13

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).................................................................................................10

*Frederick v. Capital One Bank, N.A.*,
    No. 14-CV-5460, 2015 WL 5521769 (S.D.N.Y. 2015) (Nathan, J.).......................................18

*Gates v. United Healthcare Ins. Co.*,
    No. 11-CV-3487, 2014 WL 5800573 (S.D.N.Y. Nov. 7, 2014)............................................16

*George v. Starbucks Corp.*,
    857 F. App'x 705 (2d Cir. 2021) .........................................................................................15

*Gomez-Jimenez v. New York Law Sch.*,
    36 Misc.3d 230 (Sup. Ct. N.Y. Cty. 2012), *aff'd* 103 A.D. 13 (1st Dep't 2012)....................17

*Harrell v. Primedia, Inc.*,
    No. 02-CV-2893, 2003 WL 21804840 (S.D.N.Y. Aug. 6, 2003)...........................................20

*Kashef v BNP Paribas SA*,
    No. 16-CV-03228 (AJN), 2021 WL 1614406 (S.D.N.Y. Apr. 26, 2021) ................................25

*Koch v. Christie's Int'l PLC*,
    785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012)............................13

*Lynch v. Amoruso*,
    232 F. Supp. 3d 460 (S.D.N.Y. 2017) (Nathan, J.)................................................18, 19, 20, 21

*National Football League Props. v. N.J. Giants*,
    637 F. Supp. 507 (D.N.J. 1986) ...........................................................................4, 11, 12, 20

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)...............................................................................................10

*In re Platinum-Beechwood Litig.*,
    No. 18-CV-10936, 2020 WL 1932601 (S.D.N.Y. Apr. 21, 2020) .........................................23

*Pollock v. Shea*,
    No. 20-CV-6273, 2021 WL 4962736 (S.D.N.Y. Oct. 26, 2021)...........................................4, 9

*Rothstein v. GMAC Mortg., LLC*,
    No. 12 Civ. 3412 (AJN), 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013), *rev'd
    on other grounds*, 794 F.3d 256 (2d Cir. 2015) ........................................................................18

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)........................................................................................19, 20

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24 (2000) ........................................................................................................15

*Swan Media Grp., Inc. v. Staub*,
    841 F. Supp. 2d 804 (S.D.N.Y. 2012)....................................................................................8

*Tasini v. AOL, Inc.*,
    851 F. Supp. 2d 734 (S.D.N.Y. 2012)..................................................................................14

*Tears v. Boston Sci. Corp.*,
    344 F. Supp. 3d 500 (S.D.N.Y. 2018) (Nathan, J.)...............................................................15

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021)..................................................................10, 12, 24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................................................................16

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011)..................................................................................12

*Woods v. Empire Health Choice, Inc.*,
    574 F.3d 92 (2d Cir. 2009).................................................................................................18

**Statutes**

18 U.S.C. § 1962.........................................................................................................18, 21

N.Y. Gen. Bus. Law § 349................................................................................. *passim*

N.Y. Gen. Bus. Law § 350................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b)............................................................................19

Federal Rule of Civil Procedure 12(b)(6) ........................................................... *passim*

Federal Rule of Civil Procedure 15(a)(2) ........................................................................24

Defendants the National Football League ("NFL"), New York Football Giants, Inc. ("Giants"), New York Jets LLC ("Jets"), and New Meadowlands Stadium Company, LLC[1] (the "Stadium," and, collectively with the NFL, Giants, and Jets, the "Defendants") respectfully submit this Memorandum of Law in Support of their motion to dismiss, with prejudice, the Class Action Complaint (ECF No. 1) (the "Complaint" or "Compl.") filed by Plaintiff Abdiell Suero ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff's Complaint purports to bring a putative class action, seeking billions of dollars in damages on behalf of "millions of class members," based primarily on claims that the Giants and Jets—two historic NFL franchises with longstanding and well-recognized connections to the New York Metropolitan area—engaged in false advertising and deceptive practices by retaining New York names following their well-publicized moves to East Rutherford, New Jersey in the 1970s and '80s. These claims are calculated to score points in the headlines—*not* the courtroom.

Indeed, there is nothing misleading about the Giants' and Jets' use of New York in their names at all. Since each club began playing their home games just seven miles west of midtown Manhattan many decades ago, Defendants have openly, consistently, and honestly provided first-class entertainment for and *squarely within* the New York metropolitan area, as a decision from the District of New Jersey cited in the Complaint recognized. Defendants have never represented that the Stadium is located anywhere other than New Jersey. Nor is the New York component of the teams' names understood to identify the location of the teams' stadium. Indeed, Plaintiff himself alleges that the geographic components of NFL teams' names refers to their hometowns.

Plaintiff's attempt to nonetheless manufacture false advertising, deceptive practice, civil

---

[1] New Meadowlands Stadium Company, LLC is incorrectly named as MetLife Stadium Company, LLC.

RICO and unjust enrichment claims arising from the Giants' and Jets' continuing use of New York names following their well-known moves to New Jersey nearly half-a-century ago fails under well-established New York and Federal law.  Defendants do not believe this case has *any* merit or is a productive use of the Court's valuable resources and time and respectfully move this Court to dismiss the Complaint in its entirety, and with prejudice, as each of Plaintiff's claims is fatally flawed and cannot be cured by amendment.[2]

*First*, Plaintiff's false advertising and deceptive practices claims fail because such claims require that Plaintiff demonstrate Defendants engaged in materially misleading conduct.  Under New York law, claims for false advertising and deceptive practices are held to standards of "a reasonable consumer acting reasonably under the circumstances."  Plaintiff's claimed lack of awareness of the Giants' and Jets' well-known moves to New Jersey in the 1970s and '80s indisputably fails to satisfy this standard.  And Plaintiff's claim that the Stadium falsely claims to be "the number one stadium in the world" fails because the statement is mere puffery and, among other things, the Stadium has repeatedly been named the top grossing stadium in the world.

