UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDIELL SUERO and MAGGIE WILKINS, individually and on behalf of all others similarly situated, | Case No.:  1:22-cv-31-AKH-BCM |
| Plaintiffs, | |
| - versus - | **AMENDED CLASS ACTION COMPLAINT** |
| NFL, NEW YORK FOOTBALL GIANTS, INC., NEW YORK JETS, LLC, and NEW MEADOWLANDS STADIUM COMPANY, LLC, | |
| Defendants. | **JURY DEMANDED** |

## INTRODUCTION

Plaintiffs file this amended class action complaint individually and on behalf of similarly situated individuals for false advertising, deceptive practices, fraudulent misrepresentation, and negligence.  Plaintiffs and similarly situated NFL fans and ex-fans have been damaged by the cultural appropriation of the "New York" ("NY") name and brand and the out-of-state relocation of both NFL franchises after the Giants and Jets moved to the State of New Jersey to play football in MetLife Stadium (former site of Giants Stadium).  Of all 124 teams in the four major American sports (NFL, NBA, MLB & NHL), the New York Giants and Jets are the only two teams to be named after a different state from where they play, practice, and maintain their corporate offices.  Defendants' websites also include many false statements of fact, advertising to Plaintiffs and the classes falsely that their "New York" teams play in the "world's number one stadium" which is "under 20 minutes" from New York City.  While Plaintiff Suero originally requested that one or both franchises return to New York, both the Giants and Jets have declined.  Therefore, Plaintiffs and the classes demand that the Giants and Jets remove New York/NY/ny from their names and logos and that Defendants eliminate their "cash-free" policy at MetLife

Stadium which operates in violation of New Jersey Revised Statutes § 56:8-2.33 (2019) and the
New Jersey State Consumer Fraud Act.

## STATEMENT OF FACTS

1.      Over the past 102 years, the NFL (National Football League) has grown to 32 teams each
identified by a name, logo, colors, and location or hometown.

2.      In 2015, the NFL renounced its tax-exempt status it held since 1942.

3.      Collectively, the 32 NFL franchises are worth approximately $112 billion

4.      The New York Giants are valued at third highest in the NFL out of 32 teams at
approximately $4.85 and the New York Jets are the eighth highest at approximately $4.05.

5.      The NFL now grosses over $14 billion per season, more than any other sports league in
the world.

6.      NFL Commissioner Roger Goodell was paid nearly $128 million in 2020 and 2021.

7.      The NFL franchises including the Giants and Jets operate with the permission and
consent of the NFL pursuant to the 292-page Constitution and Bylaws of the National Football
League (Revised 2006).

8.      Each NFL team derives brand value, marketability, and revenue by associating with a
geographic home city, state, or region.

9.      Defendants the NFL, Giants, Jets, MetLife Stadium, and their "Partners" generate
revenue from ticket sales for live games and television licensing agreements, concessions,
memorabilia, as well as online sales through www.nflshop.com and other websites.

10.     The Defendants committed the wrongful conduct underlying the four causes of action in
this amended complaint by deceptively and falsely advertising and misrepresenting the following
"Ten Lies" which are materially misleading: (1) that the NFL Giants are a New York team; (2)

that the NFL Jets are a New York team; (3) that MetLife Stadium is the number one stadium in the world; (4) that MetLife Stadium sets the standard for venue excellence with state-of-the-art technology, comfort and amenities; (5) that MetLife Stadium hosts the World's Biggest Events; (6) that MetLife Stadium has the World's Biggest Stage; (7) that MetLife Stadium has topped the industry charts annually since opening; (8) that MetLife Stadium is under 20 minutes from New York City; and (9) that MetLife Stadium is accessible to Penn Station.  The tenth act of false advertising is the MetLife Stadium logo, which consists of the words "MetLife Stadium" beneath the New York Skyline including the Empire State and Chrysler Buildings, deceptively advertising and misrepresenting that MetLife Stadium is located in New York City.

