UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABDIELL SUERO and MAGGIE WILKINS,

                              Plaintiffs,

           - against -


NFL, NEW YORK FOOTBALL GIANTS,
INC., NEW YORK JETS LLC, and NEW
MEADOWLANDS STADIUM COMPANY,
LLC,

                              Defendants.

Civil Action No. 1:22-CV-31-AKH-BCM

<br>

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

HAYNES AND BOONE, LLP

Jonathan D. Pressment
Alexandra Larkin
Rebecca Schwarz
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone: 212-659-7300
Facsimile: 212-884-9561
jonathan.pressment@haynesboone.com
alexandra.larkin@haynesboone.com
rebecca.schwarz@haynesboone.com

*Attorneys for Defendants NFL, New York
Football Giants, Inc., New York Jets LLC, and
New Meadowlands Stadium Company, LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

    A.    Factual Background. ............................................................................................ 3

    B.    Plaintiffs' Claims. ............................................................................................... 5

ARGUMENT ......................................................................................................................... 7

I.    STANDARDS APPLICABLE TO THE INSTANT MOTION ......................................... 7

II.    THE COMPLAINT FAILS TO SET FORTH ANY PLAUSIBLE CLAIMS FOR
RELIEF ......................................................................................................................... 8

    A.    Plaintiffs Fail to Allege Plausible False Advertising and Deceptive Practices
Claims. ............................................................................................................... 8

            1.    The Complaint Does Not—and Plaintiffs Cannot—Demonstrate That
Defendants Engaged in Any Materially Misleading Conduct. .................. 9

                        a.    The Giants' and Jets' Alleged Conduct Is Not Misleading. ......... 10

                        b.    The Giants' and Jets' Alleged Conduct Is Also Not Material. ..... 13

                        c.    The Stadium's Alleged Conduct Is Not Misleading. ................... 13

                        d.    The Stadium's Alleged Conduct Is Also Not Material. ................ 15

            2.    The Complaint Also Lacks Allegations Demonstrating That Plaintiffs
Suffered a Cognizable Injury as a Result of Defendants' Alleged
Conduct. ................................................................................................. 16

    B.    Plaintiffs Fail to Allege a Plausible Fraudulent Misrepresentation Claim. .......... 18

            1.    Plaintiffs Cannot Demonstrate That Defendants Made Any
Misrepresentations. ................................................................................ 19

            2.    Plaintiffs Cannot Demonstrate the Element of Fraudulent Intent. ............. 20

            3.    Plaintiffs Cannot Demonstrate the Element of Justifiable Reliance. ......... 20

4.      Plaintiffs Cannot Demonstrate That They Suffered Any Cognizable
          Damages.................................................................................................... 21

C.      Plaintiffs Fail to Allege a Plausible Negligence Claim. ...................................... 22

III.    PLAINTIFFS' CLAIMS AGAINST THE NFL MUST BE DISMISSED...................... 23

IV.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ........................... 23

CONCLUSION............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)................................................11

*Appalachian Enters., Inc. v. ePayment Solutions Ltd.*,
No. 01-CV-11502, 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ...........................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................3, 8

*Bank of Am. Corp. v. Lemgruber*,
385 F. Supp. 2d 200 (S.D.N.Y. 2005)..................................................................................20

*BankUnited, N.A. v. Merritt Environmental Consulting Grp.*,
360 F. Supp. 3d 172 (S.D.N.Y. 2018)....................................................................................8

*Baron v. Pfizer, Inc.*,
42 A.D.3d 627 (3d Dep't 2007) ...........................................................................................17

*Belcastro v Burberry Ltd.*,
No. 16-CV-1080, 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) .............................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................7, 16, 23

*Bennett v. U.S. Tr. Co. of New York*,
770 F.2d 308 (2d Cir. 1985).................................................................................................22

*Bowring v. Sapporo U.S.A., Inc.*,
234 F. Supp. 3d 386 (E.D.N.Y. 2017) ..................................................................................12

*Braynina v. TJX Companies, Inc.*,
No. 15-CV-5897, 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016)..............................13, 15, 18

*Campbell v. Whole Foods Market Grp., Inc.*,
516 F.Supp.3d 370 (S.D.N.Y. 2021).....................................................................................20

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................................................................................................4

*Champion v. Moda Operandi, Inc.*,
No. 20-CV-7255, 2021 WL 4340670 (S.D.N.Y. Sept. 22, 2021)............................................8

*Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020)......................................................................................12

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)........................................................................21

*Cooper v. Anheuser-Busch, LLC*,
    No. 20-CV-7451, 2021 WL 3501203 (S.D.N.Y. Aug. 9, 2021)....................................9

*Cortec Indus. Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)........................................................................................4

*Crigger v. Fahnestock and Co., Inc.*,
    443 F.3d 230 (2d Cir. 2006)......................................................................................20

*Daniel v. Mondelez Intl., Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ........................................................................20

*DJR Communications Corp. II v. 530 Park Residential Holdings LLC*,
    188 A.D.3d 561 (1st Dep't 2020) ..............................................................................21

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014)..................................................................................8, 12

*Druyan v. Jagger*,
    508 F. Supp. 2d 228 (S.D.N.Y. 2007)........................................................................13

*Elite Union Installations, LLC v Nat'l. Fire Ins. Co. of Hartford*,
    No. 20-CV-4761, 2021 WL 4155016 (S.D.N.Y. Sept. 13, 2021)............................5, 8

*Ellis v. Chao*,
    336 F.3d 114 (2d Cir. 2003)......................................................................................23

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553 (2009) ..............................................................................................18

*Fed. Deposit Ins. Corp. v. Murex LLC*,
    500 F. Supp. 3d 76 (S.D.N.Y. 2020)....................................................................21, 22

*Fibermark, Inc. v. Brownville Specialty Paper Prod., Inc.*,
    419 F. Supp. 2d 225 (N.D.N.Y. 2005).......................................................................12

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)........................................................................................9

*Geffner v. Coca-Cola Co.*,
    928 F.3d 198 (2d Cir. 2019)......................................................................................14

*George v. Starbucks Corp.*,
 857 F. App'x 705 (2d Cir. 2021) ....................................................................................14

*Kashef v BNP Paribas SA*,
 No. 16-CV-03228 (AJN), 2021 WL 1614406 (S.D.N.Y. Apr. 26, 2021) ...............................25

*Levy v. Young Adult Inst., Inc.*,
 103 F. Supp. 3d 426 (S.D.N.Y. 2015)............................................................................22

*Mallis v. Bankers Tr. Co.*,
 615 F.2d 68 (2d Cir. 1980).........................................................................................20

*Nakahata v. New York-Presbyt. Healthcare Sys., Inc.*,
 723 F.3d 192 (2d Cir. 2013).................................................................................19, 20

*National Football League Props. v. N.J. Giants*,
 637 F. Supp. 507 (D.N.J. 1986) .............................................................................. *passim*

