UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDIELL SUERO and MAGGIE WILKINS, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br>- versus -<br><br>NFL, NEW YORK FOOTBALL GIANTS, INC., NEW YORK JETS, LLC, and NEW MEADOWLANDS STADIUM COMPANY, LLC,<br><br>                      Defendants. | Case No.:  1:22-cv-31-AJN<br><br>**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**JURY DEMANDED** |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED
COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

                                                Evan Spencer
                                                Evan Spencer Law, PLLC
                                                305 Broadway, 7th Floor
                                                New York, NY   10007
                                                Tel. 917.547.4665
                                                Evan@EvanSpencerLaw.com
                                                EvanSpencerLaw.com

                                                *Attorney for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY ....................................................................................................................1

BACKGROUND ...................................................................................................................1

FACTS ...................................................................................................................................3

ARGUMENT .........................................................................................................................4

      I.    THE "NY" GIANTS & JETS ARE "ANOMOLIES" THAT CAUSE "CONFUSION" …………………………………………………………………...5

      II.    MATERIALLY MISLEADING …………………………………………………7

      III.   DECEPTIVE PRACTICES……………………………………………………9

      IV.   FALSE ADVERTISING ……………………………………………………..10

      V.    FRAUDULENT MISREPRESENTATION……………………………………..10

      VI.   THE OTHER TEAMS ………………………………………………………11

      VII.  IF IT WASN'T MADE IN CHAMPAGNE, ITS NOT CHAMPAGNE ………..12

      VIII. THE CLASS……………………………………………………………..14

      IX.   STATUTE OF LIMITATIONS AND LACHES………………………………...14

      X.    NEGLIGENCE ………………………………………………………………..15

CONCLUSION………………………………………………………………………..16

## TABLE OF AUTHORITIES

**CASES**

*Belcastro v. Burberry Ltd.*, 2017 U.S. Dist. LEXIS 198414, at *3
    (SDNY Dec. 1, 2017, No. 16-CV-1080) (VEC)...................................................................8

*Druyan v. Jagger*, 508 F. Supp. 2d 228 (SDNY 2007) ....................................................................6

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013)................................................................8

*Mandarin v. Wildenstein*, 16 N.Y.3d 173, 178 (N.Y. 2011)……………………………………..10

*NFL Props. v. New Jersey Giants, Inc.*, 637 F. Supp. 507 (DNJ 1986) ...................................4 – 6

Olson v. Major League Baseball, 2022 U.S. App. LEXIS 7266, at *41-42
    [2d Cir. Mar. 21, 2022, Nos. 20-1831-cv, 20-1841-cv]......................................................6

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ...................................................................8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011) ............................................................14

**STATUTES**

California False Advertising Law § 17533.7 ……………………………………………………12

Fed. R. of Civ. P. 12(b)(6) ………………………………………………………………………..1

New York General Business Law § 349, 350 …………………………………………………9, 10

NJ Rev Stat § 56:8-2.33 (2019) …………………………………………………………….15, 16

Vermont law, Title 6: Agriculture, Chapter 32: Maple Products, Section 493a …..……………12

1

Plaintiffs Abdiell Suero and Maggie Wilkins respectfully submit this Memorandum of Law in Opposition to Defendants' motion to dismiss the Amended Complaint (ECF 31), pursuant to Fed. R. of Civ. P. 12(b)(6), together with a declaration under oath by Plaintiffs' counsel and exhibits in support.

## PRELIMINARY STATEMENT

Defendants argue that the Amended Complaint has no merit and that its purpose is solely to harass, cause delay, and increase the costs of litigation. Defendants further argue that the facts presented by the Amended Complaint are primarily legal conclusions, and that the Court is therefore not required to credit them in Plaintiffs' favor. However, just because Defendants don't like Plaintiffs' facts does not mean that the facts are nothing more than legal conclusions. The truth is that it is Defendants who have self-servingly resolved the facts in their own favor, not only in regard to the Amended Complaint, but in regard to case law. Plaintiffs have revised their pleading based upon Defendants' motion to dismiss the original Complaint, and submit this brief and supporting exhibits, and my declaration **(Exhibit "A")** in opposition to Defendants' motion to dismiss the Amended Complaint.

