UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABDIELL SUERO, et al.,

         Plaintiffs,

    -against-

NFL, et al.,

         Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/22

22-CV-31 (AKH) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. ALVIN K.
HELLERSTEIN**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Abdiell Suero and Maggie Wilks, suing on behalf of themselves and others similarly situated, bring this action against the National Football League (NFL), New York Jets, LLC (Jets LLC), which owns and operates the New York Jets football team (the Jets), New York Football Giants, Inc. (Giants Inc.), which owns and operates the New York Giants football team (the Giants), and New Meadowlands Stadium Company, LLC (Stadium LLC), which owns and operates MetLife Stadium in East Rutherford, New Jersey, where the Giants and the Jets have played for decades. Alleging that the team names and related marketing constitute consumer fraud, plaintiffs demand that the Jets and the Giants remove all references to New York from their names, logos, and advertising, and pay damages to those they deceived. Additionally, plaintiffs demand that MetLife Stadium stop using a logo incorporating the New York City skyline and stop promoting itself as the "number one stadium in the world," because, they say, it is inferior to many "state-of-the-art NFL venues elsewhere," particularly those with domes or retractable roofs.

Now before me for report and recommendation is defendants' motion (Dkt. 32) to dismiss plaintiffs' Amended Class Action Complaint (Am. Compl.) (Dkt. 31), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the reasons that follow, I recommend, respectfully, that the case be dismissed pursuant to Rules

12(b)(1) and 12(h)(3), for failure to allege facts demonstrating subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6).

## I.   BACKGROUND

### A.   Facts Alleged by Plaintiffs

The Jets and the Giants are NFL teams whose names, logos, and advertising associate them with New York City. Am. Compl. ¶¶ 12, 16-18. Similarly, MetLife Stadium, where both teams play their home games, uses an image of the New York City skyline in its logo. *Id*. ¶¶ 10, 49, 116. However, the stadium is located in East Rutherford, New Jersey, *id*. ¶¶ 10, 29, 49, 116, which is also where Giants, Inc. and Stadium LLC have their headquarters. *Id.* ¶¶ 76, 78. Jets LLC is headquartered nearby in Florham Park, New Jersey. *Id*. ¶ 77.[1]

Plaintiffs are New York City residents. Am. Compl. ¶¶ 73-74. They acknowledge that the Giants have played in New Jersey since 1976, and the Jets since 1984. *Id*. ¶¶ 15, 105-06. Plaintiff Wilkins, however, alleges that she was unaware of this, *id*. ¶¶ 13, 15, and that she was deceived by defendants' names, logos, and marketing into believing not only that "the Giants and Jets play in the State of New York," but that MetLife Stadium "is located in New York City." *Id*. ¶¶ 49, 109, 123.[2] Plaintiff Suero does not make that claim, but both plaintiffs allege that they purchased tickets and attended at least one NFL game at MetLife Stadium in 2021, which they would not have done but for defendants' "false advertising." *Id*. ¶¶ 14, 51, 82, 118-19. This caused them to incur

---

[1] Plaintiffs do not provide the state of incorporation of Giants Inc. or any information about the members of Jets LLC and Stadium LLC. Nor do they provide any information concerning the citizenship of the NFL, describing it simply as "the National Football League of the United States." Am. Compl. ¶ 75. The significance of these omissions is addressed below in Part II(B) of this Report and Recommendation.

[2] The Court is required to accept plaintiffs' well-pleaded factual allegations as true for the purpose of defendants' Rule 12(b)(6) motion. *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 191 (2d Cir. 2007).

significant costs and inconvenience, *id.* ¶¶ 14, 53, 56, 60, 63, including $136 for Wilkins's ticket and "over one hour" of travel time to the game, measured "from the time Plaintiffs arrived at Penn Station [in New York City] until they arrived at MetLife Stadium." *Id.* ¶¶ 40, 53.[3]

Defendants' alleged misrepresentations and deceptions are collected by plaintiffs into what they call the "Ten Lies." Am. Compl. ¶ 10. The first nine Lies are:

(1)     that the NFL Giants are a New York team;

(2)     that the NFL Jets are a New York team;

(3)     that MetLife Stadium is the number one stadium in the world;

(4)     that MetLife Stadium sets the standard for venue excellence with state-of-the-art technology, comfort, and amenities;

(5)     that MetLife Stadium hosts the World's Biggest Events;

(6)     that MetLife Stadium has the World's Biggest Stage;

(7)     that MetLife Stadium has topped the industry charts annually since opening;

(8)     that MetLife Stadium is under 20 minutes from New York City; and

(9)     that MetLife Stadium is accessible to Penn Station.

*Id.* Lie No. 10 "is the MetLife Stadium logo, which consists of the words 'MetLife Stadium' beneath the New York Skyline including the Empire State and Chrysler Buildings, deceptively advertising and misrepresenting that MetLife Stadium is located in New York City." *Id.* Plaintiffs allege that these Lies are published throughout the stadium, during broadcasts of Giants and Jets games, on defendants' websites and social media pages, and on the teams' branded merchandise.

---

[3] The first 30 minutes of that hour were spent "find[ing] the platform and board[ing] a train at Penn Station." Am. Compl. ¶ 40. Elsewhere, plaintiffs allege that they attended a game at MetLife Stadium "where the transportation time of four hours exceeded the game itself," and their roundtrip transportation costs, apparently including tolls, parking, and/or a car service, "exceeded $200." *Id.* ¶¶ 60-63. It is not clear from these allegations whether plaintiffs attended a single game (traveling to the stadium by train and returning by car) or multiple games, taking the train on one occasion and driving on another.

*Id*. ¶ 11-12. Plaintiffs further allege that MetLife Stadium maintains a cash-free policy, which requires patrons to use credit cards for any purchases on the premises. *Id*. ¶ 145.

Plaintiff Wilkins seeks to represent a class consisting of those who, since 2016, were "deceived by Defendants' false advertising, deceptive practices, and fraudulent misrepresentation into attending an NFL game at MetLife Stadium that they would not have otherwise attended." Am. Compl. ¶ 82. Plaintiff Suero seeks to represent a class consisting of those who, since 2016, were "deceived by Defendants' false advertising, deceptive practices, and fraudulent misrepresentations, and those who were prohibited from purchasing retail goods at MetLife Stadium with cash since 2019." *Id*. ¶ 81.