Further, even if Plaintiff had alleged that Defendants engaged in "materially misleading conduct," the Complaint would still fail because Plaintiff has not and cannot allege that he (or anyone else) suffered a legally cognizable injury.  Plaintiff's only alleged injuries are: (1) costly and time-consuming transportation to games in New Jersey; (2) mental and emotional damages as a result of a lost "connection with the teams[;]" and (3) "dollars from interstate commerce that should have been rightfully spent" in New York—an alleged injury for which the proposed class plainly lacks standing.  These are not cognizable injuries in any sense of the law.

---

[2]   Defendants also reserve the right to move for Rule 11 sanctions.  Indeed, the imposition of sanctions is  especially appropriate here because Plaintiff's counsel has also issued baseless threats to various of Defendants' sponsors, demanding that they cease doing business with Defendants or risk being added as defendants to this meritless action.

*Second*, Plaintiff's civil RICO claim fails because a civil RICO claim requires allegations of at least two predicate acts. Here, at most, the Complaint alleges a single predicate act—wire fraud. Yet, that allegation is entirely conclusory and lacks the particularity required by Federal Rule 9(b). Moreover, Plaintiff's allegations of increased transportation costs, emotional injuries, and lost revenues to the State of New York fail to qualify as injuries to Plaintiff's "business or property," as is required to state a viable civil RICO claim. Finally, Plaintiff cannot demonstrate that the Giants' and Jets' continued use of New York names is part of a criminal enterprise. In fact, there are myriad other reasons for the teams' maintenance of their New York identities—their history and tradition in New York, their earned goodwill and recognition through their association with New York, and the continued location of their stadium in the New York metropolitan area.

*Third*, Plaintiff's claims for unjust enrichment and civil conspiracy are similarly ill-fated. Plaintiff's unjust enrichment claim is entirely duplicative of his false advertising and deceptive practices claims and fails for this reason alone. Moreover, Plaintiff does not allege that he purchased any products or merchandise from Defendants and, even if he did, Plaintiff does not—and cannot—explain why Defendants are not entitled to payments for tickets used, concessions purchased, or, in the Stadium's case, parking utilized, no matter where the stadium in which the games were played is located. And, to the extent the Complaint can be read to include a standalone claim for "conspiracy," that claim fails because New York does not recognize an independent cause of action for civil conspiracy.

Accordingly, the Complaint should be dismissed in its entirety, with prejudice, as the legal insufficiencies cannot be cured by amendment.

## STATEMENT OF FACTS[3]

### A.   Factual Background.

The NFL has been a professional football league in the United States for more than 100 years and now consists of 32 teams that Plaintiff alleges are identified by their "team name, logo and location *or hometown*." (*See* Compl. ¶¶ 1, 6 (emphasis added).) The NFL's teams are dispersed among some of the largest cities and regions in the United States. (*Id.* ¶ 7.)

According to the Complaint, NFL fans "come to follow and identify with their local team(s), purchasing tickets, memorabilia, and merchandise in support of their team(s) . . . as well as *traveling to watch live NFL football games at the stadium of their home team(s).*" (*Id.* ¶ 9 (emphasis added).) The New York metropolitan area is home to two NFL teams—the Giants and Jets. (*Id.* ¶¶ 68-71.) The Giants were founded in 1925 and, before 1976, played all of their home games at various locations in New York City with the exception of one year in which they played at the Yale Bowl in Connecticut.[4] (*Id.* ¶¶ 65, 68.) The Jets were founded in 1959 and, until 1983, played all of their home games at various locations in New York City as well. (*Id.* ¶¶ 66, 70.)

The decision in *National Football League Props. v. N.J. Giants*, 637 F. Supp. 507 (D.N.J. 1986)—on which Plaintiff expressly relies—recognized that, "[t]he NFL Constitution establishes the New York Football Giants' home territory as the area within a seventy-five mile radius of the City of New York . . . which includes portions of New York, New Jersey, and Connecticut." *Id.*[5]

---

[3]   The facts set forth in this motion are derived from the Complaint. While Defendants do not admit the truth of the Complaint's allegations, on a motion to dismiss, all well-pled factual allegations must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[4]   *See National Football League Props. v. N.J. Giants*, 637 F. Supp. 507, 510 (D.N.J. 1986).

[5]   On a motion to dismiss pursuant to Rule 12(b)(6), the court may properly consider documents referenced in the complaint and matters of which judicial notice may be taken. *See, e.g., Pollock v. Shea*, No. 20-CV-6273, 2021 WL 4962736, at *2 (S.D.N.Y. Oct. 26, 2021); *see also, infra*, at 9. Here, the Complaint dedicates almost an entire page to the decision in *Nat'l Football League Props.* (*See* Compl. ¶¶ 19–21.)

In 1976—nearly 50 years ago—the Giants moved their operations to East Rutherford, New Jersey. (Compl. ¶ 69.) The Complaint alleges the Giants "retained the name 'New York Giants' when [they] began playing home games in New Jersey" to "maintain continuity of tradition[.]" (*Id*. 20.) The Jets moved their operations to New Jersey in 1984—nearly 40 years ago. (*Id*. ¶ 71.) Both teams have played their home games in East Rutherford, New Jersey—first at Giants Stadium and, since 2010, at MetLife Stadium—for decades. (*Id*. ¶¶ 71, 76-77.)

The Jets and Giants are not the only sports franchises that play their home games outside the city with which they are affiliated. (*Id*. ¶¶ 26–31.) In fact, the Complaint references numerous examples of sports teams whose home stadiums are located outside the geographic boundaries of their "home" cities including: the Dallas Cowboys (who play their home games in Arlington, Texas), the Los Angeles Angels (who play their home games in Anaheim, California), the Washington Commanders (who play their home games in Landover, Maryland), and the San Francisco 49ers (who play their home games in Santa Clara, California).[6] (*Id*.)

## B.   **Plaintiff's Claims.**

On January 3, 2022, Plaintiff filed the instant putative class action asserting claims for False Advertising (First Cause of Action), Deceptive Practices (Second Cause of Action), Civil RICO (Third Cause of Action), and Unjust Enrichment (Fourth Cause of Action) against all Defendants on behalf of Plaintiff and "millions of other similarly situated individuals[.]" (*See* Compl. at Introduction, ¶¶ 109-141.) The Complaint also includes a single conclusory sentence by which Plaintiff appears to assert a standalone claim for "Conspiracy." (*Id*. ¶ 142.)