11.    Defendants' Ten Lies are published and promoted throughout MetLife Stadium, on television broadcasts of Giants and Jets games, on the websites www.metlifestadium.com, www.nfl.com, www.nflshop.com, www.giants.com, www.jets.com, and on the social media pages on Facebook, Instagram, YouTube, Twitter, and TikTok for the NFL, Giants, Jets, and MetLife Stadium.

12.    The New York/NY/ny logo and geographic designation appears thousands of times on posts, videos, and merchandise of the Giants and Jets.

13.    Many people who attend Giants or Jets games for the first time or watch on TV, including Plaintiff Wilkins, are deceived by this false advertising and are unaware that these teams play out-of-state.

14.    Plaintiff Wilkins would not have attended a live NFL game at MetLife Stadium if notified in advance that they play in the State of New Jersey, with door-to-door transportation taking four hours on game days from New York City.

15.    Most people from outside the tri-state area, including Plaintiff Wilkins, who watch Giants

and Jets games on TV and purchase Giants and Jets tickets and merchandise are unaware that since 1976 for the Giants and 1984 for the Jets both teams have played in New Jersey.

16.     Nevertheless, since 2000, the Giants logo has consisted entirely of the lowercase initials "ny" nearly identical to the team logo from 1961 – 1974 when the Giants played in New York.

17.     The Jets logo includes the name "NEW YORK" above the team name "JETS."

18.     These NEW YORK/ny logos appear on the players' jerseys, helmets, memorabilia, sports cards, as well as the MetLife, Giants and Jets websites, and throughout MetLife Stadium itself, including large banners and signs next to the field.

19.     While every other sports franchise in all the professional leagues in the United States have changed the geographic portion of their name when relocating to a new state (e.g. NFL Houston Oilers to Tennessee Titans, MLB Brooklyn Dodgers to Los Angeles Dodgers, NBA New Jersey Nets to Brooklyn Nets, and NHL Colorado Rockies to New Jersey Devils), the Giants and Jets retained their New York/NY/ny name and brand after moving to New Jersey with the permission and consent of the NFL.

20.     In fact, of all 124 major sports teams in the NFL, NBA, MLB and NHL, the New York Giants and Jets are the only two franchises named after a different state than where they play.

21.     In a 1986 ruling by the New Jersey District Court, the judge pointed out that the Giants, "play all of its home games in New Jersey yet *eschew a New Jersey identification as resolutely as a vampire eschews the cross*." (emphasis added)

22.     What's more, the court acknowledged that in fact there is, "*confusion engendered* by the unwillingness of the team (Giants) to correlate its name with the place it calls home," and that the NFL Giants are an, "*anomaly* of a team bearing the name of one state while playing in another…" (emphasis added)

23.     The Judge also acknowledged that, "one may <u>wonder</u> why the New York Giants resist a

new name and ***may wish, perhaps, that it were otherwise***…" (emphasis added)

24.     There is no need to "wonder" why the Giants or Jets resist a new name.

25.     It is obvious that NEW YORK/ny is a much more recognizable and valuable brand than

New Jersey ("NJ" or "nj").

26.     This is because of New York's name recognition in the media, literature, music, movies,

popular culture and other quantifiable reasons including sports championships won by New York

teams (44), its famous residents and landmarks, its trillion-dollar infrastructure, and numerous

other attributes which make New York an iconic local, national, and international brand.

27.     Since 1980, the New York Yankees have played Frank Sinatra's version of "New York,

New York" at the conclusion of every home game.  This song is a proud anthem of New Yorkers

with lyrics that distinguish New York from every other place on Earth, including (and some

might say especially) New Jersey.

28.     New York City is the Big Apple, home of the Statue of Liberty and Ellis Island, Wall

Street and the stock market, Broadway musicals and tickertape parades, Lincoln Center, Yankee

Stadium, Madison Square Garden, Citi Field, the National Tennis Center, Belmont Park, the

Macy's Thanksgiving Parade, Grand Central Station, Central Park, and many other locations and

events that Plaintiffs and the classes of New York residents take great pride in.

29.     MetLife Stadium is located in the swamps of East Rutherford, New Jersey (Bergen

County), which has a population under 10,000, the 116th largest city in New Jersey.