*Olson v. Major League Baseball*,
 Nos. 20-1831-cv, 20-1841-cv, 2022 WL 828748 (2d Cir. Mar. 21, 2022)...........................11

*Orlander v. Staples, Inc.*,
 802 F.3d 289 (2d Cir. 2015)...................................................................................9, 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 647 N.E.2d 741 (N.Y. 1995)......................................................................................14

*Pollock v. Shea*,
 No. 20-CV-6273, 2021 WL 4962736 (S.D.N.Y. Oct. 26, 2021)..........................................4, 8

*Rice v. Penguin Putnam, Inc.*,
 289 A.D.2d 318 (2d Dep't 2001).................................................................................17

*Small v. Lorillard Tobacco Co.*,
 94 N.Y.2d 43 (1999) ......................................................................................16, 17, 22

*St. Clair Shores Gen. Employees Retirement Sys. v. Eibeler*,
 745 F. Supp. 2d 303 (S.D.N.Y. 2010)..........................................................................24

*Swan Media Grp., Inc. v. Staub*,
 841 F. Supp. 2d 804 (S.D.N.Y. 2012)............................................................................8

*Tasini v. AOL, Inc.*,
 851 F. Supp. 2d 734 (S.D.N.Y. 2012).....................................................................13, 16

*Thurman v. Bun Music*,
 No. 13 Civ. 5194, 2015 WL 2168134 (S.D.N.Y. May 7, 2015)..........................................21

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007).............................................................................................15

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021).........................................................................9, 11, 23

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011).............................................................................11

*Zottola v. Eisai Inc.*,
    20-CV-2600, 2021 WL 4460563 (S.D.N.Y. Sept. 29, 2021) ......................................19, 20, 22

**Statutes**

N.J. STAT. 56:8-2.33(a)...................................................................................................22

N.J. STAT. § 56:8-2.33(c)(5) ........................................................................................3, 23

New Jersey Revised Statutes § 56:8-2.33 (2019) ...........................................................7

New York General Business Law Sections 349 ........................................................9, 18

**Other Authorities**

Federal Rule of Civil Procedure 9(b).................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................................ *passim*

Federal Rule of Civil Procedure 15(a)(2) .................................................................24

Defendants National Football League ("NFL"), New York Football Giants, Inc. ("Giants"), New York Jets LLC ("Jets"), and New Meadowlands Stadium Company, LLC (the "Stadium," and, collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their motion to dismiss, with prejudice, the Amended Class Action Complaint (ECF. No. 31) (the "Amended Complaint" or "Amend. Compl.") filed by Plaintiffs Abdiell Suero and Maggie Wilkins (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint purports to bring a putative class action, seeking billions of dollars in damages on behalf of "millions of class members," based primarily on claims that the Giants and Jets—two historic NFL franchises with longstanding connections to the New York Metropolitan area—engaged in false advertising and deceptive practices by retaining New York names following their well-publicized moves to New Jersey many decades ago, and that the Stadium falsely claims, *inter alia*, that it is the "world's number one stadium[.]" As Defendants' original motion to dismiss (ECF No. 23) made clear, these claims are calculated to score points in the headlines—*not* the courtroom. In fact, Plaintiffs' sequel is no better than the original. Despite the amendment, Plaintiffs' claims have not gotten more plausible—they are even less so.

While the Amended Complaint scraps the baseless civil RICO, unjust enrichment, and civil conspiracy claims of the original complaint (ECF No. 1) ("Compl." or "Complaint"), Plaintiffs continue to press frivolous claims for false advertising and deceptive practices that are fatally flawed. Plaintiffs' newly minted claims for fraudulent misrepresentation and negligence fare no better. The fraud claim merely recasts the allegations of the prior Complaint's ill-fated civil RICO claim. And the negligence claim is based on the alleged violation of a New Jersey statute from which Defendants are expressly exempt. Thus, the Amended Complaint still fails to assert plausible claims and must be dismissed with prejudice.

Plaintiffs' continuing complaints regarding the Giants' and Jets' retention of their New York names following their relocations to New Jersey in the 1970s and '80s still offer no basis to support claims for false advertising and deceptive practices. Under New York law, these claims are held to standards of "a reasonable consumer acting reasonably under the circumstances." Since each club began playing their home games just seven miles west of midtown Manhattan decades ago, they have openly, consistently, and honestly provided first-class entertainment for and squarely within the New York metropolitan area. Defendants have never represented that the Stadium is located anywhere other than New Jersey. Nor is the New York component of the teams' names understood to identify the location of the teams' stadium. In fact, Plaintiffs themselves allege the geographic component of NFL teams' names refers to their location *or* "hometown."

Perhaps recognizing the failings of their claims as to the teams, Plaintiffs' Amended Complaint places greater emphasis on the alleged misleading conduct of the Stadium. Of the "Ten Lies" on which Plaintiffs' false advertising and deceptive practices claims rely, eight pertain to alleged statements of the Stadium. However, each of the statements to which Plaintiffs point is either true (such as the Stadium's accessibility from Penn Station, its proximity to New York and its repeated ranking as the highest grossing stadium in the world) or unquestionably qualifies as puffery (such as statements that the Stadium "sets the standard for venue excellence with state-of-the-art technology, comfort and amenities," and "hosts the World's Biggest Events" on the "World's Biggest Stage"). These statements are not actionable under well-established law.

Plaintiffs' fraudulent misrepresentation claim is even less supportable. The Amended Complaint lacks any of the specificity required by Federal Rule 9(b)—it fails to identify the place where the alleged misstatements were made, by whom they were made, when they were made, or even how they are misleading beyond, in the case of the Stadium, Plaintiffs' subjective assessment of the Stadium's amenities. Moreover, Plaintiff cannot possibly demonstrate the required element

of justifiable reliance. The Giants and Jets have played their home games in New Jersey for nearly half-a-century. Thus, Plaintiffs cannot demonstrate that they reasonably relied on the teams' New York affiliations in purchasing tickets to games they claim they were unaware took place in New Jersey. And the Amended Complaint offers no allegations to even suggest either Plaintiff purchased tickets to games based on any of the *Stadium's* alleged misleading statements at all.

Lastly, Plaintiffs' negligence claim—by which Plaintiffs claim Defendants breached "a duty of care to Plaintiffs to follow the laws of the State of New Jersey" by allegedly violating a New Jersey Statute that prohibits retail establishments from requiring the use of credit cards instead of cash—is doomed from the start. The statute on which Plaintiffs rely expressly excludes from its scope "any sports or entertainment venue with a seating capacity of 10,000 or more irrespective of the event held at the venue." N.J. STAT. § 56:8-2.33(c)(5). The Stadium unquestionably qualifies for this exemption.