## BACKGROUND

After the filing of Plaintiff's Complaint and Plaintiffs' Amended Complaint, and after Plaintiffs sent good faith email warnings to Defendants' "Partners," the fact is that Defendants completely changed their website www.metlifestadium.com to remove or change most of their

2

false and deceptive advertising. Most of this changed advertising was referenced in Plaintiffs' Amended Complaint as a list of "Ten Lies" told by Defendants, and Defendants obviously agreed with Plaintiffs, or they would not have removed much of the false advertising from their website.

With regard to the "New York" portion of the Giants and Jets names, there are two ways to look at this. Either the Jets and the Giants are New York teams who should play in New York, or they are New Jersey teams who should stop "eschewing" New Jersey identification and change their names. And the truth is that even if MetLife stadium is "only" seven miles away from Manhattan, fans do not fly like the crows (or swim like the fishes), and this allegedly seven-mile metropolitan ride took Plaintiffs four hours roundtrip, by public and private transport. During the Superbowl at MetLife Stadium, some fans waited over three hours before they could even leave MetLife Stadium because of traffic congestion. The trip is also quite expensive, unlike, as the Amended Complaint alleges, the trip to Yankee Stadium or Madison Square Garden, or even the 7 train to Citi Field in Queens, which costs $2.75, while Plaintiffs in this case spent over $200 for transportation to a single game.

But New York is New York, and New Jersey is still New Jersey. Previously, Defendants try to elide this distinction by pointing out that Newark Airport pops up on travel websites as a metro NYC airport, for an argument by analogy that MetLife Stadium is part of the metro NYC area. But the analogy fails, because Newark Airport is named after the New Jersey city where it is situated. It is not named after a more glamorous, sophisticated, interesting, or exciting city in another state. It is not named New York or Manhattan Airport. Similarly, Newark Airport is not situated in Long Island. Because if it was, that would just be confusing.

3
**FACTS**

Here are some facts Defendants failed to mention:

After the Amended Complaint was filed, Defendants made a number of changes to their website, specifically on the "About" Page at www.metlifestadium.com (the "Website"). Attached as **Exhibit "B"** are screen shots taken prior to the original Complaint and attached as **Exhibit "C"** are screenshots taken after the Amended Complaint was filed.

1. Prior to the filing of the Complaint, the Website did not mention an address and deceptively inferred that MetLife Stadium was in New York by stating, "MetLife Stadium, home to the New York Jets and New York Giants Football Giants…" Now the Website says, "MetLife Stadium, located in East Rutherford, NJ, is the home of the New York Jets and New York Football Giants."

2. Prior to the filing of the Complaint, the Website stated that MetLife Stadium is, "the number one stadium in the world." Now that false advertising and deceptive statement has been removed.

3. Prior to the filing of the Complaint, the Website stated that MetLife Stadium, "sets the standard for venue excellence with state-of-the-art comfort and amenities." Now that false advertising has been removed.

4. Prior to filing the Complaint, the Website stated that, "accessible from New York Penn Station and Newark Penn Station — approximately 20 minutes door to door." Once again, that false advertising has been removed (it takes closer to two hours on game day).

4

5.  Prior to the filing of the Complaint, the Website stated that, "MetLife Stadium tops the industry charts annually since opening." That false and deceptive language has been removed.

6.  And finally, prior to the filing of the Complaint, the Website stated that, "The only active venue to serve as the home stadium for two NFL teams, MetLife Stadium hosts 20 NFL games per season, more than any other Stadium." This language has also been removed as the Los Angeles Rams and Chargers both play at the same stadium as well.

Defendants claim that the Amended Complaint is frivolous, and that Plaintiffs and counsel should be sanctioned, but Defendants' own actions prove that Defendants took the lawsuit quite seriously indeed. In fact, Defendants modifications of their website prove that they were in fact engaged in false advertising and deceptive practices as Plaintiffs have argued since filing the original Complaint.

**ARGUMENT**

For the following reasons, the Amended Complaint is not frivolous, and Defendants' motion must be denied in its entirety.

I.  **THE "NY" GIANTS & JETS ARE "ANOMOLIES" THAT CAUSE "CONFUSION"**

Defendants lament that Plaintiffs rely on a trademark infringement case, *NFL Props. v. New Jersey Giants, Inc.*, 637 F. Supp. 507 (D.N.J. 1986), to support their claims. Then they proceed to use it too. However, *NFL Props.* supports Plaintiffs' case. In dicta, District Court

5

Judge Barry writes that the New York Giants are a team, "which plays all of its home games in New Jersey yet eschews a New Jersey identification as resolutely as a vampire eschews the cross." *NFL Props*. at 509.