The Amended Complaint asserts four causes of action: (1) false advertising in violation of New York General Business Law (GBL) § 350-a, *see* Am. Compl. ¶¶ 103-120; (2) deceptive practices in violation of GBL § 349, *see id.* ¶¶ 121-128; (3) common law fraudulent misrepresentation, *see id.* ¶¶ 129-138; and (4) negligence, premised on defendants' alleged violation of New Jersey Statutes Annotated (NJSA) § 56:8-2.33, "which prohibits a person selling goods or services at retail to require a buyer to use credit or to prohibit cash." *Id.* ¶¶ 139-150. Plaintiffs seek an order requiring defendants to remove references to "New York" from the team names and logos, eliminate the cash-free policy at MetLife Stadium, and "eliminate the Ten Lies" from their websites and other places; compensatory damages in the sum of $2 billion; punitive damages in the sum of $4 billion; and attorneys' fees and costs. *Id.* at 20.

### B.   Procedural History

Plaintiff Suero filed his initial Complaint on January 4, 2022 (Dkt. 3), asserting claims under GBL §§ 350-a and 349, as well as claims for "Civil RICO" and unjust enrichment. On March 21, 2022, defendants filed a motion to dismiss. (Dkt. 22.) On April 11, 2022, in lieu of opposition

papers, Suero – now joined by Wilkins – filed the Amended Complaint. The instant motion to dismiss, filed jointly by all defendants, followed on April 25, 2022.

### C.    The Parties' Positions

Defendants argue that plaintiffs fail to state any claim for false advertising or deceptive practices under the GBL because their alleged misrepresentations are neither misleading to a reasonable consumer nor material, and because plaintiffs suffered no cognizable injury, *see* Def. Mem. (Dkt. 33) at 8-18; that they fail to state a claim for fraudulent misrepresentation for the same reasons, and because they have not adequately pleaded scienter or justifiable reliance, *see id.* at 18-22; and that they cannot state any claim premised on NJSA § 56:8-2.33 because the statute does not provide for a private right of action and because it expressly exempts sports venues seating 10,000 or more, such as MetLife Stadium. *See id.* at 22-23; NJSA § 56:8-2.33(c)(5). Defendants further contend that plaintiffs' claims against the NFL must be dismissed because the NFL did not "engage[] in any of the alleged conduct of which Plaintiffs complain." Def. Mem. at 23.

In their opposition brief, plaintiffs withdraw their negligence claim premised on the cash-free policy at MetLife Stadium, explaining that their counsel was unaware of the applicable exemption. *See* Pl. Opp. Mem. (Dkt. 34) at 15-16. With regard to their GBL claims, plaintiffs rely on *Nat'l Football League Properties, Inc. v. New Jersey Giants, Inc.*, 637 F. Supp. 507, 509 (D.N.J. 1986) (hereafter *N.J. Giants*), for the proposition that "the unwillingness of the [Giants football team] to correlate its name with the place it calls home" has engendered "confusion." Pl. Opp. Mem. at 4-5. Plaintiffs then recapitulate the allegations made in their complaint, discuss stadium locations throughout the NFL, and argue that while other teams play outside of the "cities for which they are named," the Jets and the Giants are "the only teams to play in an entirely different state."

*Id*. at 11.[4] In the remainder of their brief, plaintiffs cite approvingly to an assortment of laws that restrict product labels (such as the Vermont statute circumscribing the use of "Vermont maple"), *id*. at 12; compare the Jets and the Giants to "corn syrup being falsely labeled Vermont Maple Syrup," *id*. at 13; inform the Court that MetLife Stadium sits on "the site of one of the country's biggest garbage dumps," *id*.; and protest that "defendants' arguments regarding the prospective class are premature[.]" *Id*. at 14.[5]

In their reply brief, defendants note that plaintiffs failed to respond in any meaningful way to their legal arguments, *see* Def. Reply Mem. (Dkt. 36) at 3-12, which they largely reiterate.

## II. ANALYSIS

### A. Legal Standards

#### 1. Rules 8(a)(2), 12(b)(6), and 9(b)

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [his] claims across the line from

---

[4] The parties agree that the Washington Commanders play in Landover, Maryland. *See* Am. Compl. ¶ 26; Def. Mem. at 5 n.5. In plaintiffs' view, however, the Commanders do not play in a "different state" because "D.C. is not a state, and Maryland and Virginia are both stand-in states for our nation's capital." Pl. Opp. Mem. at 11. The Court suspects that the residents of the District of Columbia, Maryland, and Virginia would disagree with that characterization.

[5] There are no such arguments in defendants' moving brief.

conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When faced with a Rule 12(b)(6) motion, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy*, 482 F.3d at 191. However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). The courts will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Thus, while Rule 8(a) "does not require 'detailed factual allegations,'" it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. New York Med. Coll.,* 663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009).

Rule 9(b), which applies to plaintiffs' fraud claim, sets a higher pleading standard. A fraud plaintiff must "state with particularity the circumstances constituting" the alleged fraud. Fed. R. Civ. P. 9(b); *see also Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (Rule 9(b) "governs the pleading of fraud claims and it requires that plaintiff plead fraud with particularity."). Rule 9(b) "ordinarily requires a complaint alleging fraud to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quoting *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)). "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged

fraud." *United States ex rel. Polansky v. Pfizer, Inc*, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Failure to satisfy the Rule 9(b) standard, if applicable, is grounds for dismissal." *McBeth v. Porges*, 171 F. Supp. 3d 216, 223 (S.D.N.Y. 2016) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) and *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)).

### 2.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If the district court "lacks the statutory or constitutional power to adjudicate" a case, the case must be dismissed for lack of subject matter jurisdiction. *Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Because subject matter jurisdiction goes to "a court's power to hear a case," the issue "can never be forfeited or waived," *United States v. Cotton*, 535 U.S. 625, 630 (2002), and "federal courts have a duty to inquire into their subject matter jurisdiction *sua sponte*" even if the parties do not raise it. *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 324 n.3 (2d Cir. 2017) (quoting *F5 Capital v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017)); *see also Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking," even if "no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

At the pleading stage, it is the plaintiff's obligation to "include in its complaint adequate allegations to show that the district court has subject matter jurisdiction." *Durant, Nichols*, 565 F.3d at 64; *see also* Fed. R. Civ. P. 8(a)(1) (a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction"). If the plaintiff fails adequately to allege the necessary jurisdictional facts, the complaint must be dismissed or – if the defect is curable – amended. *Durant, Nichols*, 565 F.3d at 64.