---

[6]   As a matter of public record numerous other professional sports teams—across various leagues—play their home games in cities other than those to which their team name is tied including: Major League Baseball's Tampa Bay Rays (St. Petersburg, Florida) and Atlanta Braves (Cumberland, Georgia); and the National Hockey League's Phoenix Coyotes (Glendale, Arizona). The Court may properly take these matters of public record into account in deciding a motion to dismiss. *Elite Union Installations, LLC v Nat'l. Fire Ins. Co. of Hartford*, No. 20-CV-4761, 2021 WL 4155016, *4 (S.D.N.Y. Sept. 13, 2021).

The crux of Plaintiff's claims is that the Giants and Jets engage in false advertising and deceptive practices by using New York in their team names despite playing their home games outside the geographic boundary of New York City in New Jersey. (*Id.* ¶ 19.) Specifically, Plaintiff claims "NFL fans are tricked into believing that the Giants and Jets play in the State of New York when in fact they play in the State of New Jersey." (*Id.* ¶ 125.) Plaintiff also claims "[m]any NFL fans who attend Giants or Jets games for the first time are unaware that these teams play out-of-state" and those "who watch televised games are given the false impression that the Giants and Jets are from the State of New York." (*Id.* ¶¶ 23, 25.)

Plaintiff further alleges—without support—that the Giants and Jets "falsely advertis[e] the time it takes to travel from the State of New York to MetLife Stadium in New Jersey, minimizing the time and not accounting for long distances of walking that are inconvenient and uncomfortable for most NFL fans" and "[m]any NFL fans would not attend live games of the Giants or Jets if they were warned in advance that they play in the State of New Jersey[.]"[7] (*Id.* ¶¶ 24, 116.)

Plaintiff's allegations against the Stadium are even more of a stretch—asserting that the Stadium engages in false advertising and deceptive practices by allegedly including statements on its website that declare MetLife Stadium "is the number one stadium in the world" and "sets the standard for venue excellence with state-of-the art-technology, comfort and amenities" simply because it "does not have a dome or retractable roof." (*Id.* ¶¶ 117-118, 120.) Plaintiff also alleges that the Stadium's website "falsely boast[s]" that, "MetLife Stadium hosts the World's Biggest Events, on the World's Biggest Stage," despite Plaintiff's assertion that "there are dozens of bigger stages than MetLife Stadium and the biggest sporting events have never been held there (ie. [*sic*]

---

[7]   The Complaint includes numerous allegations regarding the alleged financial motivations underlying the Giants' and Jets' decisions to continue using their New York names and the alleged value of the Giants, Jets, and other NFL teams. (*See, e.g.,* Compl. ¶¶ 18, 22, 34, 55, and 75.) None of these allegations are relevant to whether Plaintiff has stated any claims capable of surviving a Federal Rule of Civil Procedure 12(b)(6) motion.

World Cup, Olympics, etc.)." (*Id.* ¶ 119.)

Plaintiff's civil RICO claim alleges that Defendants "engaged in interstate wire fraud by naming, branding, marketing, and advertising their New Jersey teams as the New York Giants and New York Jets on the internet, television, and radio throughout the United States and around the world." (*Id.* ¶ 131.) Plaintiff contends Defendants engage in such activity "to fraudulently increase the value of their franchises, including artificially inflated ticket prices, inflated prices for merchandise and memorabilia, and increased and inflated prices for all other means by which the 'New York Giants' and 'New York Jets' are used in interstate commerce." (*Id.* ¶ 132.)

Plaintiff's unjust enrichment claim alleges Defendants "were unjustly enriched by billions of dollars as [a] result of their false advertising and deceptive practices." (*Id.* ¶137.) Specifically, Plaintiff alleges that Defendants have been unjustly enriched "by ticket prices, concessions, and parking fees" and "due to the time and money spent by its patrons to travel to Giants and Jets games." (*Id.* ¶¶ 139-140.) And Plaintiff's "Conspiracy" claim—while not labeled a "Cause of Action"—consists of a single sentence by which Plaintiff asserts, "Defendants are engaged in a conspiracy and are jointly and severally liable for all damages alleged herein." (*Id.* ¶142.)

As a result of Defendants' alleged conduct, Plaintiff contends that he and "similarly situated NFL fans have been damaged" by allegedly: (1) "being subjected to expensive and time-consuming transportation from the City and State of New York to East Rutherford, New Jersey on game days to watch the Giants or Jets play[;]" (2) "los[ing] their connection with the teams *when they relocated to New Jersey*[;]" (3) "suffer[ing] mental and emotional damages including depression, sadness, and anxiety[;]" and (4) "[being] insulted, ridiculed, harassed, tormented, and bullied by NFL fans around the United States due to the affiliation of the Giants and Jets with the

State of New York rather than their true home, New Jersey[.]"  (*Id.* ¶¶ 37, 60, 62-63.)[8]  These allegations of damages are neither legally cognizable nor appropriate grounds to seek redress.

Nevertheless, Plaintiff seeks illogical injunctive relief requesting that the Giants and Jets be ordered to "return to stadium(s) in the State of New York" or rename themselves as the "New Jersey or East Rutherford Giants and Jets[.]"  (*Id.* at p. 19.)  In addition, Plaintiff seeks "monetary damages in the amount of $2 billion, punitive damages in the amount of $4 billion including a minimum of $50 per class member, together with attorneys' fees and the costs of this action."  (*Id.*)

Defendants now move to dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I.

### STANDARDS APPLICABLE TO THE INSTANT MOTION

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must demonstrate grounds for relief beyond mere "labels and conclusions." *Id.* at 555.  A complaint must also set forth "[f]actual allegations [that are] . . . enough to raise a right to relief above the speculative level." *Id.*  "Though the Court must accept the factual allegations of a complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 806 (S.D.N.Y. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"In considering whether a complaint states a claim upon which relief can be granted, the court 'begin[s] by identifying pleadings that, because they are no more than conclusions, are not

---

[8]   The Complaint does not identify *any* specific damages purportedly suffered by Plaintiff or members of the proposed class as a result of the Stadium's alleged misconduct.

entitled to the assumption of truth,' and then determines whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" *BankUnited, N.A. v. Merritt Environmental Consulting Grp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Importantly, a court need not accept "general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, matters of which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit." *Pollock v. Shea*, 2021 WL 4962736, at *2; *Elite Union Installations, LLC*, 2021 WL 4155016, at *4; *Champion v Moda Operandi, Inc.*, No. 20-CV-7255, 2021 WL 4340670, at *5 (S.D.N.Y. Sept. 22, 2021).