30.     It's not exactly an exciting and romantic destination and the Giants, Jets, and MetLife

Stadium have absolutely no connection whatsoever with the City, County, or State of New York.

31.     The Giants, Jets, and MetLife Stadium pay no taxes to the City, County, or State of New

York while using its name and landmark buildings for advertising.

32.     Many New Jersey NFL fans are deeply offended by the Giants and Jets unwillingness to name their teams after the state in which they play, practice, and maintain corporate offices.

33.     For this reason, many New Jersey NFL fans have abandoned the Giants and/or Jets to become fans of the Philadelphia Eagles who are the next geographically closest NFL franchise.

34.     The Defendants artificially increased the revenue and value of the Giants and Jets franchises and the revenue at MetLife Stadium and television licensing for all Defendants by billions of dollars by using the "New York" and "ny" brand on their franchises that are located across the Hudson River in New Jersey ("NJ").

35.     In 2005, the California Assembly voted 41-7 that the Los Angeles Angels were engaged in what amounted to false advertising because of the false geographic designation of their name. They approved a bill ("The Truth in Sports Advertising Act") to require the team to disclose on their tickets, ads and other promotional material that its home is in Anaheim (Orange County). The California Senate voted in favor of this bill by a margin of 52-17.  The bill was withdrawn for political reasons, but it is clear that naming a sports franchise after a state or city in which it does not play is false advertising in all sports and all states.

36.     Plaintiff Suero requested that either or both the Giants and Jets return to New York in his original complaint, press release, and correspondence sent to the Defendants.

37.     Since the NFL, Giants and Jets refuse to do so, Plaintiffs' amended complaint demands that both teams remove the NEW YORK/ny geographic designation from their names and that Plaintiffs and the classes of fans and ex-fans be awarded statutory, compensatory and punitive damages and that Defendants cease publishing the aforementioned Ten Lies.

38.     If Defendants can engage in this blatant interstate false advertising, then other individuals

and entities can misname their franchises, businesses, and products after a neighboring state that has superior marketability without consequence, causing a likelihood of confusion.

## FALSE STATEMENTS OF FACT BY DEFENDANTS

39.     Defendants' websites www.metlifestadium.com (and the other websites and social media pages) publish and promote numerous false statements of fact (The Ten Lies) designed to deceive Plaintiffs and the classes into believing that **New York** NFL teams play at the world's number one stadium, when in fact they are promoting **New Jersey** franchises that play in what USA Today describes as the 27th best NFL stadium out of 30 (fourth worst).

40.     Defendants advertise that MetLife Stadium is "under 20 minutes" from and "accessible" to Penn Station which are both false.  It took Plaintiffs 30 minutes to find the platform and board a train at Penn Station and it is not accessible to MetLife Stadium.  The train only goes to Secaucus, New Jersey, where they had to change platforms and trains to arrive at MetLife Stadium.  In all it took over one hour from the time Plaintiffs arrived at Penn Station until they arrived at MetLife Stadium.

41.     Defendants also falsely advertise that MetLife Stadium is the "number one stadium in the world", that it "sets the standard for venue excellence with state-of-the-art technology, comfort and amenities," that it, "hosts the World's Biggest Events, on the World's Biggest Stage," and that, "MetLife Stadium tops the industry charts annually since opening."  All of these statements are false and materially misleading.

42.     When the Superbowl was held at MetLife Stadium in 2014, it was a nightmare for thousands of fans who had to wait up to two and half hours to depart the stadium on public transportation.  They also had to cope with temperatures in the 40's for four hours rather than a heated arena which would have been more like 72 degrees.

7

43.     Examples of state-of-the-art NFL venues in the United States would include Sofi Stadium in Los Angeles (constructed 2020 with dome), Allegiant Stadium in Las Vegas (constructed 2020 with a dome), and Mercedes-Benz Stadium in Atlanta (constructed 2017 with retractable roof).