Defendants do not believe this case has *any* merit or is a productive use of the Court's valuable resources and respectfully move this Court to dismiss the Complaint in its entirety, and with prejudice, as each of Plaintiffs' claims is fatally flawed and cannot be cured by amendment.[1]

## STATEMENT OF FACTS[2]

### A.    Factual Background.

The NFL has been a professional football league in the United States for more than 100

---

[1]   Defendants also reserve the right to move for Rule 11 sanctions. Indeed, the imposition of sanctions is especially appropriate here because Plaintiffs' counsel has also issued baseless threats to Defendants and various of Defendants' sponsors, demanding that they cease doing business with Defendants or risk being added as defendants to this meritless action.

[2]   The facts set forth in this motion are derived from the Amended Complaint. While Defendants do not admit the truth of the Amended Complaint's allegations, on a motion to dismiss, all well-pled factual allegations must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

years and now consists of 32 teams that Plaintiffs allege are "identified by a name, logo, colors, and location *or hometown*." (Amend. Compl. ¶ 1 (emphasis added).) Each team "derives brand value, marketability, and revenue by associating with a geographic home city, state, or *region*." (*Id.* ¶ 8 (emphasis added).)

The New York metropolitan area is home to two NFL teams—the Giants and Jets. (*Id.* ¶ 15.) The Giants were founded in 1925 and, before 1976, played their home games at various locations in New York City except for one year in which they played at the Yale Bowl in Connecticut. *See National Football League Props. v. N.J. Giants*, 637 F. Supp. 507, 510 (D.N.J. 1986).[3] The Jets were founded in New York and, until 1984, played all their home games at various locations in New York City as well. (Amend. Compl. ¶ 15.)

The NFL governs the league through a "292-page Constitution and Bylaws." (*Id.* ¶ 7.) The NFL's Constitution and Bylaws—on which Plaintiffs expressly rely—defines each the Giants' and Jets' home territory as the area within a seventy-five mile radius of the City of New York.[4] Indeed, the District of New Jersey's decision in *National Football League Props. v. N.J. Giants*, 637 F. Supp. 507 (D.N.J. 1986)—on which Plaintiffs also expressly rely—recognized that, "[t]he NFL Constitution establishes the New York Football Giants' home territory as the area within a seventy-

---

[3] On a motion to dismiss pursuant to Rule 12(b)(6), the court may properly consider documents used to frame the complaint and matters of which judicial notice may be taken. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (finding that the district court did not err when considering a record companies' affidavits and contracts because contracts were integral to complaint); *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Pollock v. Shea*, No. 20-CV-6273, 2021 WL 4962736, at *2 (S.D.N.Y. Oct. 26, 2021). Here, the Amended Complaint expressly references the NFL's Constitution and Bylaws (*see* Amend. Compl. ¶ 7) and dedicates three paragraphs to the decision in *Nat'l Football League Props* (*see* Amend. Compl. ¶¶ 21-23.)

[4] CONST. & BYLAWS OF THE NATIONAL FOOTBALL LEAGUE, Art. VI, § 4.1 (Rev. 2006), https://www.onlabor.org/wp-content/uploads/2017/04/co_.pdf.

five mile radius of the City of New York . . . which includes portions of New York, New Jersey, and Connecticut." *Nat'l Football League Props.*, 637 F. Supp. at 510.

In 1976—nearly 50 years ago—the Giants moved their operations to East Rutherford, New Jersey. *Id.*; (Amend. Compl. ¶ 15.) The Giants "retained the name 'New York Giants' when [they] began playing home games in New Jersey" to "maintain continuity of tradition[.]" *Nat'l Football League Props.*, 637 F. Supp. at 510. The Jets moved their operations to New Jersey in 1984—nearly 40 years ago. (Amend. Compl. ¶ 15.) As Plaintiffs have repeatedly acknowledged, it is not unusual for professional sports franchises' stadiums to be located outside the geographic boundaries of the city with which they are affiliated.[5] (*Id.* ¶ 35; Compl. ¶¶ 26-32.)

The Giants and Jets have played their home games in East Rutherford, New Jersey—first at Giants Stadium and, since 2010, at MetLife Stadium—for decades. (*Id.* ¶¶ 15, 21-23.) This location is "less than seven miles from midtown Manhattan." *Nat'l Football League Props.*, 637 F. Supp. at 510. Built in 2010, MetLife Stadium is one of the premier venues in the country and has hosted top entertainers and events, including the Super Bowl. (Amend. Compl. ¶ 42.)

## B.   Plaintiffs' Claims.

On January 3, 2022, Plaintiff Suero commenced the instant putative class action by filing the original Complaint against all Defendants on behalf of himself and "millions of other similarly situated individuals[.]" (*See* ECF 1 at ¶¶ 1, 109-141.) The Complaint asserted claims for false

---

[5]   As a matter of public record numerous other professional sports teams—across various leagues—play their home games in cities other than those to which their team name is tied including: NFL's Dallas Cowboys (Arlington, Texas), Washington Commanders (Landover, Maryland), San Francisco 49ers (Santa Clara, California), and the New England Patriots (Foxboro, Massachusetts); Major League Baseball's Tampa Bay Rays (St. Petersburg, Florida) and Atlanta Braves (Cumberland, Georgia); the National Hockey League's Phoenix Coyotes (Glendale, Arizona); and Major League Soccer's New York Red Bulls (Harrison, New Jersey). The Court may properly take these matters of public record into account in deciding a motion to dismiss. *Elite Union Installations, LLC v Nat'l. Fire Ins. Co. of Hartford*, No. 20-CV-4761, 2021 WL 4155016, *4 (S.D.N.Y. Sept. 13, 2021).

advertising, deceptive trade practices, civil RICO, unjust enrichment and conspiracy. (*Id.* ¶¶ 109-142.) After Defendants moved to dismiss the Complaint, Plaintiffs filed the Amended Complaint, adding Plaintiff Wilkins, and replacing the Complaint's civil RICO, unjust enrichment and conspiracy claims with claims for fraudulent misrepresentation and negligence.

Much of the Amended Complaint is dedicated to digs aimed at New Jersey and the Stadium including claims that the Stadium "is located in the swamps of East Rutherford, New Jersey" and "is not surrounded by amenities such as hotels, restaurants, and bars[.]" (Amend. Compl. ¶¶ 29, 59.) Plaintiffs take particular umbrage at the Stadium's lack of a dome which Plaintiffs allege "offers fans a hot or cold, windy experience, often with rain or snow, hardly state-of-the art comfort." (*Id.* ¶ 115.) None of these *complaints* support a *Complaint* in the legal sense.

Plaintiffs' false advertising, deceptive practices and fraudulent misrepresentation claims rest on ten instances of alleged false advertising and misrepresentations—referred to as the "Ten Lies"—purportedly perpetrated by Defendants. (*Id.* ¶ 10.) The first two pertain to the teams and allege the Giants and Jets falsely advertise themselves as "New York team[s]." (*Id.* (Nos. 1-2).) The balance of the alleged "Ten Lies" pertain to the Stadium and claim the Stadium falsely advertises that it: "is the number one stadium in the world;" "sets the standard for venue excellence with state-of-the-art technology, comfort and amenities;" "hosts the World's Biggest Events;" "has the World's Biggest Stage;" "has topped the industry charts annually since opening;" "is under 20 minutes from New York City;" "is accessible to Penn Station" and uses a logo that falsely implies the Stadium is located in New York City. (*Id.* (Nos. 3–10).)