In other words, the "anomaly," as Judge Barry writes, of a team with "New York" in its name playing in New Jersey, which perhaps is not just an anomaly but more like an actual problem, causes actual confusion in the eyes of the court who acknowledged that there is, "**confusion engendered by the unwillingness of the team (Giants) to correlate its name with the place it calls home**." If a federal judge in New Jersey stated that the use of the Giants and Jets geographic denomination is confusing, then it certainly constitutes a deceptive practice and fraudulent advertising. Since Defendants have been aware of this confusion for decades, their conduct constitutes fraudulent misrepresentation as well.

In 1986, the date of *NFL Props*., the time of the teams' moves to New Jersey was still fairly recent and within the personal memory of many adults, perhaps even a majority of adults, at least in New York State. Now, however, over fifty years later, it is not an incident in regard to which anyone younger than fifty (and there are quite a few members of that demographic in the population) has had direct experience. Whatever happened at the time, the alleged negotiations, arguments, news commentaries, etc., is simply not in the long-term memory of many currently middle-aged (and younger) people.

So there is no reason why that particular demographic, as well as others, might not be confused about a team named "New York" which does not actually play in New York. This is true of Plaintiff Wilkins who is from New Mexico, wasn't even born in 1986, and had no idea that the New York Giants actually play in East Rutherford.

6

It is true that Judge Barry refers to the New York "metropolitan area," but she clearly distinguishes between the actual New York metro area and New Jersey. She mentions:

> the New York metropolitan area consisting of the five boroughs of New York City together with Westchester, Rockland and Putnam Counties ... the New Jersey metropolitan area consisting of Bergen and Passaic Counties, and ... the New Jersey metropolitan area consisting of Middlesex, Hunterdon and Somerset Counties. *NFL Props*. at 514.

Putnam and Rockland, even Westchester, may be farther from NYC than East Rutherford, as the crow flies, but the fact remains that Putnam, Westchester, and Rockland Counties are still actually counties in the state of New York. East Rutherford isn't.

And the fact that Judge Barry cites that the home territory of the New York Giants is, "within a seventy-five mile radius of the City of New York..." means nothing. That's just the definition promulgated by the NFL in its Constitution and Bylaws (as Defendants point out).

Defendants claim that the Second Circuit has held that "it is not the role of judges and juries to be second-guessing the decision taken by a professional sports league purportedly enforcing its own rules." *Olson v. Major League Baseball*, 2022 U.S. App. LEXIS 7266, at *41-42 (2d Cir. Mar. 21, 2022, Nos. 20-1831-cv, 20-1841-cv).

This is true. However, in this situation the ruling is not on point, because *Olson* is about, at least in part, the electronic "stealing" of signs by opposing professional teams (something about relaying video to the dugout during a game). Defendants' citation is about (a) member teams of the MLB being required to follow MLB rules and (b) whether or not MLB enforces those rules. It is expressly stated by the Court that those rules do not and cannot apply to anyone not a member of MLB. *Id*.

7

In other words, just because the NFL decides that for its own purposes a home territory is within a seventy-five mile radius does not make that a binding decree on anyone who is not a member of the NFL.  And just because the NFL makes that decision doesn't mean that a team should be playing in another state.

## II.     MATERIALLY MISLEADING

Defendants claim that Plaintiffs' allegation regarding Defendants' misleading conduct must fail for a number of reasons.  First, they state that Plaintiffs' claims must fail because they do not allege that Defendants ever represented that the teams' home stadium was located in New York.  This is a straw argument, a fake issue.  The misrepresentation is actually much more fundamental, and material, than any obvious misdirection.  The misrepresentation is that they are New York teams.

Similarly, and self-servingly, Defendants ignore facts like the true nature of the current demographic and postulate their own concoction of the "reasonable consumer" ("RC").  Defendants' "RC" is apparently someone with a full command of the facts of this entire situation in their head, starting from the early seventies.  But Defendants' RC does not include anyone in this other, not insignificant, segment of the population — anyone under, say, fifty or so (including Plaintiff Wilkins), as previously discussed — who simply wasn't there when the whole thing occurred, and doesn't know that at one time there was quite a controversy.  Those people rightfully assume that New York Giants means New York Giants.  The extent to which these particular RCs might have a completely different experience from Defendants'

8

manufactured RC may turn out, after litigation and testimony, to be insignificant, but Defendants can't just dismiss them and say they don't count as a matter of law.