In this case, plaintiffs invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) or, alternatively, pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). Am. Compl. ¶ 71. Section 1332(a)(1) requires that the matter in controversy exceed the sum or value of $75,000 and that the parties be completely diverse. *See Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998) ("[D]iversity of citizenship among the parties is complete . . . only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, a natural person is a citizen of the state where he is domiciled; that is, where "he has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention to return." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).[6] A corporation is a citizen of the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The citizenship of a limited liability company (LLC) "is determined by reference to the citizenship of its members." *Catskill Litig. Trust v. Park Place Entm't Corp.*, 169 F. App'x 658, 659 (2d Cir. 2006). The same is true for other unincorporated associations, including unincorporated professional sports leagues. *See*, *e.g.*, *Nix v. Off. of Comm'r of Baseball*, 2017 WL

---

[6] "[R]esidence alone is insufficient to establish domicile for jurisdictional purposes." *Van Buskirk*, 935 F.3d at 54.

2889503, at *5 n.4 (S.D.N.Y. July 6, 2017) ("[B]ecause Major League Baseball is an unincorporated association whose members consist of thirty teams," it is a citizen of each state in which one or more of its member teams is a citizen).

CAFA permits a class action asserting state law claims to proceed in federal court, even in the absence of complete diversity, if "(1) the proposed class contains at least 100 members (the 'numerosity' requirement); (2) minimal diversity exists between the parties, (i.e., where 'any member of a class of plaintiffs is a citizen of a State different from any defendant'); and (3) the aggregate amount in controversy exceeds $5,000,000." *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 213 (2d Cir. 2013); *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006); 28 U.S.C. §§ 1332(d)(2), (d)(5)(B), (d)(6). Where jurisdiction is premised on CAFA, the citizenship of natural persons and corporations is determined the same way as in non-CAFA diversity cases, but "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

"Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it." *Blockbuster*, 472 F.3d at 59. Thus, plaintiffs must "show that it appears to a 'reasonable probability'" that there are at least 100 class members, that there is minimal diversity, and "that the aggregate claims of the plaintiff class are in excess of $5 million." *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 354 (S.D.N.Y. 2019) (quoting *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 141 (2d Cir. 2014)). If the plaintiff cannot do so, the case must be dismissed for lack of subject matter jurisdiction. *See*, *e.g.*, *Kim v. Trulia, LLC*, 2021 WL 8743946, at *2-5 (E.D.N.Y. Mar. 31, 2021) (dismissing for lack of subject matter jurisdiction, *sua*

*sponte*, where the complaint "failed to show to a reasonable probability that CAFA's damages threshold is satisfied").[7]

### B.     The Amended Complaint Fails to Allege Facts Sufficient to Establish Subject Matter Jurisdiction

#### 1.     Section 1332(a)(1)

As noted above, plaintiffs fail to provide the state of incorporation of Giants Inc.; fail to identify the members of (and hence the citizenship of) Stadium LLC or Jets LLC; and fail to provide any clue as to the citizenship of the NFL. *See* Am. Compl. ¶ 71. They have thus failed to plead the facts necessary to invoke diversity jurisdiction under 28 U.S.C § 1332(a)(1). *See DeVito Verdi, Inc. v. Legal Sea Foods, Inc.*, 2021 WL 1600088, at *1-2 (S.D.N.Y. Apr. 23, 2021) ("Where a complaint does not plead the citizenship of an LLC party's members, it fails to plead diversity jurisdiction."); *Jenkins v. Virgin Atl. Airways, Ltd.*, 46 F. Supp. 2d 271, 273-74 (S.D.N.Y. 1999) (plaintiff's "failure to allege Virgin Atlantic's place of incorporation and its principal place of

---

[7] Even where the three prerequisites for CAFA jurisdiction are met, the Court may or must decline to exercise jurisdiction if one of the exceptions enumerated in the statute is met. *Jackson v. Madison Sec. Grp., Inc.*, 2022 WL 4538290, at *2 (S.D.N.Y. Sept. 28, 2022). For example, under the "'home state exception,' a district court must decline to exercise jurisdiction over a class action in which two-thirds or more of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed." *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 249-50 (S.D.N.Y. 2013) (citing 28 U.S.C. § 1332(d)(4)(B)); *see also Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 77 (S.D.N.Y. 2006). The exceptions are "not jurisdictional," *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013), and it is "the party seeking to avail itself of an exception to CAFA jurisdiction" who "bears the burden of proving the exception applies." *Mattera*, 239 F.R.D. 70, 79 (S.D.N.Y. 2006). The court, however, need not wait for a defendant to raise the issue; it may "raise sua sponte an exception to CAFA jurisdiction." *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1224 (9th Cir. 2020) (affirming decision of district court to dismiss based on home state exception, which the court raised "on its own"); *see also*, *e.g.*, *Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 188, 190 (E.D.N.Y. 2009) (declining jurisdiction based on the "discretionary exception," 28 U.S.C. § 1332(d)(3), even though defendants, "perhaps themselves preferring to remain in federal court . . . have not sought to invoke any of CAFA's exceptions").

business in her complaint is fatal to her allegation that the Court may exercise diversity jurisdiction").

Moreover, assuming that New York is plaintiffs' domicile (rather than merely their residence), and thus that they are New York citizens, they cannot cure their defective jurisdictional pleading through amendment, because at least two of the four defendants are also New York citizens. According to the New York State Division of Corporations, Giants Inc. is a domestic New York corporation, making it a citizen of New York pursuant to 28 U.S.C. § 1332(c)(1).[8] According to multiple judicial opinions – as well as a recent court filing by the NFL itself – the NFL is an unincorporated association, made up of the 32 football teams within its franchise, with its principal place of business in New York City. *See*, *e.g.*, *Dent v. Nat'l Football League*, 968 F.3d 1126, 1129 (9th Cir. 2020); *Gill v. Nat'l Football League*, 2021 WL 5087900, at *3 (S.D.N.Y. Nov. 2, 2021); *Johnson v. Nat'l Football League Players Ass'n*, 2017 WL 2882119, at *2 (N.D. Ohio July 6, 2017); *see also* NFL Defendants' Brief, ECF No. 6, *Badeax v. Goodell*, No. 19-CV-566 (E.D. La. Jan. 27, 2019) at 8 (explaining that the NFL "is an unincorporated association comprised of 32 separately owned and independently operated NFL Member Clubs, with its principal place of business in New York City[.]"). Since one of the NFL's Member Clubs is the New York Giants, owned and operated by a citizen of New York, the NFL is also citizen of New York for purposes of § 1332(a)(1). *See Nix*, 2017 WL 2889503, at *5 n.4 (concluding that MLB is a citizen of Texas, because the Houston Astros and the Texas Rangers are citizens of Texas, and that MLB is also a

---

[8] *See* New York State Department of State, Division of Corporations, "Entity Information," https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Dec. 16, 2022). The Court "may take judicial notice of the public Entity Information provided by the New York State Department of State, Division of Corporations Corporate and Business Entity Database." *Fair Hous. Just. Ctr. Inc. v. Lighthouse Living LLC*, 2021 WL 4267695, at *4 (S.D.N.Y. Sept. 20, 2021) (quoting *Haru Holding Corp. v. Haru Hana Sushi, Inc.*, 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016)) (cleaned up).

citizen of Florida, because the Miami Marlins and Tampa Bay Rays are citizens of Florida); *Rose v. Giamatti*, 721 F. Supp. 906, 913 (S.D. Ohio 1989) (concluding that MLB was a citizen of Ohio because the Cincinnati Reds Baseball Club was a citizen of Ohio).