## II.

## THE COMPLAINT FAILS TO SET FORTH ANY PLAUSIBLE CLAIMS

### A.  Plaintiff Fails to Allege Plausible False Advertising and Deceptive Practices Claims.

Plaintiff's claims for false advertising (First Cause of Action) and deceptive practices (Second Cause of Action) are brought pursuant to New York General Business Law Sections 349 ("Section 349") and 350 ("Section 350").  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" N.Y. Gen. Bus. Law § 349.  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id.* § 350.  The

Second Circuit has held that the claims require the same elements and should be analyzed together. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

"To state a claim under either section [349 or 350], a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451, 2021 WL 3501203, at *4 (S.D.N.Y. Aug. 9, 2021). Plaintiff's Complaint is fatally flawed in several respects.

**1.    The Complaint Does Not—and Plaintiff Cannot—Demonstrate That Defendants Engaged in Any Materially Misleading Conduct.**

### a.    *Defendants' Alleged Conduct Is Not Misleading.*

The Second Circuit has held that to qualify as "materially misleading conduct" the alleged conduct must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300; *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (dismissing deceptive-practices and false advertisement claims pursuant to Rule 12(b)(6)). The test is an objective one. *Id.*

Thus, to demonstrate "materially misleading conduct" for purposes of a false advertising or deceptive practices claim, a claimant must establish that "a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled" by the defendant's alleged conduct. *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (dismissing case pursuant to Rule 12(b)(6)). Here, the mere fact that the Giants and Jets have continually used names that include "New York" even though their operations and home games moved seven miles west of midtown Manhattan to New Jersey

decades ago does not—*ipso facto*—demonstrate they engaged in materially misleading conduct.[9]

Tellingly, Plaintiff fails to allege that Defendants ever represented that the Giants' and Jets' home stadium is located in New York. Instead, the Complaint affirmatively alleges just the opposite—that Defendants openly "advertise the time it takes to travel from the State of New York to MetLife Stadium *in New Jersey*[.]" (Compl. ¶ 116 (emphasis added).) Nor does Plaintiff allege that *he* was ever deceived into believing that the Giants and Jets play home games in New York.

Dismissal is also warranted to the extent the Stadium's location is communicated to consumers in the sale of tickets or appears on the tickets themselves. *See, e.g.*, *Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007) (dismissing pursuant to Rule 12(b)(6) where reasonable consumer would not be misled into believing concert was guaranteed to proceed as scheduled where ticket stated, "DATE & TIME ARE SUBJECT TO CHANGE"). To allege that the football games the Giants and Jets have played in New Jersey—for many decades—is materially misleading to a reasonable consumer is not plausible on its face, uncurable by amendment, and merely demonstrates the speciousness of Plaintiff's claims.

The thrust of the Complaint is that the Giants and Jets are branded "New York" teams despite playing home games just across the Hudson River in East Rutherford, New Jersey. Yet, Plaintiff fails to cite any requirement that the city associated with a team's name identify the location of its home *stadium*. Indeed, the Complaint itself alleges that the team names can refer to their "hometown." (Compl. ¶ 6.) Accordingly, the Giants' and Jets' use of New York in their team names is not misleading at all—it merely refers to the teams' hometown, which Plaintiff's own allegations acknowledge is permissible. Moreover, Plaintiff concedes that there are a host of teams, across multiple leagues, that play their home games in stadiums located outside the city that

---

9    *See National Football League Props.*, 637 F. Supp. at 510 (recognizing that the Giants "play home games in East Rutherford, New Jersey, less than seven miles from midtown Manhattan[.]").

is referred to in their team names.  (Compl. ¶¶ 26-31; *supra*, at 6, n. 6.)

The Complaint's reliance on *National Football League Props. v. N.J. Giants*, 637 F. Supp. 507, 510 (D.N.J. 1986), a trademark infringement case, further underscores the deficiencies of Plaintiff's claims.  (*Id.* ¶¶ 19-21.)  In *Nat'l Football League Props.*, the Court explained that "[t]he NFL Constitution establishes the New York Football Giants' home territory as the area within a seventy-five mile radius of the City of New York and, thus, the Giants' fans are concentrated in the New York metropolitan area which includes portions of New York, New Jersey, and Connecticut."  *Nat'l Football League Props*, 637 F. Supp. at 510.  The Court also noted that the Giants' home stadium in New Jersey is "less than seven miles from midtown Manhattan"—well within the 75-mile radius of New York City that defines the Giants' and Jets' "home territory." *Id.*[10] Thus, referring to the Giants and Jets as New York teams is not misleading at all.

Plaintiff does not seriously dispute that it is common knowledge the Giants and Jets play their home games in New Jersey—and have done so for decades.  This is also fatal to Plaintiff's claims.  *See Twohig*, 519 F. Supp. 3d at 161-63 (dismissing case pursuant to Rule 12(b)(6) against producer of "vanilla soymilk" that was not made primarily from vanilla bean because reasonable consumer understands "vanilla" as a flavor not an ingredient).  Plaintiff's attempt to nonetheless argue that the Giants' and Jets' continued use of their New York names following their moves to New Jersey in the 1970s and '80s qualifies as "materially misleading conduct," does not—and cannot—pass muster under the "reasonable consumer" test.  *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011); *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (determining likelihood that reasonable consumers would be

---

[10]   The 75-mile radius of a team's "home" city applies to all NFL teams.  *See* www.onlabor.org/wp-content/uploads/2017/04/co_.pdf at 12.  Thus, while the decision in *Nat'l Football League Props.* does not address the Jets specifically, the Court's finding that East Rutherford, New Jersey is within the Giants' "home territory" applies equally to the Jets because it also identifies as a New York team and is subject to the same 75-mile radius.

misled entails "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 495, 501 (2d Cir. 2020) (affirming dismissal pursuant to Rule 12(b)(6) because a reasonable consumer would not be misled into thinking that an "Angus Steak & Egg Breakfast Sandwich" from Dunkin Donuts that costs $4.00 contains an actual "steak").