44.     Sofi Stadium cost $5 billion, more than triple MetLife Stadium, and is exponentially better.

45.     There are numerous other stadiums in "the world" that are far bigger and better than MetLife Stadium.

46.     MetLife Stadium was constructed in 2010 (12 years ago) without a dome or retractable roof and without sufficient infrastructure to support the transportation of fans on game days.

47.     When MetLife Stadium was constructed, the Giants and Jets had the option of adding a retractable roof to the $1.6 billion stadium at a cost of approximately $100 million and were too frugal to do so.

48.     Other NFL franchises including the Houston Texans (2002), Arizona Cardinals (2006), Indianapolis Colts (2008), Dallas Cowboys (2009), had already added retractable roofs so Defendants can't play NFL games without one and still say MetLife Stadium, "sets the standard for venue excellence with state-of-the-art technology, comfort and amenities."

49.     The MetLife Stadium logo includes the New York City skyline which leads any reasonable person, including Plaintiff Wilkins to believe the stadium is located in New York City.

50.     When all these false statements of fact and logos are read and interpreted together, Plaintiffs and the classes are given the false impression that **New York** teams play at the world's best stadium in New York City under 20 minutes from Penn Station, when in fact they are **New Jersey** teams in a subpar stadium without a dome or retractable roof that takes four hours roundtrip to get to on game days.

8

## TICKET & TRANSPORTATION COSTS

51.     Plaintiff Wilkins and the class of unsuspecting patrons would not have purchased tickets for Defendants' games at MetLife Stadium if they had not been deceived and misinformed by Defendants.

52.     Giants average ticket price from 2018 – 2021 was $115.31 and the Jets average ticket price for 2018 – 2021 was $94.16 for a stadium of 82,500.

53.     Plaintiff Wilkins paid $136.00 for an NFL ticket at MetLife Stadium.

54.     Every NFL patron of MetLife Stadium since 2015 who purchased a ticket without knowing the stadium was located in New Jersey is entitled to a refund of the ticket price paid.

55.     Defendants' advertising regarding transportation time and costs is materially deceptive, misleading, and confusing to Plaintiffs and both classes.

56.     Plaintiffs and millions of class members have suffered damages by being subjected to expensive, time-consuming, and stressful transportation from New York to East Rutherford, New Jersey to watch the Giants or Jets play, by either driving or taking mass transportation.

57.     Plaintiffs who reside in New York must travel out-of-state to watch live Giants and Jets games, with roundtrip times taking an average of four hours or more on game day at a very high financial cost either by way of public transportation or motor vehicle.

58.     Defendants minimize the anticipated travel time by stating that it takes, "under 20 minutes" to travel from New York City to the MetLife Stadium entrance on game days.

59.     What's more, MetLife Stadium is located in the middle of nowhere, so it is not surrounded by amenities such as hotels, restaurants, and bars like all other NFL stadiums.

60.     Plaintiffs Suero and Wilkins attended a game at MetLife Stadium this past season where the transportation time of four hours exceeded the time of the game itself.

61.     The toll alone for bridges and tunnels between New Jersey and New York City is $16.00 and parking costs $40.00, plus tolls on the New Jersey Turnpike and Garden State Expressway.

62.     Car service after games from MetLife Stadium to New York City by Uber, Lyft or Taxi costs $125 or more.

63.     Plaintiff's roundtrip transportation costs to MetLife Stadium from Greenwich Village exceeded $200 for a single game, costing nearly as much as the game tickets themselves.

64.     Transportation costs to New York sports arenas by public transportation or car services are a small fraction of the costs of traveling to East Rutherford, New Jersey on Sundays.

65.     Public transportation from New York to MetLife Stadium in New Jersey uses a haphazard system of subways, trains, and buses, with extensive periods of walking and stairs.

66.     The inconvenient out-of-state location of MetLife Stadium is further reflected by the fact that the percentage of empty seats at Giants and Jets games makes them among the least attended home games in the NFL over the past decade since MetLife Stadium was constructed.

67.     For example, in the 2021 season, NFL teams with 99% or better attendance at home games include teams located in densely populated cities including Denver, Kansas City, Minnesota, Cleveland, Philadelphia, Chicago, Baltimore, Los Angeles, Seattle and Tampa Bay.