Plaintiffs allege that "[m]any people who attend Giants or Jets games for the first time or watch on TV, including Plaintiff Wilkins, are deceived by this [alleged] false advertising and are unaware that [the Giants and Jets] play out-of-state." (*Id.* ¶ 13.) Accordingly, Plaintiffs' false advertising claim alleges that, "if not for Defendants' false advertising including the Ten Lies,

Plaintiffs would not have purchased tickets and attended the game[.]" (*Id.* ¶ 119.) Plaintiffs assert nearly identical allegations in support of their deceptive practices and fraudulent misrepresentation claims. (*Id.* ¶¶ 127, 136.) Plaintiffs' negligence claim alleges Defendants breached a duty of care owed to Plaintiffs by imposing a cash-free policy at MetLife Stadium that purportedly violates New Jersey Revised Statutes § 56:8-2.33 (2019). (*Id.* ¶¶ 140-142.)

For their false advertising and deceptive practices claims, Plaintiffs seek "statutory damages, plus transportation costs to MetLife Stadium together with ticket prices paid and demand that the Giants and Jets remove the 'New York' and 'NY' and 'ny' designation from their name and merchandise and that they adopt their home of New Jersey (NJ/nj) as their geographic designation." (*Id.* ¶¶ 120, 128.) In addition, Plaintiffs' fraudulent misrepresentation claim seeks "$2 billion in compensatory damages [and] $4 billion in punitive damages, together with equitable relief enjoining Defendants from the use of the New York/NY/ny name and brand[.]" (*Id.* ¶ 138.) And Plaintiffs' negligence claim requests monetary damages and demand that Defendants eliminate the cash-free policy at MetLife Stadium. (*Id.* ¶ 150.)

Defendants now move to dismiss the Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I.

### STANDARDS APPLICABLE TO THE INSTANT MOTION

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must demonstrate grounds for relief beyond mere "labels and conclusions." *Id.* at 555. A complaint must also set forth "[f]actual allegations [that are] . . . enough to raise a right to relief above the speculative level." *Id.* "Though the Court must

accept the factual allegations of a complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 806 (S.D.N.Y. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"In considering whether a complaint states a claim upon which relief can be granted, the court 'begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth,' and then determines whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" *BankUnited, N.A. v. Merritt Environmental Consulting Grp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Importantly, a court need not accept "general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, matters of which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit." *Pollock v. Shea*, 2021 WL 4962736, at *2; *Elite Union Installations, LLC*, 2021 WL 4155016, at *4; *Champion v. Moda Operandi, Inc.*, No. 20-CV-7255, 2021 WL 4340670, at *5 (S.D.N.Y. Sept. 22, 2021).

## II.

### THE COMPLAINT FAILS TO SET FORTH ANY PLAUSIBLE CLAIMS FOR RELIEF

**A.**     **Plaintiffs Fail to Allege Plausible False Advertising and Deceptive Practices Claims.**

Plaintiffs' claims for false advertising (First Cause of Action) and deceptive practices

(Second Cause of Action) are brought pursuant to New York General Business Law Sections 349 ("Section 349") and 350 ("Section 350").  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" N.Y. Gen. Bus. Law § 349.  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id.* § 350.  The Second Circuit has held that the claims require the same elements and should be analyzed together. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

"To state a claim under either section [349 or 350], a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451, 2021 WL 3501203, at *4 (S.D.N.Y. Aug. 9, 2021).  Plaintiffs' Complaint is fatally flawed in several respects.

1.     **The Complaint Does Not—and Plaintiffs Cannot—Demonstrate That Defendants Engaged in Any Materially Misleading Conduct.**

The Second Circuit has held that to qualify as "materially misleading conduct" the alleged conduct must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, v. *Staples, Inc.* 802 F.3d 289, 300 (2d Cir. 2015); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (dismissing deceptive-practices and false advertisement claims pursuant to Rule 12(b)(6)).  The test is an objective one. *Id.*

Thus, to demonstrate "materially misleading conduct" for purposes of a false advertising or deceptive practices claim, a claimant must establish that "a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled" by the defendant's alleged conduct. *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (dismissing case pursuant to Rule 12(b)(6)).

9

### a.  *The Giants' and Jets' Alleged Conduct Is Not Misleading.*

The thrust of Plaintiffs' false advertising and deceptive practices claims against the teams is that the Giants and Jets continue to brand themselves as "New York" teams despite playing their home games just across the Hudson River in East Rutherford, New Jersey.  However, the mere fact that the Giants and Jets have continually used names that include "New York" following their respective moves seven miles west of midtown Manhattan to New Jersey many decades ago does not—*ipso facto*—demonstrate that they engaged in any materially misleading conduct.[6]

Tellingly, Plaintiff fails to allege that Defendants ever represented that the Giants' and Jets' home stadium is located in New York.  Moreover, Plaintiffs fail to cite any requirement that the city associated with a team's name identify the location of its home *stadium*.  Indeed, the Amended Complaint alleges that team names can refer to a team's "hometown" or "region."  (Amend. Compl. ¶¶ 1, 8.)  Thus, the Giants' and Jets' continued use of "New York" as part of their team names is not misleading at all—it merely refers to the teams' hometown.  (*Id.*)

The Complaint's express reliance on *Nat'l Football League Props. v. N.J. Giants*, 637 F. Supp., and the NFL's Constitution and Bylaws further underscores the deficiencies of Plaintiffs' claims.[7]  (*Id.* ¶¶ 21-23.)  In *Nat'l Football League Props.*, the Court explained that "[t]he NFL Constitution establishes the New York Football Giants' home territory as the area within a seventy-five mile radius of the City of New York and, thus, the Giants' fans are concentrated in the New York metropolitan area which includes portions of New York, New Jersey, and Connecticut."

---

[6]  *See Nat'l Football League Props.*, 637 F. Supp. at 510 (recognizing that the Giants "play home games in East Rutherford, New Jersey, less than seven miles from midtown Manhattan[.]").

[7]  While the Amended Complaint omits a citation to *Nat'l Football League Props.*, the original Complaint included the same quotes with citations.  (*See* ECF No. 1, ¶¶ 19-21.)  Because the decision in *Nat'l Football League Props.* and the NFL's Constitution and Bylaws are expressly referenced in the Amended Complaint, the Court may properly take them into account in deciding a motion pursuant to Rule 12(b)(6).  *See supra* at 4, n. 3.

*Nat'l Football League Props.*, 637 F. Supp. at 510.