Even Defendants' own case law points out that there are disputes about what an RC might or might not believe in any given circumstance. *Orlander v. Staples, Inc.*, 802 F.3d 289, 301 (2d Cir. 2015) ("Given the ambiguous Contract . . . a reasonable consumer might well believe..."). In *Orlander*, Plaintiff alleged that "on account of a materially misleading practice, [he] purchased a product and did not receive the full value of [his] purchase." *Orlander* at *Id*. An in fact, in *Orlander*, the Court granted Plaintiff leave to amend "in order to particularize the damages he suffered from the alleged breach of contract." *Orlander* at 302.

As to *Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013), the problem was that Plaintiff did not submit any evidence of the allegedly misleading advertisement. When the court gave more time for this, plaintiffs submitted an advertisement dated nine months later than the commencement of the case. *Fink* at 741.

Also, pursuant to *Fink, supra*, and *Druyan, infra*, if the venue was on the address, the extent to which that might be evidence either way awaits discovery and trial. *Druyan v. Jagger*, 508 F. Supp. 2d 228, 238 (SDNY 2007).

*Belcastro* was about a pleading issue in regard to outlet store markdowns and whether they were really markdowns or not. "Belcastro did not allege, however, that he overpaid for any of the shirts or that the shirts were objectively different in any measurable way from what he believed he was purchasing." *Belcastro v. Burberry Ltd*., 2017 U.S. Dist. LEXIS 198414, at *3 (SDNY Dec. 1, 2017, No. 16-CV-1080) (VEC).

9

The court pointed out that there were ways that plaintiff could have satisfied the standard, and that he had even been given some guidance, and that other claimants had done it, but he did not do as the court advised.

And how is it not materially misleading to call a team the New York this or that when in fact the team plays in a different state?  Defendants claim it is on the ticket, but the tickets are not in evidence.

Finally, Plaintiffs allege that as a result of Defendants' false advertising, they purchased ticket and attended an NFL game at MetLife Stadium in 2021.  Defendants claim that this is conclusory, but it isn't.  It is merely a fact.

### III.  DECEPTIVE PRACTICES

Plaintiffs are entitled to damages and attorney's fees as a result of Defendants' Deceptive Practices, including the "Ten Lies."

> Pursuant to the New York General Business Law § 349. a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful;  (h) …any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

Plaintiffs are entitled to statutory damages as a result of Defendants' deceptive practices as well as ticket prices and transportation fees paid.

10

## IV. FALSE ADVERTISING

Pursuant to the New York General Business Law § 350, Plaintiffs are entitled to damages and attorney's fees as a result of Defendants' False Advertising, including the "Ten Lies."

> "The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual…"

Plaintiffs are entitled to statutory damages as a result of Defendants' false advertising.

## V. FRAUDULENT MISREPRESENTATION

Pursuant to the common law in the State of New York:

> Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" *Mandarin v. Wildenstein*, 16 N.Y.3d 173, 178 (N.Y. 2011)

Plaintiffs' Amended Complaint include a detailed recitation of Defendants' acts constituting fraudulent misrepresentation. As such, Plaintiffs are entitled to damages.

11

**VI.     THE OTHER TEAMS**

As stated in the introduction of Plaintiffs' Amended Complaint, of the 124 American franchises in the National Football League (NFL), Major League Baseball (MLB), the National Basketball Association (NBA), and the National Hockey League, the NFL Giants and Jets are the only teams to play in a different state than which they are named.

Defendants point out that Plaintiffs' papers actually cite a number of other teams who do not play in the cities for which they are named.  But while it is true that a handful of teams play in an adjacent city, the Giants and Jets are the only teams to play in an entirely different state.

For example, the Dallas Cowboys play in Arlington, Texas, which is about twenty miles from Dallas.  In Texas, it probably takes less time to drive those twenty miles than it does to get from Manhattan to East Rutherford.  A Texan can probably drive it in ten minutes.

But even if it took five minutes, a Texas team could never play in neighboring states like Oklahoma or New Mexico.  No Texan would put up with that.

The Los Angeles Angels play in Anaheim, but Anaheim is still in California.   The same is true of the 49ers, the Tampa Bay Rays, the Atlanta Braves and NHL's Phoenix Coyotes.  They all still play in their home state.  Nobody has to cross state lines to attend a game.  In the case of MetLife Stadium, patrons from New York must pay a $16 toll to cross the Hudson River when returning from New Jersey.

The Washington Commanders (formerly the Washington Redskins), who play in Maryland, not Washington D.C., but D.C. is not a state, and Maryland and Virginia are both stand-in states for our nation's capital.