Because the parties are not completely diverse, this Court cannot exercise subject matter jurisdiction over their dispute pursuant to § 1332(a)(1).

### 2.    CAFA

In order to invoke this Court's jurisdiction under CAFA, plaintiffs must plead facts showing that "it appears to a 'reasonable probability'" that there are at least 100 class members, that there is minimal diversity, and "that the aggregate claims of the plaintiff class are in excess of $5 million." *Shulman*, 392 F. Supp. 3d 340, 354 (S.D.N.Y. 2019). The Amended Complaint fails to do so.

First, plaintiffs have failed to establish even minimal diversity, because they do not allege facts sufficient to determine the citizenship of all defendants. *See*, *e.g.*, *Cross v. Point & Pay, LLC*, 2016 WL 11734215, at *1 (M.D. Fla. Aug. 3, 2016) (ordering plaintiff to show cause why his complaint should not be dismissed where he invoked CAFA jurisdiction but failed to allege the corporate defendant's principal place of business or other facts necessary to determine defendants' citizenship); *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 904 (N.D. Ill. 2014) (dismissing, with leave to amend, where plaintiff invoked CAFA jurisdiction but "the complaint does not properly plead the citizenship of either defendant," making it impossible to determine whether minimal diversity existed).[9]

---

[9] For purposes of CAFA, all of the defendants are citizens of the states where they were incorporated (or formed) *and* the states where they maintain their principal places of business. 28 U.S.C. §§ 1332(c)(1), 1332(d)(10). Thus, Giants Inc. is a citizen of New York (where it is incorporated) and New Jersey (where is it headquartered), while Jets LLC and Stadium LLC are citizens of New Jersey (where they are headquartered) and the unidentified state or states where they were formed. The NFL, as noted above, is a citizen of New York, where it is headquartered. If it was formed under the laws of a different state, it may also hold CAFA citizenship there.

Nor, for that matter, have they provided any information about the makeup of the putative classes they hope to certify, except that – by definition – they comprise persons who, as a result of defendant's alleged deceptions, personally attended one or more NFL games at MetLife Stadium since 2016, Am. Compl. ¶¶ 81-82, thereby incurring the cost of tickets, concessions, and transportation costs "to and from the MetLife Stadium from New York City." *Id*. ¶ 135. Common sense suggests that both classes (if certifiable) would prove to be small in size[10] and composed largely of New Yorkers.[11] For this reason as well, plaintiffs have failed to plead minimal diversity. *See Franck v. New York Health Care, Inc.*, 2022 WL 4363855, at *15 (S.D.N.Y. Sept. 21, 2022) (state-law wage and hour claims should be dismissed for lack of subject matter jurisdiction where complaint failed to allege the existence of any class members outside of New York).

Similarly, plaintiffs have failed to plead that their remaining claims exceed the value of $5 million. They allege in general terms that the dispute "involves monetary damages in excess of $5,000,000," Am. Compl. ¶ 71, and seek "$2 billion in compensatory damages" in connection with their fraudulent misrepresentation claim, *id*. ¶ 138, but plead no facts that would support either figure. While there is a "a rebuttable presumption that the face of the complaint is a good faith

---

[10] The Amended Complaint refers casually to the "millions of class members" who have "suffered damages by being subjected to expensive, time-consuming, and stressful transportation from New York to East Rutherford, New Jersey." Am. Compl. ¶ 56. But the putative classes are defined to include only those who were "deceived" into undertaking that journey by defendants' allegedly false advertising, *id*. ¶¶ 81, 82 – not those who willingly (or even grudgingly) made the trip with full knowledge that they were going to New Jersey. Since both teams have played in the same location for decades, common sense suggests the number of football fans who bought game tickets and/or train tickets under the false belief that they were going to a stadium "in New York City," *id*. ¶ 49, is considerably smaller.

[11] No doubt there are Jets and Giants fans outside of New York State. *See N.J. Giants*, 637 F. Supp. at 510 ("[T]he Giants' fans are concentrated in the New York Metropolitan area which includes portions of New York, New Jersey, and Connecticut."). But it is difficult to imagine that large numbers of non-New Yorkers incurred "expensive, time-consuming, and stressful transportation *from New York*," Am. Compl. ¶ 56 (emphasis added), to get to a game at MetLife Stadium.

representation of the actual amount in controversy," *Tapinekis v. Pace Univ.*, 2022 WL 1084750, at *1 (S.D.N.Y. Apr. 11, 2022) (quoting *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)), "the jurisdictional amount [ ] ought not to receive the presumption of truth unless it is supported by facts rendering it plausible." *Kim*, 2021 WL 8743946, at *3 (quoting *Weir v. Cenlar FSB*, 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018)); *see also Halperin*, 70 F. Supp. 3d at 904 (N.D. Ill. 2014) ("Halperin makes only a conclusory allegation that the amount in controversy exceeds $5,000,000, and fails to explain why this is so; this defect, too, defeats CAFA jurisdiction.") (internal record citations omitted).

Moreover, plaintiffs have withdrawn their claims under NJSA § 56:8-2.33, meaning that they may no longer rely on credit card surcharges, interest, or other damages related to the stadium's "cash free" policy to meet the jurisdictional threshold. This requires, at a minimum, a reassessment of whether the jurisdictional amount can be met under the remaining claims. *See Tapinekis*, 2022 WL 1084750, at *2-3 (dismissing case for lack of subject-matter jurisdiction where, after dismissal of all claims save for one, plaintiff and the putative class could no longer meet the jurisdictional minimum of $5 million).

### 3.   The Amended Complaint Should Be Dismissed on Jurisdictional Grounds.

As noted above, dismissal is mandatory where subject-matter jurisdiction is lacking. *Durant*, *Nichols*, 565 F.3d at 62; Fed. R. Civ. P. 12(h)(3). Such a dismissal is necessarily without prejudice. *See, e.g.*, *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999). Because plaintiffs have failed to plead the facts necessary to invoke this Court's diversity jurisdiction, I recommend, respectfully, that this action be dismissed without prejudice pursuant to Rule 12(b)(1) and 12(h)(3).