Noticeably absent from the Complaint is *any* allegation—not one—that *Plaintiff* was unaware the Giants and Jets play their home games in New Jersey. Instead, Plaintiff affirmatively alleges that he knew the Giants and Jets play their home games in New Jersey. (Compl. ¶ 60.) Indeed, Plaintiff claims he "lost [his] connection with the teams *when they relocated to New Jersey*"—in 1976 (for the Giants) and in 1984 (for the Jets).[11] (*Id.*) Thus, on the face of the Complaint, Plaintiff has admittedly known that the Giants and Jets play their home games in New Jersey for decades.[12] Plaintiff's false advertising and deceptive practices claims fail for this reason as well. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 119 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) (dismissing deceptive practices claim pursuant to Rule 12(b)(6) because plaintiff knew product was counterfeit before making the purchase at issue.)

Moreover, even if Plaintiff lacked actual knowledge that the Giants and Jets play their home games in New Jersey—which he indisputably had—his claims would still fail because there is no dispute that the Giants and Jets openly disclose this fact. *See, e.g.*, *Fibermark, Inc. v. Brownville Specialty Paper Prod., Inc.*, 419 F. Supp. 2d 225, 241-42 (N.D.N.Y. 2005) ("[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed. . . ."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386 (E.D.N.Y. 2017) (dismissing case pursuant to

---

[11] Indeed, if Plaintiff's alleged injury is his "lost [] connection" with the teams "when they relocated to New Jersey"—in the 1970s and 80s—his claims are undoubtedly time-barred.

[12] Plaintiff further alleges that "fans around the United States" are aware that the Giants and Jets play their home games in New Jersey. (Compl. ¶ 62.)

Rule 12(b)(6) because disclaimer on Sapporo beer bottles stating it is brewed in Canada defeated deceptive practices claim and citing similar cases.)

### b.   *Defendants' Alleged Conduct Is Also Not Material.*

Even assuming—*arguendo*—that the Giants' and Jets' continued identification as New York teams is somehow "misleading," the Complaint would still fail to set forth any cognizable claims for false advertising and deceptive practices.  Under New York law, such claims require a showing that the alleged misleading conduct was also material.  *See, e.g.*, *Braynina v. TJX Companies, Inc.*, No. 15-CV-5897, 2016 WL 5374134, *5 (S.D.N.Y. Sept. 26, 2016) (dismissing claims pursuant to Rule 12(b)(6)).  "A 'material' deception is one involving information that is important to consumers and likely to affect their choice of product."  *Id.*  If a plaintiff's choice would have been the same regardless of whether they understood the facts behind the allegedly "misleading" conduct, this element is not satisfied.  *See id.*

Here, Plaintiff fails to allege that his purported choice to attend a Giants or Jets game was in any way based on a belief that the teams played their home games in New York.  In fact, Plaintiff admits he was fully aware that the Giants and Jets play in New Jersey—and has been for years.  (Compl. ¶ 60.)  Accordingly, Plaintiff cannot demonstrate that the alleged misleading conduct was material to his alleged choice to attend games in New Jersey.  *See, e.g., Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 745 (S.D.N.Y. 2012) (dismissing case pursuant to Rule 12(b)(6) where statements were not material because they were "plainly irrelevant" to decisions at issue).

### c.   *In Any Event, the Stadium's Alleged Conduct Is Not Actionable.*

Finally, to the extent the Complaint alleges MetLife Stadium committed deceptive practices or false advertising by claiming to be the "number one stadium in the world," these statements are plainly not actionable.  Under New York law, such statements are "considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted

as such by the buyer." *See George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021) (affirming dismissal of claims pursuant to Rule 12(b)(6) because advertisements such as "[b]est coffee for the Best You" and "Starbucks or nothing" are not actionable under Section 349 and 350). Moreover, to the extent Plaintiff's allegation refers to the Stadium's position as the "top grossing stadium in the world"—which appears on the Stadium's website—that is a distinction the Stadium has repeatedly earned. *See* https://www.metlifestadium.com/news/2015/01/06/metlife-stadium-named-billboard-s-top-grossing-stadium-in-the-world.

### 2. The Complaint Lacks Allegations Demonstrating That Plaintiff Suffered a Cognizable Injury as a Result of Defendants' Alleged Conduct.

To establish claims for false advertising and deceptive practices, a plaintiff must also prove "actual damages" which "requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Cooper*, 2021 WL 3501203, at *4; *Braynina*, 2016 WL 5374134, at *9. Plaintiff cannot satisfy this burden.

Indeed, while Plaintiff alleges—without basis—that Defendants' conduct was "calculated to deceive and mislead" purchasers of Defendants' products, and that "NFL fans are tricked" into believing the Giants and Jets play in New York (Compl. ¶¶ 114, 125), at no point does Plaintiff allege that *he* actually purchased anything from the Giants or Jets (*e.g.*, tickets, merchandise, etc.) *based on* the mistaken belief that the teams play in New York. Thus, Plaintiff cannot establish or prove a causal connection between the alleged misleading conduct and Plaintiff's alleged injury.

Absent any allegations demonstrating that Defendants' purported conduct *caused* his alleged injury, Plaintiff's claims fail as a matter of law. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). A pleading must allege "a causal connection between some injury to plaintiffs and some misrepresentation made by defendants." *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 516 (S.D.N.Y. 2018) (Nathan, J.) (quoting *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593 (1st Dep't 1998)) (dismissing case pursuant to Rule 12(b)(6) because causal element was not met when

15

plaintiff "failed to allege facts connecting his alleged injury with [defendant's] statements").