68.     However, this season the Jets are ranked #5 out of 32 and the Giants are ranked #7 out of 32 with the most-empty seats per home game, with a season long projected tally of 80,000 for the Jets and 68,000 for the Giants.

69.     Despite being named after the most populated city in the country, the Giants and Jets are in the top 40% of teams every year with the most-empty seats in home games.  For example, in 2019, the Giants were #4 and the Jets #13, in 2018 the Giants were #8 and the Jets #12, in 2017 the Giants were #12 and the Jets #11.

70.     Defendants gross hundreds of millions of additional dollars at the expense of Plaintiffs and the classes who pay for those profits in the form of transportation costs and time to travel to an out-of-state facility, along with the additional carbon footprint imposed on the environment.

## JURISDICTION

71.     Plaintiffs invoke this Court's diversity jurisdiction as the case involves parties from multiple states with allegations in excess of $75,000.  Plaintiff alternatively invokes jurisdiction under the Class Action Fairness Act as the dispute involves monetary damages in excess of $5,000,000.  The Court has supplemental jurisdiction over the New York State law claims.

## VENUE

72.     Venue is proper in the Southern District of New York because Plaintiffs reside in this district and Defendants engaged in false advertising and deceptive practices in this district.

## PARTIES

73.     Plaintiff Abdiell Suero is an American citizen and resident of the City and State of New York.

74.     Plaintiff Maggie Wilkins is an American citizen and resident of the City and State of New York, originally residing in the State of New Mexico.

75.     Defendant NFL is the National Football League in the United States.

76.     Defendant New York Football Giants, Inc. is a franchise of the NFL that owns and operates the New York Giants, maintaining its corporate office at Quest Diagnostics Training Center, 1925 Giants Drive, East Rutherford, NJ 07073.

77.     Defendant New York Jets, LLC is a franchise of the NFL that owns and operates the New York Jets, maintaining its corporate office at 1 Jets Drive, Florham Park, NJ 07932.

78.     Defendant New Meadowlands Stadium Company, LLC owns and operates MetLife

Stadium, maintaining its corporate office at 1 MetLife Stadium Drive, East Rutherford, NJ 07073.

79.      Defendants New York Football Giants, Inc. and New York Jets, LLC are franchises of the NFL and "Partner(s)" of MetLife Stadium, Inc.

80.      Defendants are jointly and severally liable because the Giants and Jets play at MetLife Stadium pursuant to the authority of the NFL and all four parties jointly share in the revenue generated from NFL games at MetLife Stadium.

## CLAIMS FOR RELIEF

## CLASS ACTION ALLEGATIONS

81.      The first class, represented by Plaintiff Abdiell Suero, is initially defined as all attendees of NFL games at MetLife Stadium since 2016 who were deceived by Defendants' false advertising, deceptive practices, and fraudulent misrepresentation and those who were prohibited from purchasing retail goods at MetLife Stadium with cash since 2019.

82.      The second class, represented by Plaintiff Maggie Wilkins, is initially defined as all attendees of NFL games at MetLife Stadium since 2016 who were deceived by Defendants' false advertising, deceptive practices, and fraudulent misrepresentation into attending an NFL game at MetLife Stadium that they would not have otherwise attended.

83.      This action is properly maintainable as a class action.

84.      The classes are so numerous that joinder of all members is impracticable.

85.      The number and identities of class members can be determined through season ticket records and voluntary disclosure.

86.      The disposition of their claims in a class action will benefit the parties and the court.

87.    A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action.

88.    The likelihood of individual class members prosecuting separate claims is remote.

89.    There is a well-defined community of interest in the questions of law and fact involved affecting members of the classes.