The NFL's Constitution and Bylaws makes clear that the same 75-mile radius rule applies to the Jets' home territory. CONST. & BYLAWS OF THE NATIONAL FOOTBALL LEAGUE, Art. VI, § 4.1.[8] The Court in *Nat'l Football League Props.* noted that the Giants' home stadium in New Jersey is "less than seven miles from midtown Manhattan"—well within the 75-mile radius of New York City that defines the Giants' and Jets' "home territory." *Nat'l Football League Props.*, 637 F. Supp. at 510. Thus, referring to the Giants and Jets as New York teams is not misleading. While Plaintiffs may disagree with the NFL's home territory rule, the Second Circuit has held "it is not the role of judges and juries to be second-guessing the decision taken by a professional sports league purportedly enforcing its *own* rules." *Olson v. Major League Baseball*, Nos. 20-1831-cv, 20-1841-cv, 2022 WL 828748, at *13 (2d Cir. Mar. 21, 2022) (emphasis in original).

Plaintiffs also cannot seriously dispute that it is common knowledge the Giants and Jets play their home games in New Jersey—and have done so for decades. (*See* Amend. Compl. ¶¶ 32-33.) This alone is fatal to Plaintiffs' claims. *See Twohig*, 519 F. Supp. 3d at 161-63 (dismissing case pursuant to Rule 12(b)(6) against producer of "vanilla soymilk" that was not made primarily from vanilla bean because reasonable consumer understands "vanilla" as a flavor not an ingredient). Plaintiffs' attempt to nonetheless argue that the Giants' and Jets' continued use of their New York names following their moves to New Jersey in the 1970s and '80s qualifies as "materially misleading conduct," does not—and cannot—pass muster under the "reasonable consumer" test, even at the pleading stage. *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011); *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (determining likelihood that reasonable consumers would be misled

---

[8] *See supra* at 4, n. 4.

entails "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 495, 501 (2d Cir. 2020) (affirming dismissal pursuant to Rule 12(b)(6) because a reasonable consumer would not be misled into thinking that an "Angus Steak & Egg Breakfast Sandwich" from Dunkin Donuts that costs $4.00 contains an actual "steak").

In addition, Plaintiffs fail to allege that Defendants ever represented that the Giants' and Jets' home stadium is located in New York. Instead, the Complaint alleges just the opposite—that Defendants openly "advertise the time it takes to travel from the State of New York to MetLife Stadium *in New Jersey*[.]"[9]  (Amend. Compl. ¶ 110 (emphasis added).)  This is also fatal to Plaintiffs' false advertising and deceptive practices claims and a defect that cannot be cured by further amendment. *See, e.g.*, *Fibermark, Inc. v. Brownville Specialty Paper Prod., Inc.*, 419 F. Supp. 2d 225, 241-42 (N.D.N.Y. 2005) ("[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed. . . ."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386 (E.D.N.Y. 2017) (dismissing case pursuant to Rule 12(b)(6) because disclaimer on Sapporo beer bottles stating it is brewed in Canada defeated deceptive practices claim).  Simply put, to allege that football games the Giants and Jets have played in New Jersey—for many decades—are materially misleading to a reasonable consumer is not plausible on its face, uncurable by further amendment, and merely demonstrates the speciousness of Plaintiffs' claims.

---

[9]  Plaintiffs' allegation that they attended more than one Jets and Giants game in New Jersey—once by car or car service (Amend. Compl. ¶¶ 60-63) and once by train (*id.* ¶ 40)— merely demonstrates the speciousness of their claims. Plaintiffs fail to explain how they could have been deceived twice. In fact, the allegation that Plaintiffs traveled to the Stadium by train is alone fatal to Plaintiffs' claim that they were unaware the Giants and Jets played in New Jersey because, as a matter of public record, the train line to New Jersey from Penn Station is *NJ* Transit and Plaintiffs allege that "the train only goes to Secaucus, New Jersey, where they had to change platforms and trains to arrive at MetLife Stadium." (*Id.* ¶ 40). It is well-settled that courts need not accept "general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc.*, 747 F.3d at 151-52. (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

Finally, dismissal is also warranted to the extent the Stadium's location is communicated to consumers in the sale of tickets or appears on the tickets themselves. *See, e.g.*, *Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007) (dismissing pursuant to Rule 12(b)(6) where reasonable consumer would not be misled into believing concert was guaranteed to proceed as scheduled where ticket stated, "DATE & TIME ARE SUBJECT TO CHANGE").

### b.    *The Giants' and Jets' Alleged Conduct Is Also Not Material.*

Even assuming—*arguendo*—that the Giants' and Jets' continued identification as New York teams is somehow "misleading," the Complaint would still fail to set forth any cognizable claims for false advertising and deceptive practices. Under New York law, such claims require a showing that the alleged misleading conduct was also material. *See, e.g.*, *Braynina v. TJX Companies, Inc.*, No. 15-CV-5897, 2016 WL 5374134, *5 (S.D.N.Y. Sept. 26, 2016) (dismissing claims pursuant to Rule 12(b)(6)). "A 'material' deception is one involving information that is important to consumers and likely to affect their choice of product." *Id.* If a plaintiff's choice would have been the same regardless of whether they understood the facts behind the allegedly "misleading" conduct, this element is not satisfied. *See id.*

Here, Plaintiffs fail to allege that their purported choice to attend a Giants or Jets game was in any way based on a belief that the teams played their home games in New York. Accordingly, Plaintiff cannot demonstrate that the alleged misleading conduct was material to their alleged choice to attend games in New Jersey. *See, e.g.*, *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 745 (S.D.N.Y. 2012) (dismissing case pursuant to Rule 12(b)(6) where statements were not material because they were "plainly irrelevant" to decisions at issue).

### c.    *The Stadium's Alleged Conduct Is Not Misleading.*

Plaintiffs' attempt to salvage this action by relying on alleged deceptive and false advertising by the Stadium also fails. The only such statements to which Plaintiffs point are the

Stadium's alleged claims that it: "is the number one stadium in the world;" "sets the standard for venue excellence with state-of-the-art technology, comfort and amenities;" "hosts the World's Biggest Events;" "has the World's Biggest Stage;" "has topped the industry charts annually since opening;" "is under 20 minutes from New York City;" "is accessible to Penn Station" and allegedly uses a logo that falsely implies the Stadium is in New York City. (*Id.* ¶ 10 (Nos. 3-10).)  None of these statements are sufficient to support claims for false advertising and deceptive practices.

To support claims for false advertising or deceptive practices, a claimant must identify misleading statements of fact. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).  Here, nearly all of the statements attributed to the Stadium—that MetLife Stadium "sets the standard for venue excellence with state-of-the-art technology, comfort and amenities[,]" "hosts the World's Biggest Events[,]" and "has the World's Biggest Stage[,]"—are exaggerated statements of opinion that, at most, qualify as puffery and cannot sustain claims for false advertising and deceptive practices. *See, e.g.*, *George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021) (affirming dismissal of claims pursuant to Rule 12(b)(6) because advertisements such as "[b]est coffee for the Best You" and "Starbucks or nothing" are not actionable under Section 349 and 350); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (holding "statement that Diet Coke will 'not go to your waist' is so vague and non-specific a representation that, at most, it amounts to inactionable 'puffery'").