12

In the case of the NFL Patriots football team, after an 11-year break without northeast representation, it was announced on November 16, 1959, that professional football would return to the northeast.  On February 20, 1960, the AFL announced its last franchise the Boston Patriots.  At the beginning of the 1970s, the AFL and NFL merged. Taking into account that the Boston Patriots didn't have a regular home stadium which forced them to bounce from site to site, the team moved to Foxborough, a 30-minute drive from downtown Boston.  It is closer in travel time than MetLife Stadium is to New York City, yet they renamed the geographic portion of the team's name from Boston to New England **so as not to confuse fans**.  The same must happen in the present case.

**VII.    IF IT WASN'T MADE IN CHAMPAGNE, IT AIN'T CHAMPAGNE**

U.S. law prohibits the advertisement of "Made in the USA" for products that are not made in the United States.  Pursuant to the Federal Trade Commission, "Made in USA means that 'all or virtually all' the product has been made in America."  Also see California's "Made in USA" statute (§ 17533.7 of the California False Advertising Law), Unfair Competition Law ("UCL") (based on a "Made in USA " statutory violation).  Additionally, pursuant to Vermont law, Title 6: Agriculture, Chapter 32: Maple Products, Section 493a. Use of the term "Vermont maple" may only be used to described "maple products" which are "produced in Vermont."  Like the "Made in USA" statute, the Vermont Maple statute prohibits false designation of origin.  Another example is the alcoholic beverage "Champagne" which is made in Champagne, France.  There are a line of Champagne cases in Europe that address this issue in a similar manner.

13

Defendants' passing off the New Jersey Giants and Jets as the New York Giants and Jets is no different than a product made in China claiming to be made in the USA, or corn syrup being falsely labeled Vermont Maple Syrup, or for a sparkling wine to be called Champagne if not produced in Champagne.  In the same way that the USA, Vermont Maple, and Champagne are deemed high-end top-shelf brands, the same principle should apply to The New York Giants and The New York Jets use by New Jersey entities.  Since these teams do not play, practice, or maintain offices in the state of New York, they should not be considered New York teams and should not be able to pass themselves off as New York teams.  As stated in the Amended Complaint, New York is a local, regional, and international iconic name and brand independent of the State of New Jersey.

The history of the Meadowlands is also worth noting as it further distinguishes the MetLife Stadium location from New York City or State.  Modern marsh grasses have been part of the landscape in East Rutherford, Jersey (Meadowlands) for a few hundred years.  A 1969 state study found that the Meadowlands took in 5,000 tons of garbage per day, six days a week, 300 days of the year from 118 NJ municipalities and New York City, according to the NJSEA.  Illegal dumping went unmitigated for decades.  Universal Oil Products in East Rutherford was found to be laden with PCBs.  Between 1956 and 1971, seepage from the wastewater lagoons and routine handling of products and wastes resulted in the release of various hazardous substances to the upland soils and groundwater, tidal marshes and waterways.  Suffice it to say, not only isn't the Meadowlands in New York, it was the site of one of the country's biggest garbage dumps for decades before Defendants' stadiums were built on top of it.

14

Attached as **Exhibit "D"** are photographs taken of the Meadowlands, including waste. Attached as **Exhibit "E"** is the MetLife Stadium logo, which consists of the Manhattan skyline, including the Empire State Building and Chrysler Building. Attached as **Exhibit "F"** is an aerial photograph of Rutherford, New Jersey. As the court can see, this logo is a deceptive depiction of MetLife Stadium. Attached as **Exhibit "G"** is an aerial photograph of Madison Square Garden in Manhattan. Defendants' MetLife Stadium logo deceptively conjures images similar to Madison Square Garden ("The World's Most Famous Arena") to pass off their New Jersey stadium as a New York City stadium.

For all of these reasons, it is clear that misnaming of the Giants and Jets as "New York" teams is false advertising and that the MetLife Stadium logo is deceptive and must be modified. At the very least, these are questions of fact for a jury.

**VIII.   THE CLASS**

In *Walmart*, the putative class was potentially millions of members. However, Justice Scalia ruled that the class had to fail because there were no allegations as to a discriminatory uniform corporate policy pertaining to the company as a whole. For this reason, the potential claims might be too disparate to warrant a class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011). That is not the situation here. Here, there is a very specific claim against the league as a whole, not individual claims against individual branch managers.