### C.   The Amended Complaint Fails to State Any Claim Upon Which Relief Can Be Granted

In the alternative, if Your Honor believes that plaintiffs have adequately alleged subject matter jurisdiction, I recommend, respectfully, that this action be dismissed pursuant to Rule 12(b)(6).

### 1.   Plaintiffs Fail to Allege Any Wrongdoing by the NFL

Nowhere in the Amended Complaint do plaintiffs allege facts suggesting that the NFL engaged in any wrongdoing. Plaintiffs do not allege (for example) that the NFL prepared or published any of the "Ten Lies." Instead, after asserting that the NFL, its Commissioner, and its franchises earn large sums of money, and alleging generally that all 32 teams operate "with the permission and consent of the NFL," Am. Compl. ¶¶ 3-7, plaintiffs conclude that all defendants are "jointly and severally liable" for all ten Lies "because the Giants and Jets play at MetLife Stadium pursuant to the authority of the NFL and all four parties jointly share in the revenue generated from NFL games at MetLife Stadium." *Id*. ¶ 80. Additionally, plaintiff allege that the NFL engaged in false advertising by "retaining" the name "New York" for these two teams after they moved their home games to New Jersey. *Id*. ¶¶ 105-06.

These are precisely the type of "naked assertions," "devoid of further factual enhancement," that will not "unlock the doors of discovery" for the plaintiffs who make them. *Iqbal*, 556 U.S. at 678-79. Moreover, after defendants argued in their moving brief that plaintiffs failed to state any claim against the NFL, *see* Def. Mem. at 23, plaintiffs – who are counseled – failed to address the point in their opposition brief, thereby abandoning their claims against the NFL. *See Martinez v. City of New York*, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (quoting *Lipton v. Cnty of Orange, N.Y.*, 315 F. Supp. 2d 434, 446

(S.D.N.Y. 2004)); *see also Harriot v. JP Morgan Chase Bank NA*, 2016 WL 6561407, at *5 (S.D.N.Y. Oct. 21, 2016) ("Plaintiffs do not address Defendants' arguments with regard to failure to plead a federal question, so such opposition is deemed abandoned.").

Because plaintiffs allege no facts that would support their claims against the NFL, and because they abandoned those claims in their opposition brief, all of their claims against the NFL should be dismissed.

### 2.    Plaintiffs Fail to State a Claim Under the GBL

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." As relevant here, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." GBL § 350-a(1). A plaintiff suing under either § 349 or § 350 must plead facts showing that: "(1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Ese A. O'Diah v. TBTA-Triborough Bridge & Tunnel Auth*., 2021 WL 2581446, at *9 (S.D.N.Y. June 23, 2021) (quoting *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391 (1st Dep't 2010)). Here, while plaintiffs have adequately pleaded "consumer-oriented" conduct, they have not alleged facts sufficient to satisfy the second or the third element.

To plausibly plead that defendants' acts or practices were "deceptive or materially misleading," plaintiffs must do more than allege that the statements in question were "confusing," *see* Am. Compl. ¶ 22, 38, 55, 126,[12] or "might conceivably be misunderstood by some few

---

[12] Plaintiffs' reliance on *N.J. Giants* for their claim that the team names and logos are "confusing," *see* Am. Compl. ¶ 22; Pl. Opp. Mem. at 5, is misplaced. *N.J. Giants* was a successful trademark

consumers." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (quoting *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). Rather, they must "adequately allege that the deceptive act or practice was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Russett v. Kellogg Sales Co.*, 2022 WL 2789837, at *3 (S.D.N.Y. July 15, 2022) (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018)); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 745 (1995). Thus, for example, in order to state a claim under the GBL for Lie No. 10 (the MetLife Stadium logo itself, which allegedly conveys the deceptive message that the stadium is "located in New York City"), it is not sufficient for plaintiff Wilkins to allege that she herself believed that, *see* Am. Compl. ¶ 49; rather, she must plausibly allege that "a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances," could be similarly misled. *Twohig*, 519 F. Supp. 3d at 160 (quoting *Sarr*, 2020 WL 729883, at *3); *accord Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 155 (S.D.N.Y. 2022).

---

case brought *by* Giants Inc. (together with the marketing arm of the NFL) against a company that called itself New Jersey Giants, Inc., and sold "unlicensed apparel bearing the mark 'New Jersey GIANTS'" in direct competition with plaintiffs' sales of "licensed NFL merchandise bearing the New York Football Giants' marks." 637 F. Supp. at 512. Although the court remarked, in *dicta*, on the "anomaly of a team bearing the name of one state while playing in another," *id*. at 509, it went on to find that the Giants' marks, including NEW YORK GIANTS, were "valid," "nationally recognized," "extremely strong," and had "achieved secondary meaning as identifiers of the NFL and its Member Clubs," *id*. at 511, 515, 517, and that it was defendants' infringing merchandise that was "likely to confuse consumers" into believing it was sponsored and approved by the Giants. *Id*. at 512. The court also found that defendants' goods were "likely to confuse the public into believing that the New York Football Giants has changed the team's name to the New Jersey Giants or does not object to being referred to by that name. Neither is true, of course, and *while one may wonder why the New York Giants resist a new name and may wish, perhaps, that it were otherwise, the fact remains that the Giants have the right to retain the long-standing goodwill and reputation they have developed in the name 'New York Giants'* and efforts in that regard will be undermined were defendant's conduct permitted to continue." *Id*. at 513 (emphasis added).

Since the test is an "objective one," *Rivera v. S.C. Johnson & Son, Inc.*, 2021 WL 4392300, at *3 (S.D.N.Y. Sept. 24, 2021), it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Russett*, 2022 WL 2789837, at *4. In making that determination, the court looks at the advertisement "as a whole," including "disclaimers and qualifying language." *Mantikas*, 910 F.3d at 636 (citation omitted); *see also Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189 (E.D.N.Y. 2018) ("The entire mosaic is viewed rather than each tile separately.") (quoting *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015)).

The court must also consider context, which can be "crucial." *Chen*, 954 F.3d at 500 (finding that, in context, a reasonable consumer who purchased her Dunkin Donuts "Angus Sandwich for less than $4 and her Angus Wrap for less than $2" would not be misled into thinking that she was purchasing "an intact piece of meat" as opposed to ground beef with additives); *see also Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (calling a low-calorie soft drink "Diet Coke" was not misleading to a reasonable consumer because, "in the context of soft drink marketing," the term "diet" means low-calorie and "does not convey a more general weight loss promise"); *Yu*, 592 F. Supp. 3d at 157-61 (S.D.N.Y. 2022) (the phrase "rich milk chocolate" to describe the coating of an ice cream bar was not misleading because "no reasonable consumer" would understand that phrase "to mean that the coating contained only chocolate," particularly when the ingredient list "accurately indicates" that the coating contains coconut and vegetable oil as well as chocolate); *Twohig*, 519 F. Supp. 3d at 161 ("A reasonable consumer would understand that 'vanilla' is merely a flavor designator, not an ingredient claim").