Yet, even if Plaintiff had made purchases from Defendants on the basis of Defendants' alleged misleading conduct and could demonstrate that such alleged misleading conduct caused him to suffer the injuries of which he complains, Plaintiff still fails to satisfy his burden to demonstrate a cognizable injury. The only injuries alleged are: (a) "expensive and time-consuming transportation from the City and State of New York to East Rutherford, New Jersey on game days[;]" (b) "mental and emotional damages including depression, sadness and anxiety[;]" and (c) the alleged "syphon[ing] [of] billions of dollars from interstate commerce that should have been rightfully spent in the State of New York."[13]  (Compl. at 1, ¶¶ 37, 63.)  None of these qualify as a legally cognizable injury.

Plaintiff's claim that Defendants' alleged misleading conduct caused him to suffer injury in the form of excess transportation time and costs fails as a matter of law. To sustain claims under Sections 349 and 350-A based on allegations of increased costs, a plaintiff must demonstrate that he/she overpaid for a product or service by reference to some objective standard—*i.e.*, the price the plaintiff paid is *objectively* more than the product or service he/she received is worth. *See, e.g.*, *Belcastro v Burberry Ltd.*, No. 16-CV-1080, 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017) (dismissing case pursuant to Rule 12(b)(6) because plaintiff failed to "allege that he overpaid by some objective measure, and not just that he felt, subjectively, that he overpaid"). Here, Plaintiff fails to identify any discernible legal standard demonstrating that he paid more for transportation to New Jersey than the transportation was objectively worth.

---

[13]  Plaintiff purports to bring these claims on behalf of a class. (Compl. at 1.)  Yet, there is no basis for this action to proceed at all, much less as a class action. Among other things, the alleged injuries of which Plaintiff complains will undoubtedly vary widely by claimant. This, alone, precludes the case from proceeding as a class action. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In any event, Defendants need not address the woefully deficient and incurable class allegations at this juncture. *See Gates v. United Healthcare Ins. Co.*, No. 11-CV-3487, 2014 WL 5800573, *12 (S.D.N.Y. Nov. 7, 2014).

Further, to successfully allege a claim for deceptive practices or false advertising, New York law "requires some connection between the deception and the price actually paid by the plaintiff or the intrinsic value of the good." *Id.* at *1. Here, Plaintiff does not—and cannot—allege that Defendants' alleged misleading conduct caused the costs of transportation to New Jersey to be any higher than they would have been absent the alleged misleading conduct. Instead, Plaintiff merely alleges he incurred *additional* transportation costs by having to travel to New Jersey. Yet, New York courts refuse to recognize "travel or other (often inevitable) collateral expenses that led to [plaintiffs'] purchase" as cognizable injuries. *Braynina*, 2016 WL 5374134 at *11 (rejecting transportation-costs injury, noting "Plaintiffs identify no authority, and this Court is aware of none, ratifying a 'travel expenses' theory of injury under § 349 or § 350 where the underlying claim is deceptive pricing conduct."). Thus, any additional travel costs Plaintiff paid to get to New Jersey are collateral to his purchase and fail to qualify as a separate, cognizable injury. *Id.*

Plaintiff's assertion that he has suffered "mental and emotional damages" is also unavailing. (Compl. ¶ 63). The mental and emotional damages allegedly suffered by fans who purportedly "lost their connection with the [Giants and Jets] when they relocated to New Jersey" amount to, at most, frustration and disappointed expectations. (*Id.* ¶ 60.) Such damages are simply not recognized under New York law. *See Gomez-Jimenez v. New York Law Sch.*, 36 Misc.3d 230, 251-52 (Sup. Ct. N.Y. Cty. 2012), *aff'd* 103 A.D. 13 (1st Dep't 2012). Moreover, New York law precludes claimants from recovering damages for emotional distress absent allegations that the emotional distress was caused by a fear for the plaintiff's own physical safety. *See Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270, 2013 WL 1335997, *10 (E.D.N.Y. Feb. 28, 2013). No such allegations are, or could be, asserted here.

Finally, Plaintiff's contention that the football games played by the Jets and Giants in New Jersey have "syphoned billions of dollars from interstate commerce that should have been

rightfully spent in the State of New York" (Compl. at 1), is doomed from the start because Plaintiff lacks standing to assert such claims. *See Woods v. Empire Health Choice, Inc.*, 574 F.3d 92 (2d Cir. 2009) (plaintiff lacked standing to sue on behalf of U.S. Government's injury); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) (plaintiff lacked standing to complain of a state's loss of tax revenues).

Thus, the false advertising and deceptive practices claims warrant dismissal with prejudice.

**B.    The Complaint Fails to State a Plausible Civil RICO Claim.**

The gravamen of Plaintiff's civil RICO claim is that Defendants "engaged in interstate wire fraud by naming, branding, marketing, and advertising their New Jersey teams as the New York Giants and New York Jets on the internet, television, and radio throughout the United States and around the world[,]" and "knowingly and intentionally do this to fraudulently increase the values of their franchises, including artificially inflated ticket prices, inflated prices for merchandise and memorabilia, and increased and inflated prices for all other means by which the 'New York Giants' and 'New York Jets' are used in interstate commerce." (Compl. ¶¶ 131-32.)

To state a valid civil RICO claim, a plaintiff must plausibly allege and be able to demonstrate: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 465 (S.D.N.Y. 2017) (Nathan, J.) (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."[14] *Frederick v.*

---

[14] "RICO allegations merit particular scrutiny if, as here, the predicate acts are mail and wire fraud, and if the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion." *Rothstein v. GMAC Mortg., LLC*, No. 12 Civ. 3412 (AJN), 2013 WL 5437648, *12 (S.D.N.Y. Sept. 30, 2013), *rev'd on other grounds*, 794 F.3d 256 (2d Cir. 2015).

*Capital One Bank, N.A.*, No. 14-CV-5460, 2015 WL 5521769, *9 (S.D.N.Y. 2015) (Nathan, J.) (quotations omitted). Plaintiff's civil RICO claim is frivolous in all respects.