90.    Among the questions of law and fact which are common to the class, and which predominate over questions affecting any individual class member are, the following:

91.    Whether Defendants violated N.Y.S. G.B.L. § 349;

92.    Whether Defendants violated N.Y.S. G.B.L. § 350;

93.    Whether Defendants engaged in fraudulent misrepresentation;

94.    Whether Defendants were negligent;

95.    Whether Plaintiffs and the classes are entitled to injunctive and equitable relief;

96.    Whether Defendants' acts were willful entitling Plaintiffs' classes to punitive damages.

97.    Plaintiffs are members of the classes and are committed to prosecuting this action.

98.    Plaintiffs' claims are typical of the claims of the other members of the classes.

99.    Plaintiffs do not have interests antagonistic to or in conflict with those they seek to represent.  Plaintiffs are, therefore, adequate representatives of the proposed classes.

100.    The likelihood of individual class members prosecuting separate individual actions is remote due to the relatively small loss suffered by class members as compared to the burden and expense of prosecuting litigation of this nature and magnitude.

101.    Absent a class action, Defendants are likely to avoid liability for their wrongdoing, and the class members are unlikely to obtain redress for the wrongs alleged herein.

102.    Adjudication of this case on a class-wide basis is manageable by this court.

## FIRST CAUSE OF ACTION

### FALSE ADVERTISING

103.    Plaintiffs repeat and reiterate all prior paragraphs of this amended complaint as if fully set forth in this cause of action.

104.    Defendants have violated and continue to violate New York State GBL False Advertising Section 350-A by way of the Ten Lies, all of which are materially misleading, including false statements, words, and designs.

105.    Defendants the NFL and franchisee the New York Giants have engaged in false advertising since 1976, by retaining the name "New York" ("NY") and "ny" logo after the franchise was moved across the Hudson River to the State of New Jersey.

106.    Defendants the NFL and franchisee the New York Jets have engaged in false advertising since 1984, by retaining the name "New York" ("NY") after moving to New Jersey.

107.    Defendants' products, including the Giants and Jets franchises, uniforms, helmets, tickets, merchandise, memorabilia, sports cards, and every other product is clearly calculated to deceive and mislead the purchasers and consumers of said products including Plaintiffs and the classes.

108.    Defendants trade under the "New York" and "NY" and "ny" geographic location and brand, deceiving Plaintiff Wilkins and the class she represents.

109.    Plaintiff Wilkins was deceived into believing that the Giants and Jets play in the State of New York when in fact they play in the State of New Jersey.

110.    Defendants also falsely advertise the time it takes to travel from the State of New York to MetLife Stadium in New Jersey (claiming that it is under 20 minutes), minimizing the time and not accounting for long distances of walking that are inconvenient and uncomfortable for most

NFL fans, including Plaintiffs and the classes (true time is four hours roundtrip).

111.    Defendants falsely claim MetLife Stadium is accessible from Penn Station when in fact one must change platforms and trains at Secaucus, New Jersey.

112.    Defendants' website www.metlifestadium.com contains false advertising, including the following false statement: "MetLife Stadium, home to the New York Jets and New York Football Giants, is the number one stadium in the world…" (emphasis added)

113.    There are at least 27 sports stadiums and arenas around the world that are larger than MetLife Stadium.  The stadium does not have a dome or retractable roof, so spectators are uncomfortably hot or cold for most games, and the location in East Rutherford, New Jersey is hardly ideal.  The transportation system to and from MetLife Stadium does not contain sufficient infrastructure.  MetLife Stadium is clearly not the "number one stadium in the world" by any measure.

114.    Defendants also falsely boast on their website that, "MetLife Stadium hosts the World's Biggest Events, on the World's Biggest Stage," when this is also false as there are dozens of bigger stages than MetLife Stadium and the biggest sporting events, concerts, and festivals have never been held there.

115.    Defendants also falsely state on their website that MetLife Stadium, "sets the standard for venue excellence with state-of-the-art-technology, comfort and amenities," when Defendants did not add a dome or retractable roof in 2010 when the stadium was built; all state-of-the-art football venues in cold or hot cities today operate with an air conditioned dome for the fans comfort while MetLife Stadium offers fans a hot or cold, windy experience, often with rain or snow, hardly state-of-the art comfort.

116.    In addition, MetLife Stadium logo consists of the New York City skyline, falsely

advertising that the stadium is located in New York City.