Plaintiffs' reliance on the Stadium's alleged claims that it "is the number one stadium in the world;" "has topped the industry charts annually since opening;" "is under 20 minutes from New York City" and "is accessible to Penn Station" are similarly unavailing because each of those statements is true. (Amend. Compl. ¶ 10.)  In fact, MetLife Stadium has repeatedly topped the industry charts and been named the top grossing statement in the world by Billboard Magazine. *See, e.g.*, METLIFE STADIUM NAMED BILLBOARD'S TOP GROSSING STADIUM IN THE

WORLD (Jan. 06, 2015), https://www.metlifestadium.com/news/2015/01/06/metlife-stadium-named-billboard-s-top-grossing-stadium-in-the-world.[10]   Moreover, Plaintiffs' own allegations demonstrate the Stadium is accessible from Penn Station because Plaintiffs allege they traveled to the Stadium *from Penn Station*.   (Amend. Compl. ¶ 40.)   And Plaintiffs' claim that the Stadium cannot be reached by train in "under 20 minutes" because "[i]t took Plaintiffs 30 minutes to find the platform and board a train at Penn Station"—as if Plaintiffs' apparent difficulty in locating the right platform at a public train station should be held against Defendants—is simply absurd.   (*Id.*)

Plaintiffs' assertion that the Stadium's logo's inclusion of elements of the New York City skyline is materially misleading also rings hollow.   In the Second Circuit, puffery "encompasses visual depictions that, while factually inaccurate, are so grossly exaggerated that no reasonable consumer would rely on them in navigating the marketplace." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 148 (2d Cir. 2007).   Here, the logo's skyline, loosely reflecting the skyline visible from the Stadium, is obviously not intended to guide consumers in locating the Stadium or navigating the marketplace.   Thus, "there is no danger of consumer deception and hence, no basis for a false advertising claim." *Id.* at 159.

### d.      The Stadium's Alleged Conduct Is Also Not Material.

Finally, even assuming—*arguendo*—that the Stadium's conduct was somehow "misleading," the Complaint would still fail to set forth any cognizable claims for false advertising and deceptive practices against the Stadium because the Stadium's alleged misleading conduct is also not material.   *See, e.g.*, *Braynina*, 2016 WL 5374134, *5.   Nowhere does the Amended Complaint allege that any of the Stadium's purported misleading statements or its logo had any

---

[10]   The Amended Complaint expressly references the Stadium's website at www.metlifestadium.com as a source of the alleged "Ten Lies." (Amend. Compl. ¶ 39.) Accordingly, the Court may also properly consider the contents of the Stadium's website in connection with this Motion. *See supra* at 4, n. 3.

bearing on Plaintiffs' alleged decision to attend games of the Giants and Jets.

Plaintiffs' conclusory allegation that, "[a]s a result of Defendants false advertising, Plaintiffs purchased tickets and attended an NFL game at MetLife Stadium in 2021," does not alter this conclusion.  (Amend. Compl. ¶ 118.)  Such conclusory allegations are entitled to no credit whatsoever.  *See Twombly*, 550 U.S. at 555 ("courts are not bound to accept as true a legal conclusion couched as a factual allegation").  Accordingly, Plaintiffs cannot demonstrate that any of the Stadium's alleged misleading conduct was material to their choice to attend the game.  *See, e.g., Tasini*, 851 F. Supp. at 745 (dismissing case pursuant to Rule 12(b)(6) where statements were not material because they were "plainly irrelevant" to decisions at issue).

### 2.    The Complaint Also Lacks Allegations Demonstrating That Plaintiffs Suffered a Cognizable Injury as a Result of Defendants' Alleged Conduct.

To establish claims for false advertising and deceptive practices, a plaintiff must also prove "actual damages" which requires a plaintiff to allege that, "on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."  *Orlander*, 802 F.3d at 302.  Here, Plaintiffs allege two injuries: (a) purchasing tickets to Giants' and Jets' games "without knowing the stadium [is] located in New Jersey" (Amend. Compl. ¶ 54); and (b) the "expensive, time-consuming, and stressful transportation from New York to East Rutherford, New Jersey to watch the Giants or Jets play[.]" (*Id.* ¶ 56).  Neither injury is cognizable.

Plaintiffs' attempt to rely on a theory of injury based on their alleged purchase of tickets to Giants' and Jets' home games fails under well-established New York law.  To support a claim for false advertising or deceptive practices a plaintiff must demonstrate that the value of the item purchased was less than expected.  *Orlander*, 802 F.3d at 301-02.  It is not enough for a plaintiff to allege that they were improperly induced into making the purchase.  *See, e.g., Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999).

Rather, to sustain claims under Sections 349 and 350-A, plaintiffs must demonstrate that

they overpaid for a product or service by reference to some objective standard—*i.e.*, the price the plaintiffs paid is *objectively* more than the product or service they received is worth. *See, e.g.*, *Belcastro v Burberry Ltd.*, No. 16-CV-1080, 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017) (dismissing case pursuant to Rule 12(b)(6) because plaintiff failed to "allege that he overpaid by some objective measure, and not just that he felt, subjectively, that he overpaid").

For example, in *Small*, the plaintiffs claimed the defendants used deceptive practices to sell cigarettes, which "prevented [the plaintiffs] from making free and informed choices as consumers." 94 N.Y.2d at 56. The plaintiffs did not allege that the defendants' alleged practices affected the cigarettes' price. Instead, the plaintiffs alleged they would not have bought the cigarettes *but for* the defendants' deceptive conduct. *Id.* The Court of Appeals found that, by failing to allege the defendants' conduct affected the cigarettes' price, the plaintiffs failed to plead a cognizable injury necessary to sustain their false advertising and deceptive practices claims. *Id.*

The Court of Appeals holding in *Small* has been followed by numerous New York courts to deny deceptive practices and false advertising claims predicated on theories of injury based solely on allegations that the plaintiffs were misled into purchasing products absent allegations that the products themselves were worth less than expected. *See, e.g.*, *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007) (plaintiff failed to plead a cognizable injury where she merely alleged that "she would not have purchased the drug absent defendant's deceptive practices"); *Rice v. Penguin Putnam, Inc.*, 289 A.D.2d 318, 319 (2d Dep't 2001) (book purchasers who alleged they were misled into purchasing book suffered no injury in buying the book).

Here, despite already having had an opportunity to amend their claims, Plaintiffs still do not—and cannot—allege that the tickets they purportedly purchased to Giants and Jets games were objectively worth anything less than they expected. There is simply no basis to tie the value of tickets to the location of the game as opposed to the event on the field—home games of the Giants

and Jets.   Nor do Plaintiffs identify any discernible standard demonstrating that they paid more for their tickets than they were objectively worth.   Instead, Plaintiffs merely allege they would not have purchased the tickets and attended the game "[i]f not for Defendants' false advertising[.]" (Amend. Compl. ¶ 119, 127.)  New York Courts have repeatedly found that such theories of injury are not cognizable and cannot sustain claims for false advertising and deceptive practices.  *See e.g.*, *Braynina*, 2016 WL 5374134, at *10 (citing cases).