In addition, Plaintiffs have not yet filed for class certification so Defendants' arguments regarding the prospective classes are premature and not yet ripe for the court to consider.

## IX.  STATUTE OF LIMITATIONS AND LACHES

Since the NFL was a non-profit organization until 2015, it was not pragmatic to sue in this case until 2016.  Since there is a six-year statute of limitations for fraudulent misrepresentation, filing in 2022 was timely.

Additionally, it should be noted the NFL Washington Redskins and MLB Cleveland Indians changed their names to the Washington Football team and Cleveland Guardians decades after their first use.  The mere fact that they have used an improper or confusing name for a long period of time should not be grounds for not changing it now.

## X.  NEGLIGENCE

Plaintiffs voluntarily withdraw this cause of action as Plaintiffs' counsel was unaware of the 2021 stadium exemption amendment to the original 2019 law.  As the court and Defendants can see below, the original statute did not have a stadium exemption, as there are only four exemptions.

Pursuant to 2019 New Jersey Revised Statutes, Title 56 - Trade Names, Trade-Marks and Unfair Trade Practices; Section 56:8-2.33 - Discrimination against cash-paying customers prohibited; violations, penalties; exceptions.  Universal Citation: NJ Rev Stat § 56:8-2.33 (2019); 56:8-2.33 Discrimination against cash-paying customers prohibited; violations, penalties; exceptions:

1. a. A person selling or offering for sale goods or services at retail shall not require a buyer to pay using credit or to prohibit cash as payment in order to purchase the goods or services. A person selling or offering for sale goods or services at retail shall accept legal tender when offered by the buyer as payment. (emphasis added)

16

b. A person in violation of subsection a. of this section shall be subject to a civil penalty of up to $2,500 for a first offense and up to $5,000 for a second offense, to be collected in a civil action by a summary proceeding under the "Penalty Enforcement Law of 1999," P.L.1999, c.274 (C.2A:58-10 et seq.). The Superior Court shall have jurisdiction of proceedings for the enforcement of the penalty provided by this section.

A third violation of subsection a. of this section is an unlawful practice under P.L.1960, c.39 (C.56:8-1 et seq.), and for the purposes of this subsection shall be considered a first offense under P.L.1960, c.39 (C.56:8-1 et seq.).

A fourth or subsequent violation of subsection a. of this section is an unlawful practice under P.L.1960, c.39 (C.56:8-1 et seq.), and for the purposes of this subsection shall be considered a subsequent offense under P.L.1960, c.39 (C.56:8-1 et seq.).

c. The provisions of this section shall not apply to:

(1) any person selling goods or services at an airport, provided that at least two persons selling food at each terminal within the airport accept cash as payment;

(2) any parking facility owned by a municipality, regardless of whether the facility is operated by the municipality, a parking authority, or an independent third party;

(3) any parking facility that accepts mobile payment, provided that the facility does not accept payment by any means other than mobile payment; and

(4) any company in the business of renting motor vehicles, provided that the company accepts a cashier's check or a certified check when offered by a buyer as payment.

d. As used in this section, "at retail" shall include any retail transaction conducted in person and exclude any telephone, mail, or Internet-based transaction.

      The fifth exemption that includes MetLife Stadium was added in 2021 without the knowledge of Plaintiffs' counsel. The negligence cause of action arising from this statute is voluntarily withdrawn.

## **CONCLUSION**

      Plaintiffs have made out a prima facie case for the first three causes of action. The Amended Complaint contains a detailed recitation of facts that fulfills the elements for all these

17

causes of action. There are numerous questions of fact that preclude dismissal at this juncture. Given Defendants' reaction to the filing of the Complaint and Amended Complaint, it is obvious that this case is not frivolous.

**WHEREFORE**, it is respectfully requested that Defendants' motion to dismiss be denied in its entirety and that such other and further relief be granted to Plaintiffs as to this Court may seem just and appropriate under the circumstances.

Dated:  New York, New York
        May 8, 2022

                                          Respectfully submitted,

                                          *s/Evan Spencer*
                                          Evan Spencer
                                          Evan Spencer Law, PLLC
                                          NY Bar# 2786812
                                          305 Broadway, 7th Floor
                                          New York, NY   10007
                                          Tel. 917.547.4665
                                          Evan@EvanSpencerLaw.com
                                          EvanSpencerLaw.com


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 8th day of May 2022, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties' counsel of record.

                                          *s/Evan Spencer*
                                          Evan Spencer