Here, plaintiffs challenge two types of allegedly deceptive practices: (1) the retention of the geographic signifier "New York" by the Jets and the Giants, together with the use of a "New York City skyline logo" by MetLife Stadium (Lies No. 1, 2, and 10), which according to plaintiffs would lead "any reasonable person" to believe that the teams played in New York City, Am. Compl. ¶ 49; and (2) a series of statements on the MetLife Stadium website (Lies No. 3-9) concerning the stadium's virtues, including ease of access from Penn Station, which are allegedly false or overblown. *Id*. ¶¶ 10, 39-48. Viewing each set of statements as a whole – and in context, as required – I cannot conclude that any of them, singly or in combination, is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214*, 85 N.Y.2d at 26, 647 N.E.2d at 745.

### a.      Lies No. 1, 2, and 10

The New York Giants were founded under that name in 1925 and have never changed it. *N.J. Giants*, 637 F. Supp. at 511. As plaintiffs explain, the team "retained" its name when it moved its home games "across the river" to New Jersey in 1976, "[t]o maintain continuity of tradition," *N.J. Giants*, 637 F. Supp. at 510, and the Jets followed suit in 1984. Am. Compl. ¶¶ 105-06. Their stadium is "less than seven miles from midtown Manhattan," *N.J. Giants*, 637 F. Supp. at 510, and well within "the New York metropolitan area," where the teams' fans are concentrated, which "includes portions of New York, New Jersey, and Connecticut." *Id*.

As plaintiffs concede, there is nothing remarkable about these facts. It is common for a professional sports team to name itself after the city it calls its home while playing in the suburbs of that city (or, in some cases, even further away). The Giants played at the Yale Bowl in New Haven, Connecticut, for two years in the 1970s – as the New York Giants. *N.J. Giants*, 637 F. Supp. at 510. The Washington Redskins (as they were then known) retained their name in 1997,

when they crossed a state line to move from RFK Stadium in the District of Columbia to FedEx Field in Landover, Maryland.[13] The San Francisco 49ers retained their name in 2014, when they moved from Candlestick Park in San Francisco to Levi's Stadium in Santa Clara – some 40 miles outside of San Francisco city limits.[14] As these and similar examples demonstrate,[15] there is nothing misleading – in the context of professional football – about the long-standing names and logos of the Giants and the Jets. Put another way, no reasonable football fan, "acting reasonably under the circumstances," would conclude from the names and logos of the Jets and the Giants that their stadium is within the five boroughs of New York City.

Nor does anything else in the Amended Complaint plausibly suggest that a reasonable consumer would be misled into so believing. To the contrary: the MetLife Stadium website, as it existed before this action was filed, informed viewers that there was a "NJ Transit rail station" located in front of the stadium, and included what appears to be a clickable map link showing the stadium just off the New Jersey Turnpike. *See* Index in Supp. of Brief in Opp. (Index) (Dkt. 35), Ex. B (screenshot of portions of the website "before lawsuit was filed").[16] A reasonable consumer

---

[13] In 2020, the team retired the name "Redskins" but kept the name "Washington," playing as the Washington Football Team for two years before rebranding as the Washington Commanders in early 2022. *See* K. Belson, "With Commanders, the Washington N.F.L. Franchise Moves Past Old Name," *New York Times*, Feb. 2, 2022 (noting that the team will also keep its "'W' for Washington" logo).

[14] *See* C.M. Vega, "49ers Insist They'll Keep 'San Francisco,'" *San Francisco Chronicle*, Nov. 14, 2006 ("'We absolutely remain committed to the San Francisco 49ers name. We will not change our name,' team spokeswoman Lisa Lang said Monday. 'It's the San Francisco Bay Area. We've been the San Francisco 49ers for 60 years, and if you look at other examples it's very common now for teams to be outside of their namesake.'").

[15] As plaintiffs acknowledge, the Dallas Cowboys play in AT&T Stadium in Arlington, Texas, while both Los Angeles teams – the Rams and the Chargers – play in Sofi Stadium in Inglewood, California. *See* Pl. Opp. Mem. at 11.

[16] The Index, submitted by plaintiffs with their opposition papers, also includes a screenshot of portions of the stadium website "after lawsuit was filed," a photograph of the "Meadowlands dump site," aerial photographs of East Rutherford and Madison Square Garden, and what counsel

(even if she did not click through to Google Maps) would understand that New Jersey Transit goes to New Jersey, and that the New Jersey Turnpike is in New Jersey. Thus, Lies No. 1, 2, and 10 could not have misled a reasonable consumer as to the location of the Jets and Giants home games. *See Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("StubHub's failure to print the face value" on Yankees tickets resold in the secondary market could not have deceived a reasonable consumer into believing that she was purchasing a ticket without a markup, because "[t]he face value of tickets in each section of Yankee Stadium is public[ly] available on the Yankees website, and, as Plaintiff knew the section and row of the tickets for sale on StubHub, she could have compared the StubHub price to the face value with no difficulty.").

Nor can plaintiffs plausibly allege that they were "injured by reason of" the team names and logos, or the stadium logo. *Ese A. O'Diah*, 2021 WL 2581446, at *9. As the New York Court of Appeals explained in *Stutman v. Chem. Bank*, a plaintiff suing under the GBL need not demonstrate reliance, but must still "show that the defendant's 'material deceptive act' caused the injury." 95 N.Y.2d 24, 29, 731 N.E.2d 608, 612 (2000). In this case, the injuries of which plaintiffs complain, and for which they seek damages under the GBL, all stem from their physical attendance at an NFL game at MetLife Stadium. *See* Am. Compl. ¶ 118 ("As a result of Defendants false advertising, Plaintiffs purchased tickets and attended an NFL game at MetLife Stadium in 2021"); *id*. ¶ 127 ("If not for [defendants'] deceptive practices, Plaintiffs would not have purchased tickets

---

represents to be the MetLife Stadium logo (which, oddly, does not appear on any of the website screenshots). Because the Amended Complaint relies on and quotes extensively from the pre-lawsuit stadium website, the Court can consider Exhibit B to the Index in connection with the pending motion. *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002) (court may consider documents "attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" without converting a Rule 12(b)(6) motion into one for summary judgment).

and attended an NFL game at MetLife Stadium.").[17] A reasonable consumer would necessarily realize – *before* stepping on the train at Penn Station or driving through the Lincoln Tunnel – that he was, in fact, heading to New Jersey. Therefore, Lies 1, 2, and 10 could not have "caused" plaintiffs to attend a football game at MetLife Stadium.