### 1.     Plaintiff Cannot Demonstrate a Plausible Violation of the RICO Statute.

To successfully allege a violation of the RICO statute, a plaintiff must plausibly allege a "pattern of racketeering activity," 18 U.S.C. § 1962(a)-(c), which means the Complaint must "plausibly allege the commission of at least two 'predicate acts.'" *Lynch*, 232 F. Supp. 3d at 466. Here, even a generous reading of Plaintiff's Complaint (for purposes of this motion to dismiss) reveals, at most, conclusory allegations of a *single* predicate act—wire fraud. (Compl. ¶ 131.)

Moreover, even if Plaintiff's conclusory allegation of wire fraud were enough—and it is *not*—civil RICO claims based on wire fraud face close judicial scrutiny. Like other fraud claims, Federal Rule of Civil Procedure 9(b) governs whether the Complaint "state[s] with particularity the circumstances constituting fraud or mistake." *Lynch*, 232 F. Supp. 3d at 466. In the civil RICO context, this requires that the Complaint identify "the contents of the communications, who was involved, and where and when they took place, and explain why they were fraudulent." *Id.* (quoting *Spool*, 520 F.3d at 185). These allegations must "give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiff's Complaint never identifies the alleged communication on which his civil RICO claim is based—much less the date, content, and destination of such communication. Instead, Plaintiff relies on a single conclusory allegation that Defendants "engaged in interstate wire fraud by naming, branding, marketing, and advertising" the teams as from New York "on the internet, television, and radio . . . ." (Compl. ¶ 131.) Such a conclusory allegation is plainly insufficient to satisfy the requirements of Rule 9(b). *See Lynch*, 232 F. Supp. 3d at 466.

In addition, the Complaint fails "to allege facts that give rise to a strong inference of fraudulent intent." *See Shields*, 25 F.3d at 1128. To meet this requirement, a plaintiff must allege

and demonstrate facts showing a defendant had both a motive and opportunity to commit fraud, or

facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Id.*

Here, at most, the Complaint generally alleges—*in purely conclusory fashion*—that Defendants

were financially incentivized to maintain their New York identities. Yet, courts "assume that the

defendant is acting in his or her informed economic self-interest." *Id.* at 1130. That is not enough

to sustain a civil RICO claim. *See, e.g.*, *Harrell v. Primedia, Inc.*, No. 02-CV-2893, 2003 WL

21804840, \*3 (S.D.N.Y. Aug. 6, 2003). Even assuming Plaintiff's allegations are true, this is not

the kind of hidden, surreptitious and unlawful conduct of a criminal enterprise required to state a

viable civil RICO claim. Defendants have acted openly, consistently and honestly to provide a

first-class experience in a venue located seven miles from New York for many decades.

Plaintiff's civil RICO claim also fails to consider the myriad other reasons for maintaining

the teams' New York identity—their history and tradition in New York, their earned goodwill and

recognition through their association with New York, and their continued location in the New York

metropolitan area. In fact, the Court in *Nat'l Football League Props.* specifically noted that the

Giants retained their New York name after moving to New Jersey "[t]o maintain the continuity of

tradition[.]" 637 F. Supp. at 510.

### 2.   Plaintiff Cannot Demonstrate a Plausible Injury to "Business or Property."

Plaintiff's alleged injuries—the time and costs of transportation, emotional and

psychological damages, and New York's alleged loss of revenues—are no more availing in the

RICO context than they are in the context of his other claims. "To state a civil claim under the

RICO statute, a plaintiff must plausibly allege an injury to 'business or property.'" *Lynch*, 232 F.

Supp. 3d at 469. "Personal damages, emotional damages, and physical damages" do not constitute

a RICO "injury." *Id.* (quoting *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612

(S.D.N.Y. 2015)). Here, the Complaint fails to allege—and Plaintiff cannot prove—*any* injuries

to Plaintiff's "business or property." Plaintiff's RICO claim fails for this reason as well.[15]

### 3.   Plaintiff Fails to Plausibly Demonstrate Defendants Caused His Alleged Injury.

Even if Plaintiff could satisfy the first two elements of his civil RICO claim, it must still be dismissed with prejudice because Plaintiff cannot demonstrate his alleged injuries were proximately caused by Defendants' alleged conduct. To do so, Plaintiff "must *plausibly* allege that [his] injuries were 'proximately caused by a pattern of racketeering activity violating 18 U.S.C. § 1962 or by individual RICO predicate acts." *Lynch*, 232 F. Supp. 3d at 469 (quoting *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003)) (emphasis added). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation *led directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). Courts require a "direct causal connection." *Lynch*, 232 F. Supp. 3d at 469.

Plaintiff's generalized allegations of emotional injuries and increases in the costs and time of transportation are completely causally removed from Defendants. The only misconduct alleged is the Giants' and Jets' retention of their "New York" names following their relocations seven miles into New Jersey several decades ago, and MetLife Stadium's promotion of itself as a leading entertainment venue. Yet, the Complaint offers no basis to conclude that Plaintiff's decision to attend a game or choices in transportation were in any way influenced by the teams' names or stadium's representations—let alone, directly caused by them. Moreover, Defendants do not control transportation costs (regardless of the location).

Accordingly, Plaintiff's civil RICO claim must be dismissed with prejudice.

---

[15]   The Complaint also suggests Plaintiff suffered a RICO injury as a result of the fact that the Giants and Jets allegedly increased in value by retaining their "New York" names. (Compl. ¶ 132.) Whether this is true or not, it is not an injury. The Complaint fails to explain how Defendants' alleged increase in value injured *Plaintiff* or anyone else.

**C.**     **The Complaint Fails to State a Plausible Claim for Unjust Enrichment.**

Plaintiff's unjust enrichment claim alleges Defendants improperly benefited from: (1) "ticket prices, concessions, and parking fees" and (2) "the time and money spent by [their] patrons to travel to Giants and Jets games." (Compl. ¶¶ 137-140.) As a result, Plaintiff asserts—again, in conclusory fashion—that it "is against equity and good conscience to permit Defendants to retain the billions of dollars in profits they have obtained at the expense of Plaintiff and the class." (*Id.* ¶ 141.) None of these allegations can sustain a claim for unjust enrichment.