117.    Defendants false advertising goes far beyond mere puffery, including false statements of fact, gross exaggerations, and failure to disclose important material facts.

118.    As a result of Defendants false advertising, Plaintiffs purchased tickets and attended an NFL game at MetLife Stadium in 2021.

119.    If not for Defendants' false advertising including the Ten Lies, Plaintiffs would not have purchased tickets and attended the game.

120.    Plaintiffs and each member of the classes request statutory damages, plus transportation costs to MetLife Stadium together with ticket prices paid and demand that the Giants and Jets remove the "New York" and "NY" and "ny" designation from their name and merchandise and that they adopt their home of New Jersey (NJ/nj) as their geographic designation.

## SECOND CAUSE OF ACTION

### DECEPTIVE PRACTICES

121.    Plaintiffs repeat and reiterate all prior paragraphs of this amended complaint as if fully set forth in this cause of action.

122.    Defendants have engaged in deceptive practices through the Ten Lies, including the continued labelling of the Giants and Jets "New York" ("NY" and "ny") teams after they left New York for a new home in New Jersey in violation of GBL Section 349.

123.    Plaintiff Wilkins was deceived into believing that the Giants and Jets play in the State of New York when in fact they play in the State of New Jersey.

124.    Defendants also make it seem that MetLife Stadium is much better and closer to New York City than it actually is on game days.

125.    Defendants' website includes "Fast Facts" about MetLife Stadium that include

information regarding the cost, venue size, capacity, suites, suite designer, club seating capacity, clubs, parking, mass transportation, architects, and food service/merchandise partner, without even mentioning the location of MetLife Stadium.

126.    Defendants' deceptive practices cause confusion to consumers including Plaintiffs.

127.    If not for these deceptive practices, Plaintiffs would not have purchased tickets and attended an NFL game at MetLife Stadium.

128.    Plaintiffs and each member of the classes request statutory damages, plus transportation costs to MetLife Stadium together with ticket prices paid and demand that the Giants and Jets remove the "New York" and "NY" and "ny" designation from their name and merchandise and that they adopt their home of New Jersey (NJ/nj) as their geographic designation.

## THIRD CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

129.    Plaintiffs repeat and reiterate all prior paragraphs of this amended complaint as if fully set forth in this cause of action.

130.    Defendants are engaged in fraudulent misrepresentation by way of interstate wire fraud by knowingly and intentionally branding, marketing, and advertising their New Jersey teams as the New York Giants and New York Jets on the internet and television around the world together with the Ten Lies.

131.    Defendants have published the Ten Lies to fraudulently induce Plaintiffs and the classes to patronize MetLife Stadium and to watch the Giants and Jets on TV.

132.    Defendants know that if the rename their teams with their true geographic origin, they will have less television viewers and less demand for tickets, concessions, and memorabilia.

133.    Defendants failed to modify their websites despite multiple written warnings.

134.    Defendants knowingly and intentionally represent New Jersey football teams as New York teams, as well as intentionally publishing false statements of fact on their websites.

135.    As a result of these fraudulent misrepresentations, Plaintiffs and the classes have purchased tickets and concessions as well as paying transportation costs to and from MetLife Stadium from New York City.

136.    If Defendants had not published these false representations on their websites, Plaintiffs would not have purchased tickets and attended an NFL game at MetLife Stadium.

137.    Defendants also maintain New York Giants and Jets trademarks in bad faith due to their geographic origin in the State of New Jersey.

138.    Plaintiffs and the classes request $2 billion in compensatory damages, $4 billion in punitive damages, together with equitable relief enjoining Defendants from the use of the New York/NY/ny name and brand with their New Jersey NFL franchises.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE

139.    Plaintiffs repeat and reiterate all prior paragraphs of this amended complaint as if fully set forth in this cause of action.

140.    Defendants and their Partners owe a duty of care to Plaintiffs to follow the laws of the State of New Jersey where MetLife Stadium is located.

141.    On March 18, 2019, the New Jersey state legislature passed New Jersey Revised Statutes § 56:8-2.33 (2019), which prohibits a person selling goods or services at retail to require a buyer to use credit or to prohibit cash.