Plaintiffs' theory of injury based on the alleged costs and time of transportation to Giants' and Jets' games also fails.  New York courts refuse to recognize "travel or other (often inevitable) collateral expenses" to a plaintiff's purchase as cognizable injuries.  *Id.* at *11 (rejecting transportation-costs injury, noting "Plaintiffs identify no authority, and this Court is aware of none, ratifying a 'travel expenses' theory of injury under § 349 or § 350 where the underlying claim is deceptive pricing conduct.").

Thus, Plaintiffs' false advertising and deceptive practices claims should be dismissed with prejudice.

**B.**      **Plaintiffs Fail to Allege a Plausible Fraudulent Misrepresentation Claim.**

Plaintiffs' fraudulent misrepresentation claim also lacks merit. To sustain a claim for fraud under New York law a plaintiff must allege: (1) a material misrepresentation of fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (3) justifiable reliance by the plaintiff; and (4) damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009).  Moreover, a claim for fraud is subject to Rule 9(b)'s heightened pleading standard.  Fed. R. Civ. P. 9(b).

The Second Circuit has "repeatedly held [that Rule 9(b)] requires the plaintiff to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyt. Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).  "In

addition, the plaintiff must 'allege facts that give rise to a *strong* inference of fraudulent intent.'" *Id.* at 198 (emphasis in original).  Plaintiffs fail to satisfy these requirements.

### 1.      *Plaintiffs Cannot Demonstrate That Defendants Made Any Misrepresentations.*

The gravamen of the fraud claim is that the Giants and Jets "engaged in fraudulent misrepresentation by way of interstate wire fraud by knowingly and intentionally branding, marketing, and advertising their New Jersey teams as the New York Giants and New York Jets on the internet and television around the world together with the Ten Lies." (Amend. Compl. ¶ 130.) However, this allegation is no more availing in the context of Plaintiffs' fraud claim than it was in the context of Plaintiffs' false advertising and deceptive practices claims. *See, e.g.*, *Zottola v. Eisai Inc.*, 20-CV-2600, 2021 WL 4460563 (S.D.N.Y. Sept. 29, 2021) (dismissing fraud claim by analyzing fraud claim similarly, but more closely, than false advertising and deceptive practice).

Plaintiffs still fail to allege that Defendants made any actionable misrepresentations.  As noted above, the Giants' and Jets' retention of their New York names do not qualify as material misleading statements or misrepresentations. *See supra* at 9-12.  The teams' names merely refer to their "home city, state or region" according to Plaintiffs' own allegations. (Amend. Compl. ¶ 8.)  Plaintiffs are similarly unable to demonstrate any misrepresentations by the Stadium.  In fact, each of the alleged "Ten Lies" attributed to the Stadium either qualify as puffery or are true statements. *See supra* at 13-15.

Plaintiffs also fail to satisfy the requirements of Rule 9(b).  The Amended Complaint fails to identify *where* or *when* the alleged misrepresentations on which Plaintiffs rely were made or explain—in anything other than conclusory fashion—why the alleged statements attributed to Defendants are fraudulent.  Absent such allegations, the fraud claim fails from the start. *Zottola*, 2021 WL 4460563, at *8 (dismissing fraud claims because "Plaintiff's allegations fall short of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)").

### 2.       *Plaintiffs Cannot Demonstrate the Element of Fraudulent Intent.*

The Amended Complaint also fails to sufficiently plead the element of fraudulent intent.
Under Rule 9(b) a fraud claim must be supported by allegations giving rise "to a *strong* inference
of fraudulent intent." *Nakahata*, 723 F.3d at 198 (emphasis in original).  The Amended Complaint
fails because it lacks any such allegations.  *See Zottola*, 2021 WL 4460563, at *9.  The only
allegation of fraudulent intent is a claim that Defendants "published the Ten Lies to fraudulently
induce Plaintiffs and the classes to patronize MetLife Stadium and to watch the Giants and Jets on
TV." (*See* Amend. Compl. ¶ 131.)  Yet, the mere allegation that Defendants had a "generalized
motive to . . . increase sales and profits" fails to give rise to a "strong inference" of fraudulent
intent. *Campbell v. Whole Foods Market Grp., Inc.*, 516 F.Supp.3d 370, 391 (S.D.N.Y. 2021).

### 3.       *Plaintiffs Cannot Demonstrate the Element of Justifiable Reliance.*

Moreover, even assuming Plaintiffs' claim satisfied the other elements of their fraud
claim—and they have not—Plaintiffs cannot ever demonstrate the element of justifiable reliance.
*See Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005).  "In New York,
it is well settled that a plaintiff cannot establish justifiable reliance when, 'by the exercise of
ordinary intelligence it could have learned of the information it asserts was withheld.'" *Daniel v.
Mondelez Intl., Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018).  A "plaintiff cannot close his eyes
to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and
investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or
truth . . . ." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006); *Mallis v.
Bankers Tr. Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980).[11]

---

[11]   Plaintiffs' attempt to demonstrate justifiable reliance fails for many of the same reasons
Plaintiffs cannot demonstrate that Defendants made any materially misleading statements in
the context of Plaintiffs' false advertising and deceptive practices claims.  Simply put, no
reasonable consumer would be misled into believing the Giants or Jets play home games in

Here, the fact that the Giants and Jets play their home games in New Jersey—and have for nearly half-a-century—was unquestionably discoverable through the exercise of ordinary diligence. Indeed, it is axiomatic that Plaintiffs could not have traveled to the Stadium without first researching where it was located. This too warrants dismissal of the fraud claim. *See, e.g.*, *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404-05 (S.D.N.Y. 2010) (plaintiff failed to demonstrate justifiable reliance where information allegedly misrepresented could be verified on the internet); *Thurman v. Bun Music*, No. 13 Civ. 5194, 2015 WL 2168134, at *10 n.13 (S.D.N.Y. May 7, 2015) (noting that "information was readily available on the internet that significantly undermines plaintiff's assertion of reasonable reliance . . .").

### 4.   *Plaintiffs Cannot Demonstrate That They Suffered Any Cognizable Damages.*

Finally, the Amended Complaint also fails to plead any cognizable damages to support a fraud claim. Under New York law, "the plaintiff must show that the loss was a 'direct result of the defendant's wrongful actions and that it was independent of other causes.'" *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 118 (S.D.N.Y. 2020) (quotations omitted). The fraud must also cause an "actual pecuniary loss . . . ." *DJR Communications Corp. II v. 530 Park Residential Holdings LLC*, 188 A.D.3d 561, 562 (1st Dep't 2020).