### b.     Lies No. 3-9

Plaintiffs' GBL claims premised on Lies No. 3-9 fare no better. All of these statements appeared on the stadium website, *see* Index Ex. B, and most of them (for example, Lie No. 3, that MetLife Stadium is "the number one stadium in the world," and No. 4, that it "sets the standard for venue excellence") are classic "puffery," that is, a "general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (quoting *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir. 1995)). The same is true of the claims (designated by plaintiffs as Lies No. 5, 6, and 7) that MetLife Stadium "hosts the World's Biggest Events," "has the World's Biggest Stage," and "has topped the industry charts annually since opening." Am. Compl. ¶ 10.

Puffery is "not actionable under sections 349 and 350." *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 309 F.Supp.2d 401, 405 (E.D.N.Y. 2004); *see, e.g., George v. Starbucks Corp*., 857 F. App'x 705, 706 (2d Cir. 2021) (affirming dismissal of GBL claims against coffee chain because "[s]tatements such as 'Best coffee for the Best You,' 'Taste of Inspiration,' 'Starbucks or nothing,' and 'heart, soul, craft, pride, love[;] you won't find that in any other cup of coffee' . . . .are

---

[17] Similarly, the proposed classes are defined as "attendees of NFL games at MetLife Stadium," Am. Compl. ¶¶ 81, 82, "who were deceived by Defendants' false advertising, deceptive practices, and fraudulent misrepresentation into attending an NFL game at MetLife Stadium that they would not have otherwise attended.").

all puffery"); *Lin v. Canada Goose US, Inc.*, 2022 WL 16926312, at *5 (S.D.N.Y. Nov. 14, 2022)

(dismissing GBL claims because "[d]efendant's statements describing Canadian Hutterite down as

'among the highest quality Canadian down available' amount to nonactionable puffery").

Moreover, none of plaintiff's complaints about MetLife Stadium – centered on its lack of a dome

or retractable roof – render any of the statements described above factually false.[18] Plaintiffs are

of course entitled to their opinion that Sofi Stadium is "exponentially better," Am. Compl. ¶ 44,

but cannot pursue a consumer fraud lawsuit on the strength of that conviction.

Only two of the Ten Lies convey factual information capable of being proven true or false:

No. 8 (that MetLife Stadium is "under 20 minutes from New York City") and No. 9 (that it is

"accessible to Penn Station"). Am. Compl. ¶ 10. But the website did not promise a commute of

"under 20 minutes"; it estimated travel time of "approximately 20 minutes" from Penn Station.

Index Ex. B, at ECF p. 3. Plaintiffs themselves made that trip in 30 minutes on a game day (after

first spending 30 minutes looking for the right platform at Penn Station). Am. Compl. ¶ 40. Neither

the extra ten minutes nor the need to change trains in Secaucus would mean, to a reasonable

consumer, that the stadium is not "accessible" from Penn Station, and neither, in any event, is

"materially misleading," particularly given that route information, including actual travel time, is

"publicly available," *Weinstein*, 819 F. Supp. 2d at 228, from New Jersey Transit.

Plaintiff's GBL claims based on Lies No. 3-9 "independently fail[]," because the Amended

Complaint does not allege "that Plaintiff[s] suffered injury 'as a result of the allegedly deceptive

---

[18] According to plaintiffs, fans who attended the 2014 Superbowl at MetLife Stadium "had to cope with temperatures in the 40's for four hours rather than a heated arena which would have been more like 72 degrees." *Id*. ¶ 42. Newer NFL venues, such as Sofi Stadium (near Los Angeles), Allegiant Stadium (near Las Vegas), and Mercedes-Benz Stadium (in Atlanta), all have domes or retractable roofs. Am. Compl. ¶ 43. Plaintiffs particularly admire Sofi Stadium, which, they allege, is "exponentially better" than MetLife Stadium. *Id*. ¶ 44.

act or practice.'" *Lin*, 2022 WL 16926312, at *5 (citation omitted). In a case like this, where the plaintiffs say they took a specific action – going to an NFL game at MetLife Stadium – due to defendants' deceptive representations, their claims fail absent "allegations that Plaintiff[s] actually saw the representations at issue." *Id.* at *6; *see also In re USAA Data Sec. Litig.*, 2022 WL 3348527, at *10 (S.D.N.Y. Aug. 12, 2022) ("Although justifiable reliance on the alleged misrepresentation or omission is not a requisite element for a claim under Section 349, a plaintiff must plausibly allege he or she was exposed to the deceptive conduct in the first instance."); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (dismissing GBL § 349 claim where "[p]laintiffs allege that they checked Defendant's website, but . . . d[id] not allege that they viewed [the challenged representation] prior to purchasing [the product]"). Plaintiffs here do not allege that they ever saw the MetLife Stadium website, much less that they were exposed to the statements that they now challenge under GBL §§ 349 and 350. For this reason as well, their consumer fraud claims should be dismissed.

### 3.    Plaintiffs Fail to State a Fraudulent Misrepresentation Claim

Under New York law,[19] "a claim for fraudulent misrepresentation contains four elements: 1) a material false representation; 2) intent to defraud; 3) reasonable reliance upon the

---

[19] The parties assume, without discussion, that New York law applies to plaintiffs' fraudulent misrepresentation claim. *See* Def. Mem. at 18-22; Pl. Opp. Mem. at 10. I agree. "Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules[.]" *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). However, "[u]nder New York choice-of-law rules, the first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the rules of the relevant jurisdictions." *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (citation omitted). If not, "no choice of law analysis need be undertaken." *Park Place Ent. Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002). In this case, because there is no actual conflict between the fraudulent misrepresentation law of New York and New Jersey, forum law will apply. *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 523 fn.36 (S.D.N.Y. 2011) (applying New York law in the absence of "any actual conflict between New York and New Jersey law with respect to fraud"); *In re Amla Litig.*, 282 F. Supp. 3d 751, 759 (S.D.N.Y. 2017) ("The basic elements of fraudulent misrepresentation are the same across jurisdictions.").

misrepresentation; and 4) resulting damages." *Phillips-Van Heusen Corp. v. Int'l Home Textiles, Inc.*, 2008 WL 11399003, at *3 (S.D.N.Y. Aug. 25, 2008). "In a federal diversity action, such a claim must be pleaded with particularity." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (citing Fed. R. Civ. P. 9(b)).