A claim for unjust enrichment "is available only in unusual situations when . . . circumstances create an equitable obligation running from the defendant to the plaintiff[.]" *Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492, 500 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016). "Typical cases [of unjust enrichment] are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.*; *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Here, Plaintiff does not actually allege he purchased any tickets, products, or merchandise from Defendants at all. Thus, there is no connection running from Defendants to Plaintiff to support an unjust enrichment claim. The inquiry ends there.

Moreover, even assuming Plaintiff (or any members of the putative class) actually purchased tickets, products, or merchandise from Defendants, there is no basis to claim that Defendants are not entitled to money earned from such sales. Indeed, Plaintiff fails to explain—*in any manner whatsoever*—why Defendants are responsible for the costs of attending a sporting event that Plaintiff voluntarily undertakes. (Compl. ¶¶ 9, 36-48, 55.) To the extent Plaintiff purchased tickets or merchandise, Defendants provided the exact services expected—a football game, entertainment, and merchandise. Thus, even if Plaintiff had alleged that he purchased tickets, products, or merchandise from Defendants, he received exactly what he paid for. The unjust enrichment claim fails for this reason as well. *See, e.g.*, *Castillo v. Tyson*, 701 N.Y.S.2d

423, 425 (1st Dep't 2000) (affirming dismissal of unjust enrichment claim against boxer, promoters, and telecasters when boxer's disqualification prematurely ended the fight, because claimants "received what they paid for, namely, 'the right to view whatever event transpired'").

Plaintiff's unjust enrichment claim also warrants dismissal because it is wholly duplicative of the Complaint's false advertising and deceptive practices claims.  In both cases, Plaintiff's claims rest on profits Defendants purportedly earned through alleged "false advertising and deceptive practices."  (Compl. ¶¶ 110-112, 124, 137.)  This too requires dismissal of the unjust enrichment claim.  *Corsello*, 18 N.Y.3d at 791; *see also Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451, 2021 WL 3501203, at *19 (S.D.N.Y. Aug. 9, 2021).

Accordingly, Plaintiff's unjust enrichment claim must be dismissed with prejudice.

**D.**     **The Complaint Fails to State a Plausible Claim For Conspiracy.**

While not set forth as a separate "Cause of Action[,]" Plaintiff's apparent claim for civil conspiracy must be dismissed because New York does not recognize conspiracy as an independent tort.  *In re Platinum-Beechwood Litig.*, No. 18-CV-10936, 2020 WL 1932601 (S.D.N.Y. Apr. 21, 2020) (citing *Kovkov v. Law Firm of Dayrel Sewell, PLLC*, 182 A.D.3d 418, 418 (1st Dep't 2020)). Rather, "[a]ll that an allegation of conspiracy can accomplish is to connect nonactors, who otherwise might escape liability, with the acts of their co-conspirators."  *Id.*  Absent a cognizable claim, a conspiracy claim is not actionable.  *Id.*  Thus, to the extent the Complaint asserts a claim for conspiracy, it fails because the Complaint fails to set forth any cognizable causes of action.

**III.**

**PLAINTIFF'S CLAIMS AGAINST THE NFL MUST BE DISMISSED**

In addition to all of the foregoing reasons concerning the fatally flawed pleading of Plaintiff's claims, Defendant NFL respectfully submits that Plaintiff's claims against it must be dismissed with prejudice because the Complaint lacks any allegations that the NFL engaged in any

of the alleged conduct of which Plaintiff complains, and no amendment could salvage such a claim. Plaintiff's allegations regarding the NFL's revenues, the value of its teams, or the salary of its Commissioner are plainly irrelevant to, disconnected from, and insufficient to impose liability on the NFL under any theory.  Thus, Plaintiff's claims against the NFL must be dismissed with prejudice.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.

## <u>THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE</u>

Although courts freely give leave to amend, they should do so only "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Justice does *not* require granting leave to amend when the amendment would be futile.  *See e.g., Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 168-69 (S.D.N.Y. 2021) (denying leave to amend deceptive practices and false advertisement claims when plaintiff failed to suggest she was in possession of facts that could cure the complaint's deficiencies); *see also Ellis v. Chao*, 336 F.3d 114, 126 (2d Cir. 2003).

Amendment here would be futile because Plaintiff does not possess facts that could cure any of the Complaint's numerous fatal deficiencies.  The Complaint is frivolous, and a frivolous complaint cannot be saved by amendment.  No amount of repleading will alter the fact that the Giants' and Jets' retention of their "New York" names is perfectly appropriate given the fact that their stadium is located only seven miles from Manhattan in New Jersey and sits squarely within the New York Metropolitan area.  Nor will repleading change the fact that Plaintiff's claims are based on events that occurred decades ago and have not caused *anyone* any legally cognizable injuries.  Permitting Plaintiff to refine these baseless allegations will not morph them into viable legal claims. Plaintiff's claims are precluded under well-established black-letter law.

Accordingly, any amendment would be futile, and the Complaint should be dismissed *with prejudice*.

## **CONCLUSION**

Plaintiff's claims are without merit and should be dismissed with prejudice, together with such other and further relief as the Court may deem just and proper.[16]

Dated:    March 21, 2022
          New York, New York

                                        Respectfully submitted,
                                        HAYNES AND BOONE, LLP

                                        By: _____
                                        Jonathan D. Pressment
                                        Alexandra Larkin
                                        30 Rockefeller Plaza, 26th Floor
                                        New York, New York 10112
                                        (212) 918-8961
                                        jonathan.pressment@haynesboone.com
                                        alexandra.larkin@haynesboone.com

                                        *Attorneys for Defendants National Football
                                        League, New York Football Giants, Inc., New
                                        York Jets, Inc., and New Meadowlands
                                        Stadium Company, LLC*

---

[16] While the Complaint is patently frivolous, to the extent the Court concludes Plaintiff has set forth any viable claims—and he has *not*—dismissal is still warranted because it is impossible to discern the conduct for which Plaintiff alleges each Defendant should be held liable. *Kashef v BNP Paribas SA*, No. 16-CV-03228 (AJN), 2021 WL 1614406, at *2 (S.D.N.Y. Apr. 26, 2021); *Appalachian Enters., Inc. v. ePayment Solutions Ltd.*, No. 01-CV-11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004).