142.    Defendants' cash-free policy at MetLife Stadium violates <u>New Jersey Revised Statutes §</u>

<u>56:8-2.33 (2019)</u>  ***Discrimination against cash-paying customers prohibited; violations,***

***penalties; exceptions as well as Plaintiffs' rights under New York State privacy laws.***

> a. A person selling or offering for sale goods or services at retail shall not require a buyer
> to pay using credit or to prohibit cash as payment in order to purchase the goods or
> services. A person selling or offering for sale goods or services at retail shall accept legal
> tender when offered by the buyer as payment.  b. A person in violation of subsection a. of
> this section shall be subject to a civil penalty of up to $2,500 for a first offense and up to
> $5,000 for a second offense, to be collected in a civil action by a summary proceeding
> under the "Penalty Enforcement Law of 1999," P.L.1999, c.274 (C.2A:58-10 et seq.).

143.    There are two reasons for this statute: (a) protect the privacy of patrons who do not want

corporations tracking every purchase they make; and (b) this policy discriminates against

minorities and low-income individuals as 7% of the population, including 23% in Newark, NJ,

17% in black households, and 14% in Latino households, do not have credit/debit cards.

144.    The New Jersey state Senate passed the bill 39-0, and the Assembly passed it 72-2.

145.    In spite of this bill being signed into law by Governor Murphy over three years ago,

Defendants have negligently operated in New Jersey at MetLife stadium with a "cash-free"

policy that states as follows on their website:

> "MetLife Stadium is now a cash-free venue for all concession and retail locations. Cash is
> not accepted at concession stands or retail locations. Visa is the preferred form of
> payment at MetLife Stadium. Pay with a debit or credit card (Visa, Mastercard, American
> Express, Discover) ..."

146.    Plaintiffs Suero and Wilkins were entitled to and denied the protection of this statute

when they attended a Giants' game at MetLife Stadium in 2021.

147.    As a result of Defendants' negligence, Plaintiffs Suero and Wilkins were prohibited from

purchasing retail items at MetLife Stadium with cash and were forced to make a purchase with a

credit/debit card, in violation of New Jersey Revised Statutes § 56:8-2.33 (2019).

148.    As a result of Defendants' negligence and those of its self-described "Partners", MetLife

Stadium vendors and sponsors including but not limited to Visa, Bud Light, Pepsi, Bubba Burger, Thumman's, Dunkin', Mrs. Fields, Sysco, and Soy Kitchen, the privacy of Plaintiffs and hundreds of thousands of class members at MetLife Stadium were invaded by prohibiting them from purchasing retail items with cash since 2019.

149.    Plaintiffs do not want the Defendants or the government to track every purchase they make, thereby invading their privacy.

150.    Plaintiffs therefore request monetary damages for Defendants' negligence, and demand that Defendants eliminate their illegal "cash-free" policy at MetLife Stadium.

## DEMAND FOR JURY TRIAL

151.    Plaintiffs hereby demand trial by jury on all claims so triable.

## PRAYER FOR RELIEF

Plaintiffs and the classes pray for the following relief:

A) An order certifying this case as a class action;

B) An order requiring the Giants and Jets to remove the New York/NY/ny geographic designation from their names before the 2022/2023 season begins;

C) An order requiring Defendants to eliminate their "cash-free" policy at MetLife Stadium before the 2022/2023 season begins;

D) An order requiring Defendants to eliminate the Ten Lies from their websites and all other places they appear; and

E) An order awarding Plaintiffs and the classes monetary damages in the amount of $2 billion, punitive damages in the amount of $4 billion, including a minimum of $100 statutory damages per class member for false advertising and deceptive practices, together with attorneys' fees and the costs of this action.

Respectfully Submitted,

April 11, 2022

By: */s/ Evan Spencer*
Evan Spencer
Evan Spencer Law, PLLC
305 Broadway, 7th Floor
New York, NY  10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

ATTORNEY FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 11th day of April 2022, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system giving notice to all parties in this action.

*s/Evan Spencer*
Evan Spencer