The only damages offered in support of Plaintiffs' fraud claim are Plaintiffs' alleged purchase of tickets to Giants and Jets games and the costs of transportation to those games. (Amend. Compl. ¶ 135.) However, these alleged injuries offer no more support for Plaintiffs' fraud claim than they did Plaintiffs' false advertising and deceptive practices claims. Once again, Plaintiffs fail to allege that the value of the products purchased—tickets and transportation—were anything less than expected. Absent such allegations, Plaintiffs cannot possibly demonstrate a

---

New York simply by virtue of their "New York" names given both have played home games in New Jersey for nearly half-a-century. *See supra* at 9-12.

cognizable injury sufficient to sustain a fraud claim. *See Small*, 94 N.Y.2d at 57; *Zottola*, 2021 WL 4460563, *8 (holding "induced purchase" injury not cognizable for fraud claim and dismissing failing to state cognizable injury).

Moreover, Plaintiffs' alleged transportation costs fail to qualify as a cognizable injury for purposes of a fraud claim for an additional reason—Plaintiffs cannot demonstrate that such costs were directly caused by Defendants. *See Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 445 (S.D.N.Y. 2015) ("a plaintiff must allege that the defendant's misrepresentations were the direct and proximate cause of the claimed losses"). Defendants do not set the tolls, run the tolls, or collect the tolls. *See Fed. Deposit Ins.*, 500 F. Supp. 3d at 118.[12] Plaintiffs' theory of injury fails for this reason as well.

Thus, the Amended Complaint's fraud claim also warrants dismissal with prejudice.

### C.   Plaintiffs Fail to Allege a Plausible Negligence Claim.

Plaintiffs' negligence claim contends that Defendants breached "a duty of care [owed] to Plaintiffs to follow the laws of the State of New Jersey" by enforcing a cash-free policy at the Stadium purportedly in violation of N.J. STAT. 56:8-2.33(a) (the "Statute"), which provides:

> A person selling or offering for sale goods or services at retail shall not require a buyer to pay using credit or to prohibit cash as payment in order to purchase the goods or services. A person selling or offering for sale goods or services at retail shall accept legal tender when offered by the buyer as payment.

(Amend. Compl. ¶¶ 140, 142 *citing* N.J. STAT. 56:8-2.33(a).) This claim fails on numerous levels.

Procedurally, the claim fails because the Statute does not provide for a private right of action. 56:8-2.33(b). Moreover, even were this not the case, on its face, the Statute does not apply

---

[12]   To the extent Plaintiffs claim that Defendants' alleged conduct was a "but for" cause of their transportation costs, that also fails to qualify as a cognizable injury for purposes of a fraud claim. *See, e.g.*, *Bennett v. U.S. Tr. Co. of New York*, 770 F.2d 308, 316 (2d Cir. 1985) ("but-for allegations [of injury] are insufficient to state a cause of action" for fraud.)

to "any sports or entertainment venue with a seating capacity of 10,000 or more irrespective of the event held at the venue." N.J. STAT. § 56:8-2.33(c)(5).   It is beyond dispute that the Stadium—which has a seating capacity of 82,500—qualifies for this exemption.  Accordingly, the Stadium's alleged cash-free policy does not run afoul of New Jersey law in the slightest.

Thus, Plaintiffs' negligence claim should also be dismissed with prejudice.

### III.

### PLAINTIFFS' CLAIMS AGAINST THE NFL MUST BE DISMISSED

In addition to all of the foregoing reasons concerning the fatally flawed pleading of Plaintiffs' claims, Defendant NFL respectfully submits that Plaintiffs' claims against it must be dismissed with prejudice because the Complaint lacks any allegations that the NFL engaged in any of the alleged conduct of which Plaintiffs complain, and no amendment could salvage such a claim. Plaintiffs' allegations regarding the NFL's revenues, the value of its teams, or the salary of its Commissioner (*see* Amend. Compl. ¶¶ 3-6) are plainly irrelevant to, disconnected from, and insufficient to impose liability on the NFL under *any* theory.  Thus, Plaintiffs' claims against the NFL must be dismissed with prejudice.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### IV.

### THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Although courts freely give leave to amend, they should do so only "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Justice does *not* require granting leave to amend where the Complaint has already been amended and any further amendment would likewise be futile.  *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 168-69 (S.D.N.Y. 2021) (denying leave to amend deceptive practices and false advertisement claims where plaintiff failed to suggest she possessed facts that could cure the complaint's deficiencies); *see also Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Further, a plaintiff's inability to cure pleading deficiencies after

an earlier amendment implies a second amended would fare no better.  *See, e.g., St. Clair Shores Gen. Employees Retirement Sys. v. Eibeler*, 745 F. Supp. 2d 303, 316 (S.D.N.Y. 2010).

Here, amendment would be futile because Plaintiffs do not possess facts that could cure any of the Complaint's numerous fatal deficiencies.  The Complaint is frivolous, and a frivolous complaint cannot be saved by amendment.  *Id.*  No amount of repleading will alter the fact that the Giants' and Jets' retention of their "New York" names is perfectly appropriate given the fact that their stadium is located only seven miles from Manhattan in New Jersey and sits squarely within their home territory of the New York Metropolitan area.  Nor will repleading change the fact that Plaintiffs' claims are based on events that occurred decades ago and have not caused *anyone* any legally cognizable injuries.  And repleading will not alter the fact that the Statute upon which Plaintiffs' negligence claim is founded does not apply to the Stadium at all.

Permitting Plaintiffs to refine these baseless allegations for a second time will not morph them into viable legal claims—they will simply force Defendants (and the Court) to incur additional wastes of time and resources for no legitimate purpose whatsoever.  Plaintiffs' claims are precluded under well-established black-letter law and, as has already been shown, cannot be saved by amendment.

Accordingly, the Amended Complaint should be dismissed in its entirety *with prejudice*.

## CONCLUSION

Plaintiffs' claims are without merit and should be dismissed with prejudice, together with such other and further relief as the Court may deem just and proper.[13]

Dated:    April 25, 2022
New York, New York

Respectfully submitted,
HAYNES AND BOONE, LLP

By: _____
Jonathan D. Pressment
Alexandra Larkin
Rebecca E. Schwarz
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 918-8961
jonathan.pressment@haynesboone.com
alexandra.larkin@haynesboone.com
rebecca.schwarz@haynesboone.com

*Attorneys for Defendants National Football League, New York Football Giants, Inc., New York Jets, Inc., and New Meadowlands Stadium Company, LLC*

---

[13]  While the Complaint is patently frivolous, to the extent the Court concludes Plaintiff has set forth any viable claims—and he has *not*—dismissal is still warranted because it is impossible to discern the conduct for which Plaintiff alleges each Defendant should be held liable. *Kashef v BNP Paribas SA*, No. 16-CV-03228 (AJN), 2021 WL 1614406, at *2 (S.D.N.Y. Apr. 26, 2021); *Appalachian Enters., Inc. v. ePayment Solutions Ltd.*, No. 01-CV-11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004).