For the same reasons discussed above in connection with their GBL claims, plaintiffs have failed to identify any materially false representations by defendants. *See Campbell v. Drink Daily Greens, LLC*, 2018 WL 4259978, at *6 (E.D.N.Y. Sept. 4, 2018) (since plaintiff failed to allege any materially misleading statement actionable under the GBL, his common-law fraud claim "flounders on the first element"). Additionally – and fatal to their fraud claim – they have failed to plead that they reasonably or justifiably relied on any of the alleged misrepresentations. Determining "whether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss," *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005) (citation omitted), and is appropriately evaluated under the heightened standard of Rule 9(b). *See*, *e.g.*, *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014) ("To plead common law fraud, a plaintiff must allege with particularity that it actually relied upon the supposed misstatements."), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173 (2d Cir. 2016).

To satisfy the reliance element of a common-law fraud claim, a plaintiff must show that her reliance was "actual," that is, that she actually saw, read, or heard – and then acted on the basis of – the allegedly fraudulent statements. *Olson v. Major League Baseball*, 29 F.4th 59, 76-77 (2d Cir. 2022); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 216-17 (S.D.N.Y. 2019); *Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, 2007 WL 1732427, at *9 (S.D.N.Y. June 14, 2007). She must also establish that her reliance was "justifiable under the circumstances." *SKR Res., Inc. v. Players*

26

*Sports, Inc.*, 938 F. Supp. 235, 240 (S.D.N.Y. 1996). "[It] is well settled that a plaintiff cannot establish justifiable reliance when, by the exercise of ordinary intelligence it could have learned of the information it asserts was withheld." *Daniel*, 287 F. Supp. 3d at 199 (internal quotation marks and citation omitted). As long as "the facts represented are not matters peculiarly within the [defendant's] knowledge," a plaintiff who "has the mean available to him of knowing . . . the truth or the real quality of the subject of the representation" must "make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Gen. Motors Corp. v. Villa Marin Chevrolet, Inc.*, 2000 WL 271965, at *29 (E.D.N.Y. Mar. 7, 2000) (quoting *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322, 157 N.E.2d 597, 600 (1959)). Thus, a plaintiff cannot pursue a claim for fraudulent misrepresentation if a "simple investigation," by "person of ordinary intelligence," would have revealed the truth. *Daniel*, 287 F. Supp. 3d at 199 (internal quotation marks omitted).

Here, plaintiffs fail to allege that they actually saw, read, or heard any of the Ten Lies alleged in the Amended Complaint. Even if the Court assumes that both plaintiffs knew that their hometown football teams were called the "New York Giants" and the "New York Jets," there is no suggestion in their pleading that either one of them ever saw the MetLife Stadium website – which is the only specific source they identify for Lies No. 3 through 9 – or the MetLife Stadium logo, which constitutes Lie No. 10. *See* Am. Compl. ¶ 10; Index Exs. B, E. Instead, they offer only the vague and general allegation that they purchased game tickets and paid transportation costs "[a]s a result of" defendants' "fraudulent misrepresentations." Am. Compl. ¶ 135. This does not come close to pleading actual reliance. *See Olson*, 29 F.4th at 76-77 (holding that "even under the liberal pleading standard of Rule 8," fraud claims were properly dismissed where the pleadings "did not allege . . . that any of the named plaintiffs actually saw, read, or heard the alleged misstatements

made by the members of the Astros or Red Sox, and thus failed to adequately plead reliance"); *In re Fyre Festival Litig.*, 399 F. Supp. 3d at 216-17 (finding that in the absence of specific allegations that any plaintiff "saw, read, or otherwise noticed" any materially false statement, plaintiffs could not satisfy the reliance element by alleging generally that they "acted in reliance on the false, material representations and omissions made by Defendants"); *Am. Fin. Int'l Grp.-Asia*, 2007 WL 1732427, at *9 (dismissing common law fraud claims because "plaintiffs have not alleged that they read any of the financial statements at issue, much less that they actually relied on them").

Even if plaintiffs could plead that they saw, read, or heard defendant's allegedly deceptive statements, and that those statements caused them to believe that the Giants and the Jets played in a stadium "located in New York City," Am. Compl. ¶ 49, their fraud claim would fail, because the location of MetLife Stadium was easily ascertainable, by any member of the public, with minimal effort. The same is true of all of defendants' other alleged misrepresentations (except those that could never be the basis of a fraud claim because they constitute statements of opinion or puffery). Thirty seconds on the internet (or a glance at a map) would tell any consumer where the Jets and Giants play, the state in which MetLife Stadium is located, and how far it is from midtown Manhattan. Another thirty seconds, or a glance at a train schedule, would reveal how long it takes to get there from Penn Station. Whether or not plaintiffs did any of these things, they clearly "had the means of ascertaining the validity of the representations," which is fatal to their fraud claims. *SKR Res., Inc*., 938 F. Supp. at 240 (concluding that any reliance by plaintiff was unjustified as a matter of law because plaintiff could have ascertained the validity of the challenged representations by "contacting the Defendant and inquiring," but failed to do so); *Daniel*, 287 F. Supp. 3d at 199-200 (E.D.N.Y. 2018) (fraudulent misrepresentation claim based on the "excessive empty space" in defendant's Swedish Fish brand candy packages was "foreclosed as a matter of law" because a

"simple investigation," such as reading the back of the box, "would have dispelled any misrepresentation" as to the net weight or number of candies in the package).

Since plaintiffs have failed to plead actual reliance, and cannot plead justifiable reliance, their fraudulent misrepresentation claim should be dismissed with prejudice. *See Olson*, 29 F.4th at 76 (affirming dismissal of fraud claims, without leave to amend, where plaintiffs "failed to plausibly plead actual or reasonable reliance").

### 4.      The Negligence Claim Has Been Abandoned

Because plaintiffs explicitly withdrew their negligence claim in their opposition brief, *see* Pl. Opp. Mem. at 15, that claim must be dismissed with prejudice. *See Jennings v. Hunt Companies, Inc*., 367 F. Supp. 3d 66, 69-70 (S.D.N.Y. 2019) (finding that claims were abandoned and dismissing them with prejudice where plaintiff withdrew them in his memorandum of law in opposition to the motion to dismiss).

## III.    CONCLUSION

For the reasons set forth above, I recommend, respectfully, that the Amended Complaint be DISMISSED WITHOUT PREJUDICE pursuant to Rules 12(b)(1) and 12(h), for lack of subject matter jurisdiction, or in the alternative, that it be DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

Dated:  New York, New York
        December 16, 2022

**BARBARA MOSES**
**United States Magistrate Judge**

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS</u>
## <u>TO THIS REPORT AND RECOMMENDATION</u>

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Alvin K. Hellerstein at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Hellerstein. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x, 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).